Weil, Gotshal & Manges LLP
Attorneys for Debtors and
Debtors in Possession
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Stephen Karotkin (SK 7357)
Lori R. Fife (LF 2839)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
In re : Chapter 11 Case No.
:
LORAL SPACE :
 & COMMUNICATIONS LTD., et al., : 03-_____ (  )
:
Debtors. : (Jointly Administered)
:
---------------------------------------------------------------x

**APPLICATION PURSUANT TO BANKRUPTCY RULE 2014(a)
AND SECTIONS 327(a) AND 328(a) OF THE
BANKRUPTCY CODE FOR AUTHORIZATION TO
EMPLOY AND RETAIN GREENHILL & CO., LLC AS
<u>FINANCIAL ADVISOR AND INVESTMENT BANKER FOR THE DEBTORS</u>**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Loral Space & Communications Ltd. ("Loral Ltd.") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors" and, together with their non-debtor subsidiaries, "Loral"), respectfully represent:

### Background

1. On the date hereof (the "Commencement Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United

States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Loral's Business**

3. Loral is one of the world's leading satellite communications companies. Loral's satellite products and services place it in the forefront of the satellite industry in terms of technological innovation and reliability. Loral operates primarily two businesses, a fixed satellite services business ("FSS"), managed and operated through its Loral Skynet division ("Loral Skynet"), and a satellite design and manufacturing business, managed and operated by its Space Systems/Loral, Inc. ("SS/L") subsidiary.

4. Loral's FSS business operates a fleet of seven satellites that operate at approximately 22,000 miles above the equator in orbital positions that remain fixed with respect to a given point on earth (i.e. geosynchronous or geostationary). Loral's customers, such as major television and cable networks, use Loral's satellites to distribute television programming and to broadcast breaking news and sporting events. Loral's FSS business is also utilized by communication service providers, resellers, corporations and government entities for broadband data transmission, Internet services, private voice and data networks and other communication services throughout the world. To control its own satellites, as well as those of third parties, Loral Skynet also provides

satellite telemetry, tracking and control services.  As the fifth largest satellite fleet in the world, FSS's satellite broadcast services are utilized by the world's leading television networks and corporations.

5. Loral's SS/L business is one of the world's largest manufacturers of advanced commercial satellites and related satellite systems and it is the second largest supplier of commercial satellites worldwide.  SS/L designs and manufactures high-powered direct-to-home broadcast satellites, commercial weather satellites, digital audio radio satellites and satellites for data networking applications.  Since 1957, SS/L has been awarded contracts to build more than 220 satellites and has amassed more than 1,000 years of cumulative on-orbit service – including more than 330 years over and above the contracted life of the satellites.

6. Simultaneously herewith and in furtherance of these chapter 11 cases, Loral Ltd. and Loral Licensing Ltd. (collectively, the "Bermuda Group"), which are incorporated in Bermuda, are in the process of commencing coordinated proceedings in the Supreme Court of Bermuda.  The Bermuda Group will be petitioning the Supreme Court of Bermuda to issue an order appointing certain principals of KPMG International as Joint Provisional Liquidators (the "JPLs").  The Supreme Court of Bermuda will also be requested to empower and direct the JPLs to oversee the continuation of the Bermuda Group under the control of their Board of Directors and under the supervision of the Supreme Court of Bermuda and this Court in effecting a plan of reorganization under the Bankruptcy Code.

7. As of March 31, 2003, the consolidated financial statements of Loral reflected assets totaling approximately $2.7 billion and liabilities totaling

approximately $2.2 billion. As of March 31, 2003, Loral had approximately 2,400 full-time employees, of whom approximately 3% are subject to collective bargaining agreements.

## Jurisdiction

8. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## The Retention of Greenhill & Co., LLC

9. The Debtors request authorization to retain Greenhill & Co., LLC ("Greenhill"), as their financial advisor and investment banker in these chapter 11 cases. The terms and conditions of Greenhill's proposed retention by the Debtors are set forth in that certain engagement letter between the Debtors and Greenhill, dated February 28, 2003 (the "Greenhill Agreement"), a copy of which is attached hereto as Exhibit "A". The Debtors believe that Greenhill's retention should be approved because its services are required, Greenhill is highly qualified and disinterested, and the terms of its retention are fair.

10. Greenhill is well qualified to serve as the Debtors' financial advisor. Greenhill is a leading corporate finance investment bank and has provided financial advice to numerous major corporate entities and investors worldwide. Moreover, Greenhill has substantial expertise and experience in advising financially distressed business entities in connection with mergers and acquisitions, debt restructurings, and related issues. Greenhill's professionals have provided financial advisory services in many chapter 11 cases, including <u>Ameriserve Food Distribution,</u>

Inc., Case No. 00-0358 (PJW) (Bankr. D. Del. 2000); KCS Energy, Inc., Case Nos. 00-0025 (PJW) and 00-00310 (PJW) through -00318 (PJW) (Bankr. D. Del. 2000); Paging Network, Inc., Case No. 00-3098 (MFW) (Bankr. D. Del. 2000); United Artists Theatre Company, Case No. 00-3514 (SLR) (Bankr. D. Del. 2000); Safety-Kleen, Corp., et al., Case No. 00-2303 (PJW) (Bankr. D. Del. 2000); Bethlehem Steel Corp., et al., Case Nos. 01-15288 (BRL) through 01-15302, 01-15308 through 01-15315 (BRL) (Bankr. S.D.N.Y. 2001); Sunbeam Corporation, Case No. 01-40291 (AJG) (Bankr. S.D.N.Y. 2001); and Continental Airlines, Inc., Case No. 90-932 (HSB) (Bankr. D. Del. 1990), among others.

11. Greenhill also is very familiar with the Debtors' businesses and financial affairs, and, as a consequence, its engagement will facilitate the provision of the services required by the Debtors in their chapter 11 cases. On or about February 28, 2003, the Debtors engaged Greenhill to assist and advise them with respect to evaluating strategic alternatives and their implementation. In providing such professional services to the Debtors, Greenhill has worked closely with the Debtors' management and become well acquainted with the Debtors' capital structure, financial affairs, and related matters.

12. The Debtors desire to continue to use the services of Greenhill in these chapter 11 cases pursuant to the terms of the Greenhill Agreement, and Greenhill has agreed to perform such professional services pursuant to that Agreement consistent with section 328 of the Bankruptcy Code. Based upon the experience of its members and employees, Greenhill is well qualified to act as financial advisor to the Debtors. Greenhill has acquired substantial familiarity with the Debtors and their affairs, resulting in the efficient and expeditious performance of its services. Messrs. Harvey R. Miller

and Bradley A. Robins, among other Greenhill professionals, each have extensive experience in advising debtors as to reorganization and restructuring matters.

13. Greenhill's experience and expertise, its knowledge of the capital markets, and its merger and acquisition capabilities, will inure to the benefit of the Debtors in providing an enterprise valuation of the Debtors and in pursuing any Reorganization, Financing, or Sale.[1] The services to be provided by Greenhill are necessary and will be beneficial to the Debtors, their estates, and creditors.

14. Significantly, consistent with the Greenhill Agreement, Greenhill has played an integral role in the process, evaluation, and negotiations that culminated in that certain Asset Purchase Agreement (the "Purchase Agreement") certain of the Debtors reached with Intelsat Ltd. and Intelsat (Bermuda), Ltd. (collectively, "Intelsat"). The Debtors plan on conducting an auction, with Intelsat as a "stalking horse," to ensure that the sale of the assets under the Purchase Agreement is open to a higher and better offer. The Debtors will rely heavily on Greenhill to assist the Debtors in conducting the auction in connection with the Agreement and the sale of the assets thereunder. The Debtors believe Greenhill's ongoing involvement is critical to a successful consummation of the contemplated asset sale to the highest and best bidder.

15. Pursuant to the Greenhill Agreement, Greenhill will provide such financial advisory services as Greenhill and the Debtors deem appropriate and feasible in the course of these chapter 11 cases, including the financial advisory services to the Debtors, as described below. Contemporaneously herewith, the Debtors are seeking to

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Greenhill Agreement.

retain Conway, Del Genio, Gries & Co., LLC ("CDG") as financial and operational advisors for the Debtors and Key Consulting, LLC ("Key") as business operations advisors for the Debtors. CDG and Key's services are not duplicative in any manner with the services to be performed by Greenhill. Moreover, Greenhill and CDG will undertake every reasonable effort to avoid any duplication of services.

## Scope of Services

16. As more fully described in the Greenhill Agreement, Greenhill will be the Debtors' principal financial advisor and investment banker. Greenhill will perform the great proportion of it services in four general categories: (1) general financial advisory services; (2) reorganization services; (3) financing services; and (4) sale services. Each category is described more fully below:

    A. <u>General Financial Advisory Services</u>. Greenhill shall, in each case, if requested by the Debtors:

        1. review and analyze the business, operations, properties, financial condition, and prospects of the Debtors;

        2. evaluate the Debtors' debt capacity in light of projected cash flows;

        3. assist in the determination of an appropriate capital structure for the Debtors;

        4. assist the Debtors in negotiations with their lenders and other parties;

        5. determine a range of values for the Debtors on a going concern basis and on a liquidation basis;

        6. assist the Debtors in the formulation and implementation of any plan to delever their capital structure;

7. advise and attend meetings of the Debtors' Boards of Directors and their Committees and, if appropriate, their creditors;

8. participate in hearings before any court with respect to the matters upon which Greenhill has provided advice, including, as relevant, coordinating with the Debtors' counsel as to necessary testimony relating thereto; and

9. advise and assist the Debtors in structuring and effecting the financial aspects of any Reorganization, Financing, and/or Sale, subject to the terms and conditions of the Greenhill Agreement.

B. <u>Reorganization Services</u>. Greenhill shall, in each case, if requested by the Debtors:

1. provide financial advice and assistance to the Debtors in developing and seeking approval of a Reorganization plan under chapter 11 of the Bankruptcy Code (as the same may be modified from time to time, a "Plan");

2. provide financial advice and assistance to the Debtors in structuring any new securities, other consideration, or other inducements to be offered and/or issued under the Plan;

3. assist the Debtors and/or participate in negotiations with entities or groups that may be impaired by the Plan; and

4. assist the Debtors in preparing documentation within Greenhill's area of expertise as required in connection with the Plan.

C. <u>Financing Services</u>. If the Debtors pursue a Financing, Greenhill shall, in each case, if requested by the Debtors:

1. provide financial advice and assistance to the Debtors in structuring and effecting a Financing, identify potential Investors, and, at the Debtors' request, contact such Investors;

2. if Greenhill and the Debtors deem it advisable, assist the Debtors in developing and preparing a memorandum (with any amendments or supplements thereto, the "Financing Offering Memorandum") under the terms described in the Greenhill Agreement; and

3. assist the Debtors and/or participate in negotiations with potential Investors.

D. Sale Services. If the Debtors pursue a Sale, Greenhill shall, in each case, if requested by the Debtors:

1. provide financial advice and assistance to the Debtors in connection with a Sale, identify potential acquirors and, at the Debtors' request, contact such potential acquirors;

2. assist the Debtors in preparing a memorandum (with any amendments or supplements thereto, the "Sale Memorandum"), to be used in soliciting potential acquirors under the terms described in the Greenhill Agreement; and

3. assist the Debtors and/or participate in negotiations with potential acquirors.

17. The types of restructuring transactions contemplated by the Greenhill Agreement are transactions that affect material changes in the Debtors' outstanding indebtedness under their bank facilities or indentures, including mergers, consolidations, reorganizations, recapitalizations, and business combinations; transactions in which the Debtors or substantially all of the Debtors' assets are acquired; and other transactions in which requisite consents pursuant to a reorganization plan, confirmed under section 1129 of the Bankruptcy Code, are obtained.

**Compensation**

18. Pursuant to section 328(a) of the Bankruptcy Code, the Debtors may retain Greenhill on any reasonable terms and conditions. Prior to the

Commencement Date, the Debtors negotiated the Greenhill Agreement, a commercially reasonable compensation and employment agreement. The Debtors request approval of the Greenhill Agreement, including the compensation provisions pursuant to section 328(e) of the Bankruptcy Code. The Debtors and Greenhill have agreed that Greenhill shall be paid as set forth, in detail, in the Greenhill Agreement and the Robins Affidavit, and shall be reimbursed according to Greenhill's customary reimbursement policies.

19. Pursuant to the Greenhill Agreement, Greenhill will be compensated as follows:

> A. <u>Initial Fee</u>. The Initial Fee is a non-refundable initial financial advisory fee of $1,000,000, which the Debtors have previously paid. The Initial Fee has been and will be credited against the Monthly Advisory Fee at the rate of $50,000 per month for the first ten months. As the first Monthly Advisory Fee was paid in March 2003, the $50,000 per month credit will continue to apply to each Monthly Advisory Fee charged through December 2003. The remaining balance of the Initial Fee shall be credited against any Transaction Fee or Sale Fee payable to Greenhill pursuant to paragraphs 19.C. and 19.D., <u>infra</u>. To the extent that any credit(s) are not fully used for any reason whatsoever, there will be no refund of unused potential credits.
>
> B. <u>Monthly Advisory Fee</u>. Subject to the credit set forth above, the Monthly Advisory Fee is $200,000, which shall be due and paid, in advance, by the Debtors beginning on the first business day of the month following the date of the Greenhill Agreement and thereafter on each monthly anniversary. The Monthly Advisory Fee, when paid, shall be credited against any Transaction Fee or Sale Fee payable to Greenhill, as explained in more detail below.
>
> C. <u>Transaction Fee</u>. Greenhill shall be paid a Transaction Fee of $7,000,000 if during the terms of its engagement, or within eighteen (18) months following the termination of the engagement without cause or by Greenhill with cause (the "Fee Period"), a Reorganization or Financing is consummated before or after the commencement of any

reorganization cases by or against the Debtors, less credits for (i) the Initial Fee and (ii) the Monthly Advisory Fee. Greenhill shall be paid the Transaction Fee, in cash, on the earlier of (i) consummation of the transaction, or (ii) the effective date of a Plan.

D. Sale Fee. If, during the Fee Period, a Sale is consummated, Greenhill shall be paid a sale fee, calculated by multiplying the Standard Sale Fee Percentage and the Sale Value. The Standard Sale Fee Percentage shall be calculated in accordance with the following table, where the Standard Sale Fee Percentage is prorated between the intervals of the Sale Value Markers:

| Sale Value ($000s) | Standard Sale Fee Percentage | Standard Sale Fee |
|---|---|---|
| $100,000 (or lower) | = 2.00% | $2,000,000 |
| $200,000 | 1.50% | $3,000,000 |
| $500,000 | 1.00% | $5,000,000 |
| $1,000,000 | 0.85% | $8,500,000 |
| $2,000,000 | 0.55% | $11,000,000 |
| $5,000,000 | 0.30% | $15,000,000 |
| $10,000,000 (or higher) | 0.20% | $20,000,000 (or higher) |

E. Multiple Transactions. If, during the Fee Period, both a Reorganization and a Financing are consummated, Greenhill shall be entitled only to one Transaction Fee. If, during the Fee Period, a Reorganization or Financing is consummated and a Sale is consummated, Greenhill shall be entitled to only the greater of (i) the Transaction Fee, or (ii) the Sale Fee.

**Indemnification**

20. The Greenhill Agreement provides for and the Debtors agree to limited indemnification of Greenhill for its services in these cases. Notwithstanding anything to the contrary in the Greenhill Agreement, the Debtors agree to hold Greenhill harmless against liabilities arising out of or in connection with the retention of Greenhill by the Debtors except for any such losses finally judicially determined by a court of

competent jurisdiction to have primarily resulted from gross negligence or willful misconduct of Greenhill.

### Greenhill's Disinterestedness

21.     Except as may be set forth in the Affidavit of Bradley A. Robins, dated July 11, 2003, (the "Robins Affidavit"), attached hereto as Exhibit B, based on the results of searches performed by Greenhill to date, (i) Greenhill has no connection with the Debtors, their creditors, or other parties in interest in these cases; and (ii) does not hold or represent any interest adverse to the Debtors' estates. The Robins Affidavit also sets forth Greenhill's connections with the Debtors, their creditors, and any other party in interest.

22.     To the best of the Debtors' knowledge, Greenhill is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

23.     As set forth in the Robins Affidavit, there are no amounts owed by the Debtors to Greenhill as of the Commencement Date.

24.     The Debtors have been advised that Greenhill, an investment bank with broad activities, including general strategic advisory, mergers and acquisitions advisory, private equity investment, and financial restructuring advisory, has an international practice and may represent or may have represented certain of the Debtors' creditors, equity holders, or other parties in interest in matters totally unrelated to these cases.

25.     The Debtors have been advised that Greenhill will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances

exist or arise. If any new facts or circumstances are discovered, Greenhill will supplement its disclosure to the Court.

26. The Debtors have been advised that, other than with its own partners and employees, Greenhill has agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with these cases.

27. Because of the financial advisory services that may be necessary in these cases, the employment of Greenhill is appropriate and in the best interest of the Debtors' estates.

28. The relief requested herein includes a request for Court approval of (i) an indemnification, (ii) a sale fee, and (iii) a transaction fee. The indemnification and the sale and transaction fee are each described in detail above and in the Greenhill Agreement. In the Southern District of New York, these provisions and fees are generally granted after notice to all creditors and a hearing.

29. With the assistance of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), a protocol has been developed in this District with respect to the retention of a professional by a debtor under terms that include indemnification provisions or transaction fees. Under this protocol, indemnification provisions may be approved if the indemnification is limited to ordinary negligence. The protocol requires that the retention application seeking such relief should request the entry of an interim order, which (i) approves any monthly fee payable to such professional; and (ii) schedules a final hearing to consider indemnification, and a transaction and/or sale fee. Notice of the relief sought and the final hearing is to be

mailed to all creditors and the retention application is to be served on the master service list.

30.    In compliance with the foregoing protocol, within five days of the entry of an interim order approving Greenhill's retention, the Debtors will serve a notice, substantially in the form attached hereto as Exhibit C, on all creditors that are to receive the Notice of Commencement in accordance with the any order establishing notice procedures entered in these cases.  A copy of the Greenhill retention application, along with a copy of the proposed final order and interim order will also be served on (i) the U.S. Trustee, (ii) counsel to the agent for the Debtors' prepetition secured lenders, (iii) those creditors holding the twenty largest unsecured claims against the Debtors' estates, and (iv) the attorneys for certain lenders of Loral SpaceCom Corporation ("SpaceCom").

## Waiver of Memorandum of Law

31.    This Application does not raise any novel issues of law and, accordingly, the Debtors respectfully request that the Court waive the requirement contained in Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York that a separate memorandum be submitted in support of the Application.

## Notice

32.    No trustee, examiner or statutory creditors' committee has been appointed in these chapter 11 cases.  Notice of this Application has been provided to (i) the United States Trustee for the Southern District of New York, (ii) the attorneys for agent for the Debtors' prepetition secured lenders, (iii) the Debtors' twenty largest

unsecured creditors (on a consolidated basis), and (iv) the attorneys for certain lenders of SpaceCom. The Debtors submit that no other or further notice need be provided.

33. No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: July 15, 2003
      New York, New York

                                      Loral Space & Communications Ltd., et al.
                                      Debtors and Debtors in Possession

                                      /s/ Avi Katz
                                      Avi Katz
                                      Vice President, General Counsel and Secretary