(5)     the Company shall have delivered to the Trustee an Officers' Certificate and an Opinion of Counsel, each stating that such consolidation, merger or transfer and such supplemental indenture (if any) comply with this Indenture; and

(6)     the Company shall have delivered to the Trustee an Opinion of Counsel to the effect that the Holders will not recognize income, gain or loss for Federal income tax purposes as a result of such transaction and will be subject to Federal income tax on the same amounts, in the same manner and at the same times as would have been the case if such transaction had not occurred;

provided, however, that clause (3) will not be applicable (A) to a Restricted Subsidiary consolidating with, merging into, conveying, transferring or leasing all or part of its assets to the Company, (B) to the Company merging with an Affiliate of the Company solely for the purpose and with the sole effect of reincorporating the Company in another jurisdiction within the United States of America, or (C) to the conveying, transferring or leasing all or part of the assets by the Company to a Guarantor.  For the avoidance of doubt, for purposes of this Section 5.01, (a) the determination of whether the sale involves all or substantially all of the assets of a Person shall be based on the book value of such assets, and (b) conveying, transferring or leasing after the Issue Date of satellites and transponders in the ordinary course of business shall be deemed not to constitute the sale of all or substantially all assets of the Company.

(b)     The Successor Company (if not the Company) shall be the successor to the Company and shall succeed to, and be substituted for, and may exercise every right and power of, the Company under this Indenture, and the predecessor Company, except in the case of a lease, shall be released from the obligation to pay the principal of and interest on the Notes.

(c)     Except for transactions set forth on Schedule 5.01(c), the Company shall not permit any Subsidiary Guarantor to consolidate with or merge with or into, or convey, transfer or lease, in one transaction or a series of transactions, all or substantially all of its assets to any Person (except in the case of a Subsidiary Guarantor that has been disposed of in its entirety to another Person (other than to the Company or an Affiliate of the Company), whether through a merger, consolidation or sale of Capital Stock or assets, if in connection therewith the Company provides an Officers' Certificate to the Trustee to the effect that the Company will comply with, and the Company does comply with, its obligations under Section 4.09 in respect of such disposition) unless:

(1)     the resulting, surviving or transferee Person (if not such Subsidiary) shall be a Person organized and existing under the laws of the jurisdiction under which such Subsidiary was organized or under the laws of the United States of America, or any State thereof or the District of Columbia, and such Person shall expressly assume, by a Supplemental Guaranty Agreement, in a form satisfactory to the Trustee, all the obligations of such Subsidiary, if any, under its Guaranty; and

(2)     the Company delivers to the Trustee an Officers' Certificate and an Opinion of Counsel, each stating that such consolidation, merger or transfer and such Supplemental Guaranty Agreement, if any, complies with this Indenture.

(d)     Notwithstanding clauses (a), (b) and (c) of this Section 5.01, if no Default has occurred and is continuing, any Subsidiary Guarantor may consolidate with or merge with or into or convey, transfer or lease, in one transaction or a series of transactions, all or substantially all of its assets to the Company or any Subsidiary Guarantor.

## ARTICLE 6

## Defaults and Remedies

SECTION 6.01.     Events of Default.  Each of the following is an ***"Event of Default"***:

(1)     the Company defaults in any payment of interest on any Note when the same becomes due and payable, continued for 30 days;

(2)     the Company (A) defaults in the payment of the principal of any Note when the same becomes due and payable at its Stated Maturity, upon optional redemption, upon declaration of acceleration or otherwise, or (B) fails to purchase any Note when required pursuant to this Indenture or the Notes;

(3)     the Company fails to comply with Section 5.01;

(4)     the Company or any Guarantor that is a Significant Subsidiary defaults in the performance of or breaches any covenants or otherwise fails to comply with any of its agreements in the Notes, this Indenture or any Collateral Document (other than those referred to in clause (1), (2) or (3) above) and such default, breach or other failure continues for 30 days after the notice specified below;

(5)     Indebtedness of the Company or any Significant Subsidiary  (whether or not a Guarantor) is not paid within any applicable grace period after the due date thereof or is accelerated by the holders thereof because of a default and the total amount of such Indebtedness unpaid or accelerated exceeds $50.0 million, or its foreign currency equivalent at the time;

(6)     the Company or any Significant Subsidiary (whether or not a Guarantor) pursuant to or within the meaning of any Bankruptcy Law:

(A)     commences a voluntary case;

(B)     consents to the entry of an order for relief against it in an involuntary case;

(C)     consents to the appointment of a Custodian of it or for any substantial part of its property; or

(D)     makes a general assignment for the benefit of its creditors;

or takes any comparable action under any foreign laws relating to insolvency;

(7)     a court of competent jurisdiction enters an order or decree under any Bankruptcy Law that:

    (A)     is for relief against the Company or any Significant Subsidiary (whether or not a Guarantor) in an involuntary case;

    (B)     appoints a Custodian of the Company or any Significant Subsidiary (whether or not a Guarantor)or for any substantial part of its property; or

    (C)     orders the winding up or liquidation of the Company or any Significant Subsidiary (whether or not a Guarantor); or any similar relief is granted under any foreign laws and the order or decree remains unstayed and in effect for 30 days;

(8)     any judgment or decree for the payment of money in excess of $50.0 million (or its foreign currency equivalent at the time) is entered against the Company, or any Significant Subsidiary (whether or not a Guarantor), remains outstanding for a period of 30 consecutive days following the entry of such judgment or decree and is not discharged, waived or the execution thereof stayed;

(9)     a Guaranty ceases to be in full force and effect (other than in accordance with the terms of such Guaranty) or any Guarantor denies or disaffirms its obligations under its Guaranty except pursuant to a merger, consolidation or dissolution permitted under this Indenture; or

(10)     any Collateral Document ceases to be in full force and effect (other than in accordance with its terms), any obligor under any Collateral Document denies or disaffirms its obligations thereunder, or any Lien purported to be created under any Collateral Document shall cease to be enforceable or shall cease to be of the same effect and priority as purported to be created by such Collateral Document (other than in accordance with the terms thereof or of this Indenture) and the same shall continue for a period of 10 days after the notice referred to below.

The foregoing will constitute Events of Default whatever the reason for any such Event of Default and whether it is voluntary or involuntary or is effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body.

The term *"Bankruptcy Law"* means Title 11, United States Code, or any similar Federal or state law for the relief of debtors. The term *"Custodian"* means any receiver, trustee, assignee, liquidator, custodian or similar official under any Bankruptcy Law.

A Default under clause (4) or (10) of this Section 6.01 is not an Event of Default until the Trustee or the Holders of at least 33.33% in principal amount of the outstanding Notes notify the Company of the Default and the Company does not cure such Default within the time specified after receipt of such notice.

SECTION 6.02.     Acceleration.

(a) If an Event of Default (other than an Event of Default specified in Section 6.01(6) or (7)) occurs and is continuing, the Trustee by notice to the Company, or the Holders of at least 40.0% in principal amount of the outstanding Notes by notice to the Company and the Trustee, may declare the principal of and accrued but unpaid interest, if any, on all the Notes to be due and payable. Upon such a declaration, such principal and interest shall be due and payable immediately. If an Event of Default specified in Section 6.01(6) or (7) occurs and is continuing, the principal of and interest, if any, on all the Notes shall ipso facto become and be immediately due and payable without any declaration or other act on the part of the Trustee or any Noteholders. The Holders of a majority in principal amount of the Notes, by notice to the Trustee, may rescind an acceleration and its consequences if the rescission would not conflict with any judgment or decree and if all existing Events of Default have been cured or waived except nonpayment of principal or interest that has become due solely because of acceleration. No such rescission shall affect any subsequent Default or impair any right consequent thereto.

In the event of a declaration of acceleration of the Notes because an Event of Default described in clause (5) of Section 6.01 has occurred and is continuing, the declaration of acceleration of the Notes shall be automatically annulled if (A) the event of default or payment default triggering such Event of Default pursuant to clause (5) of Section 6.01 shall be remedied or cured by the Company or a Restricted Subsidiary or waived by the holders of the relevant Indebtedness within 20 days after the declaration of acceleration with respect thereto, (B) the annulment of the acceleration of the Notes would not conflict with any judgment or decree of a court of competent jurisdiction and (C) all existing Events of Default, except nonpayment of principal, premium or interest on the Notes that became due solely because of the acceleration of the Notes, have been cured or waived.

(b) The Company agrees to pay, in addition to the amount stated above, any and all expenses (including reasonable counsel fees and expenses) incurred by the Trustee acting on behalf of the Noteholders in enforcing any rights under the Notes.

SECTION 6.03. Other Remedies. If an Event of Default occurs and is continuing, the Trustee may pursue any available remedy to collect the payment of principal of or interest on the Notes or to enforce the performance of any provision of the Notes or this Indenture.

The Trustee may maintain a proceeding even if it does not possess any of the Notes or does not produce any of them in the proceeding. A delay or omission by the Trustee or any Noteholder in exercising any right or remedy accruing upon an Event of Default shall not impair the right or remedy or constitute a waiver of or acquiescence in the Event of Default. No remedy is exclusive of any other remedy. All available remedies are cumulative.

SECTION 6.04. Waiver of Past Defaults. The Holders of a majority in principal amount of the Notes by notice to the Trustee may waive an existing Default and its consequences except (i) a Default in the payment of the principal or interest on a Note, (ii) a Default arising from the failure to redeem or purchase any Note when required pursuant to this Indenture or (iii) a Default in respect of a provision that under Section 9.02 cannot be amended without the consent of each Noteholder affected. When a Default is waived, it is deemed cured,

but no such waiver shall extend to any subsequent or other Default or impair any consequent right.

SECTION 6.05.     Control by Majority. The Holders of a majority in principal amount of the outstanding Notes are given the right to direct the time, method and place of conducting any proceeding for any remedy available to the Trustee or of exercising any trust or power conferred on the Trustee. However, the Trustee may refuse to follow any direction that conflicts with law or this Indenture or, subject to Section 7.01, that the Trustee determines is unduly prejudicial to the rights of other Noteholders or would involve the Trustee in personal liability; provided, however, that the Trustee may take any other action deemed proper by the Trustee that is not inconsistent with such direction. Prior to taking any action hereunder, the Trustee shall be entitled to indemnification satisfactory to it in its sole discretion against all losses and expenses caused by taking or not taking such action.

SECTION 6.06.     Limitation on Suits. Except to enforce the right to receive payment of principal or interest when due, no Noteholder may pursue any remedy with respect to this Indenture or the Notes unless:

(1)     the Holder gives to the Trustee written notice stating that an Event of Default is continuing;

(2)     notwithstanding the requirements of Section 316(a)(1) of the TIA (which are hereby excluded as permitted therein), the Holders of at least 40% in outstanding principal amount of the Notes make a written request to the Trustee to pursue the remedy;

(3)     such Holder or Holders offer to the Trustee reasonable security or indemnity against any loss, liability or expense;

(4)     the Trustee does not comply with the request within 60 days after receipt of the request and the offer of security or indemnity; and

(5)     the Holders of a majority in principal amount of the Notes do not give the Trustee a direction inconsistent with the request during such 60-day period.

SECTION 6.07.     Rights of Holders to Receive Payment. Notwithstanding any other provision of this Indenture, the right of any Holder to receive payment of principal and interest on the Notes held by such Holder, on or after the respective due dates expressed in the Notes, or to bring suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of such Holder.

SECTION 6.08.     Collection Suit by Trustee. If an Event of Default specified in Section 6.01(1) or (2) occurs and is continuing, the Trustee may recover judgment in its own name and as trustee of an express trust against the Company or any Guarantor for the whole amount then due and owing (together with interest on any unpaid interest to the extent lawful) and the amounts provided for in Section 7.07.

SECTION 6.09.     Trustee May File Proofs of Claim. The Trustee may file such proofs of claim and other papers or documents as may be necessary or advisable in order to

have the claims of the Trustee and the Noteholders allowed in any judicial proceedings relative to the Company, its creditors or its property and, unless prohibited by law or applicable regulations, may vote on behalf of the Holders in any election of a trustee in bankruptcy or other Person performing similar functions, and any Custodian in any such judicial proceeding is hereby authorized by each Holder to make payments to the Trustee and, in the event that the Trustee shall consent to the making of such payments directly to the Holders, to pay to the Trustee any amount due it for the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and its counsel, and any other amounts due the Trustee under Section 7.07.

Nothing herein shall be deemed to empower the Trustee to authorize or consent to, or accept or adopt on behalf of any Holder, any plan of reorganization, arrangement, adjustment or composition affecting the Notes or the rights of any Holder, or to authorize the Trustee to vote in respect of the claim of any Holder in any such proceedings.

SECTION 6.10.    Priorities.  If the Trustee collects any money or property pursuant to this Article 6, it shall pay out the money or property in the following order:

FIRST, to the Trustee for amounts due under Section 7.07;

SECOND, to Noteholders for amounts due and unpaid on the Notes for principal and interest, ratably, without preference or priority of any kind, according to the amounts due and payable on the Notes for principal and interest, respectively; and

THIRD, to the Company or any other Person legally entitled thereto.

The Trustee may fix a record date and payment date for any payment to Noteholders pursuant to this Section 6.10. At least 15 days before such record date, the Company shall mail to each Noteholder and the Trustee a notice that states the record date, the payment date and amount to be paid.

SECTION 6.11.    Undertaking for Costs.  In any suit for the enforcement of any right or remedy under this Indenture or in any suit against the Trustee for any action taken or omitted by it as Trustee, a court in its discretion may require the filing by any party litigant in the suit of an undertaking to pay the costs of the suit, and the court in its discretion may assess reasonable costs, including reasonable attorneys' fees, against any party litigant in the suit, having due regard to the merits and good faith of the claims or defenses made by the party litigant. This Section 6.11 does not apply to a suit by the Trustee, a suit by a Holder pursuant to Section 6.07 or a suit by Holders of more than 10% in principal amount of the Notes.

SECTION 6.12.    Waiver of Stay or Extension Laws.  The Company and any Guarantor (to the extent it may lawfully do so) covenants that it shall not at any time insist upon, or plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay, extension or usury law wherever enacted, now or at any time hereafter in force, which may affect the covenants or the performance of this Indenture. The Company and any Guarantor (to the extent that it may lawfully do so) hereby expressly waives all benefit or advantage of any such law, and shall not hinder, delay or impede the execution of any power herein granted to the

Trustee, but shall suffer and permit the execution of every such power as though no such law had been enacted.

SECTION 6.13.     Payment of Premium.   In the case of any Event of Default occurring by reason of any willful action or inaction taken or not taken by or on behalf of the Company, any Guarantor or any Restricted Subsidiary with the intention of avoiding payment of the premium that would be due upon an optional redemption of the Notes, upon acceleration of the Notes following such Event of Default, to the fullest extent permitted by law, a premium shall immediately become due and payable by the Company in an amount equal to the premium that would have been due and payable had the Company elected to optionally redeem the Notes.

ARTICLE 7

Trustee

SECTION 7.01.     Duties of Trustee.

(a)     If an Event of Default has occurred and is continuing, the Trustee shall exercise the rights and powers vested in it by this Indenture and use the same degree of care and skill in their exercise as a prudent Person would exercise or use under the circumstances in the conduct of such Person's own affairs.

(b)     Except during the continuance of an Event of Default:

(1)     the Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Indenture and no implied covenants or obligations shall be read into this Indenture against the Trustee; and

(2)     in the absence of bad faith on its part, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates or opinions furnished to the Trustee and conforming to the requirements of this Indenture. However, the Trustee shall examine the certificates and opinions to determine whether or not they conform to the requirements of this Indenture.

(c)     The Trustee may not be relieved from liability for its own negligent action, its own negligent failure to act or its own willful misconduct, except that:

(1)     this paragraph does not limit the effect of paragraph (b) of this Section 7.01;

(2)     the Trustee shall not be liable for any error of judgment made in good faith by a Trust Officer unless it is proved that the Trustee was negligent in ascertaining the pertinent facts; and

(3)     the Trustee shall not be liable with respect to any action it takes or omits to take in good faith in accordance with a direction received by it pursuant to Section 6.05.

(d)     Every provision of this Indenture, the Notes and the Collateral Documents that in any way relates to the Trustee is subject to Sections 7.01 and 7.02.

(e)     The Trustee shall not be liable for interest on any money received by it except as the Trustee may agree in writing with the Company.

(f)     Money held in trust by the Trustee need not be segregated from other funds except to the extent required by law.

(g)     No provision of this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur financial liability in the performance of any of its duties hereunder or in the exercise of any of its rights or powers, if it shall have reasonable grounds to believe that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.

(h)     Every provision of this Indenture relating to the conduct or affecting the liability of or affording protection to the Trustee shall be subject to the provisions of this Section 7.01 and to the provisions of the TIA.

SECTION 7.02.     Rights of Trustee.

(a)     The Trustee may rely on any document believed by it to be genuine and to have been signed or presented by the proper Person. The Trustee need not investigate any fact or matter stated in the document.

(b)     Before the Trustee acts or refrains from acting, it may require an Officers' Certificate or an Opinion of Counsel. The Trustee shall not be liable for any action it takes or omits to take in good faith in reliance on the Officers' Certificate or Opinion of Counsel.

(c)     The Trustee may act through agents and shall not be responsible for the misconduct or negligence of any agent appointed with due care.

(d)     The Trustee shall not be liable for any action it takes or omits to take in good faith which it believes to be authorized or within its rights or powers; provided, however, that the Trustee's conduct does not constitute willful misconduct or negligence.

(e)     The Trustee may consult with counsel, and the advice or opinion of counsel with respect to legal matters relating to this Indenture and the Notes shall be full and complete authorization and protection from liability in respect to any action taken, omitted or suffered by it hereunder in good faith and in accordance with the advice or opinion of such counsel.

SECTION 7.03.     Individual Rights of Trustee. The Trustee in its individual or any other capacity may become the owner or pledgee of Notes and may otherwise deal with the Company or its Affiliates with the same rights it would have if it were not Trustee. Any Paying Agent, Registrar, co-registrar or co-paying agent may do the same with like rights. However, the Trustee must comply with Sections 7.10 and 7.11.

SECTION 7.04. <u>Trustee's Disclaimer.</u> The Trustee shall not be responsible for and makes no representation as to the validity or adequacy of this Indenture or the Notes, it shall not be accountable for the Company's use of the proceeds from the Notes, and it shall not be responsible for any statement of the Company in this Indenture or in any document issued in connection with the sale of the Notes or in the Notes other than the Trustee's certificate of authentication.

SECTION 7.05. <u>Notice of Defaults.</u> If a Default or Event of Default occurs and is continuing and if it is known to the Trustee, the Trustee shall mail to each Noteholder notice of the Default or Event of Default within 90 days after it occurs or as soon as is practicable after it becomes known to the Trustee. Except in the case of a Default or Event of Default in payment of principal or interest on any Note (including payments pursuant to the mandatory redemption provisions of such Note, if any), the Trustee may withhold the notice if and so long as a committee of its Trust Officers in good faith determines that withholding the notice is not opposed to the interests of Noteholders.

SECTION 7.06. <u>Reports by Trustee to Holders.</u> As promptly as practicable after each [May] 15 beginning with the [May] 15 following the date of this Indenture, and in any event prior to [July] 15 in each year, the Trustee shall mail to each Noteholder a brief report dated as of [May] 15 that complies with TIA § 313(a) (but if no event described in TIA § 313(a) has occurred within the twelve months preceding the reporting date, no report need be mailed). The Trustee also shall comply with TIA § 313(b).

A copy of each report at the time of its mailing to Noteholders shall be filed with the SEC (if appropriate) and each stock exchange (if any) on which the Notes are listed. The Company agrees to notify promptly the Trustee whenever the Notes become listed on any stock exchange and of any delisting thereof.

SECTION 7.07. <u>Compensation and Indemnity.</u> The Company shall pay to the Trustee such compensation as shall be agreed upon in writing for its services. The Trustee's compensation shall not be limited by any law on compensation of a trustee of an express trust. The Company shall reimburse the Trustee upon request for all reasonable out-of-pocket expenses incurred or made by it, including costs of collection, in addition to the compensation for its services. Such expenses shall include the reasonable compensation and expenses, disbursements and advances of the Trustee's agents, counsel, accountants and experts. The Company shall indemnify the Trustee against any and all loss, liability or expense (including reasonable attorneys' fees) incurred by it in connection with the administration of this trust and the performance of its duties hereunder, except as set forth in the last sentence of this paragraph. The Trustee shall notify the Company promptly of any claim for which it may seek indemnity. Failure by the Trustee to so notify the Company shall not relieve the Company of its obligations hereunder unless and to the extent the Company is prejudiced by such negligent failure. The Company shall defend the claim and the Trustee may have separate counsel and the Company shall pay the reasonable fees and expenses of such counsel. The Company need not pay for any settlement made without its consent, which consent shall not be unreasonably withheld. The Company need not reimburse any expense or indemnify against any loss, liability or expense incurred by the Trustee through the Trustee's own willful misconduct, negligence or bad faith.

To secure the Company's payment obligations in this Section 7.07, the Trustee shall have a lien prior to the Notes on all money or property held or collected by the Trustee other than money or property held in trust to pay principal and interest on particular Notes.

The Company's payment obligations pursuant to this Section 7.07 shall survive the discharge of this Indenture. When the Trustee incurs expenses after the occurrence of a Default specified in Section 6.01(6) or (7) with respect to the Company, the expenses are intended to constitute expenses of administration under the Bankruptcy Law.

SECTION 7.08.    Replacement of Trustee. The Trustee may resign at any time by so notifying the Company in writing at least 30 days prior to the date of the proposed resignation. The Holders of a majority in principal amount of the Notes may remove the Trustee by so notifying the Trustee and may appoint a successor Trustee. The Company may remove the Trustee if:

> (1)     the Trustee fails to comply with Section 7.10;
>
> (2)     the Trustee is adjudged bankrupt or insolvent;
>
> (3)     a receiver or other public officer takes charge of the Trustee or its property; or
>
> (4)     the Trustee otherwise becomes incapable of acting.

If the Trustee resigns or is removed by the Company and the Company does not reasonably promptly appoint a successor Trustee or if the Trustee is removed by the Holders of a majority in principal amount of the Notes and such Holders do not reasonably promptly appoint a successor Trustee, or if a vacancy exists in the office of Trustee for any other reason (the Trustee in such event being referred to herein as the retiring Trustee), the Company shall promptly appoint a successor Trustee.

A successor Trustee shall deliver a written acceptance of its appointment to the retiring Trustee and to the Company. Thereupon the resignation or removal of the retiring Trustee shall become effective, and the successor Trustee shall have all the rights, powers and duties of the Trustee under this Indenture. The successor Trustee shall mail a notice of its succession to Noteholders. The retiring Trustee shall promptly transfer all property held by it as Trustee to the successor Trustee, subject to the lien provided for in Section 7.07.

If a successor Trustee does not take office within 60 days after the retiring Trustee resigns or is removed, the retiring Trustee or the Holders of 10% in principal amount of the Notes may petition, at the Company's expense, any court of competent jurisdiction for the appointment of a successor Trustee.

If the Trustee fails to comply with Section 7.10, any Noteholder may petition any court of competent jurisdiction for the removal of the Trustee and the appointment of a successor Trustee.

Notwithstanding the replacement of the Trustee pursuant to this Section 7.08, the Company's obligations under Section 7.07 shall continue for the benefit of the retiring Trustee.

SECTION 7.09. <u>Successor Trustee by Merger.</u> If the Trustee consolidates with, merges or converts into, or transfers all or substantially all its corporate trust business or assets to, another corporation or banking association, the resulting, surviving or transferee corporation without any further act shall be the successor Trustee.

In case at the time such successor or successors by merger, conversion or consolidation to the Trustee shall succeed to the trusts created by this Indenture any of the Notes shall have been authenticated but not delivered, any such successor to the Trustee may adopt the certificate of authentication of any predecessor trustee, and deliver such Notes so authenticated; and in case at that time any of the Notes shall not have been authenticated, any successor to the Trustee may authenticate such Notes either in the name of any predecessor hereunder or in the name of the successor to the Trustee; and in all such cases such certificates shall have the full force which it is anywhere in the Notes or in this Indenture provided that the certificate of the Trustee shall have.

SECTION 7.10. <u>Eligibility; Disqualification.</u> The Trustee shall at all times satisfy the requirements of TIA § 310(a). The Trustee shall have a combined capital and surplus of at least $50,000,000 as set forth in its most recent published annual report of condition. The Trustee shall comply with TIA § 310(b); <u>provided, however,</u> that there shall be excluded from the operation of TIA § 310(b)(1) any indenture or indentures under which other securities or certificates of interest or participation in other securities of the Company are outstanding if the requirements for such exclusion set forth in TIA § 310(b)(1) are met.

SECTION 7.11. <u>Preferential Collection of Claims Against Company.</u> The Trustee shall comply with TIA § 311(a), excluding any creditor relationship listed in TIA § 311(b). A Trustee who has resigned or been removed shall be subject to TIA § 311(a) to the extent indicated.

ARTICLE 8

Discharge of Indenture; Defeasance

SECTION 8.01. <u>Discharge of Liability on Notes; Defeasance.</u>

(a) When (1) the Company delivers to the Trustee all outstanding Notes (other than Notes replaced pursuant to Section 2.07) for cancellation, or (2) all outstanding Notes have become due and payable, whether at maturity or on a redemption date as a result of the mailing of a notice of redemption pursuant to Article 3 hereof, or (3) all outstanding Notes will become due and payable within one year or are to be called for redemption within one year under arrangements reasonably satisfactory to the Trustee and, in the case of clauses (a)(2) and (a)(3) of this Section 8.01, the Company irrevocably deposits with the Trustee funds sufficient to pay at maturity or upon redemption all outstanding Notes, including interest thereon to maturity or such redemption date (other than Notes replaced pursuant to Section 2.07), and if in any case the Company pays all other sums payable hereunder by the Company, then this Indenture shall,

subject to Section 8.01(c), be satisfied and discharged and cease to be of further effect. The Trustee shall acknowledge satisfaction and discharge of this Indenture on demand of the Company (accompanied by an Officers' Certificate and an Opinion of Counsel stating that all conditions precedent specified herein relating to the satisfaction and discharge of this Indenture have been complied with and at the cost and expense of the Company).

(b)  Subject to Sections 8.01(c) and 8.02, the Company at any time may terminate (1) all its and any Guarantors' Obligations under the Notes, the Collateral Documents and this Indenture (*"legal defeasance option"*) or (2) its and any Guarantors' Obligations under Sections 4.04 through 4.13, 4.16, 4.17 and 4.18 and the operation of Sections 6.01(5), 6.01(8), 6.01(9) and 6.01(10) and the limitations contained in Sections 5.01(a)(3) and (a)(4) (*"covenant defeasance option"*). The Company may exercise its legal defeasance option notwithstanding its prior exercise of its covenant defeasance option.

If the Company exercises its legal defeasance option, payment of the Notes may not be accelerated because of an Event of Default with respect thereto. If the Company exercises its legal defeasance option or its covenant defeasance option, any Guarantor shall be released from all of its obligations with respect to its Guaranty.

Upon satisfaction of the conditions set forth herein and upon request of the Company, the Trustee shall acknowledge in writing the discharge of those Obligations that the Company terminates.

(c)  Notwithstanding clauses (a) and (b) of this Section 8.01, the Company's Obligations in Sections 2.03, 2.04, 2.05, 2.06, 2.07, 2.08, 7.07 and 7.08 and in this Article 8 shall survive until the Notes have been paid in full. Thereafter, the Company's obligations in Sections 7.07, 8.04 and 8.05 shall survive.

SECTION 8.02.  Conditions to Defeasance. The Company may exercise its legal defeasance option or its covenant defeasance option only if:

(1)  the Company irrevocably deposits in trust with the Trustee money in U.S. dollars or U.S. Government Obligations for the payment of principal and interest on the Notes to maturity or redemption, as the case may be;

(2)  the Company delivers to the Trustee a certificate from a firm of independent accountants expressing their opinion that the payments of principal and interest when due and without reinvestment on the deposited U.S. Government Obligations plus any deposited money without investment will provide cash at such times and in such amounts as will be sufficient to pay principal and interest when due on all the Notes to maturity or redemption, as the case may be;

(3)  123 days pass after the deposit is made and during the 123-day period no Default or Event of Default specified in Sections 6.01(6) or (7) with respect to the Company or any Guarantor occurs which is continuing at the end of the period;

(4)  the deposit does not constitute a default under any other agreement binding on the Company or any of its Subsidiaries;

(5)     the Company delivers to the Trustee an Opinion of Counsel to the effect that the trust resulting from the deposit does not constitute, or is qualified as, a regulated investment company under the Investment Company Act of 1940;

(6)     in the case of the legal defeasance option, the Company shall have delivered to the Trustee an Opinion of Counsel stating that (A) the Company has received from, or there has been published by, the Internal Revenue Service a ruling, or (B) since the date of this Indenture there has been a change in the applicable Federal income tax law, in either case to the effect that, and based thereon such Opinion of Counsel shall confirm that, the Noteholders will not recognize income, gain or loss for Federal income tax purposes as a result of such deposit and defeasance and will be subject to Federal income tax on the same amounts, in the same manner and at the same times as would have been the case if such defeasance had not occurred;

(7)     in the case of the covenant defeasance option, the Company shall have delivered to the Trustee an Opinion of Counsel to the effect that the Noteholders will not recognize income, gain or loss for Federal income tax purposes as a result of such covenant defeasance and will be subject to Federal income tax on the same amounts, in the same manner and at the same times as would have been the case if such covenant defeasance had not occurred; and

(8)     the Company delivers to the Trustee an Officers' Certificate and an Opinion of Counsel, each stating that all conditions precedent to the defeasance and discharge of the Notes as contemplated by this Article 8 have been complied with.

Before or after a deposit, the Company may make arrangements satisfactory to the Trustee for the redemption of Notes at a future date in accordance with Article 3.

SECTION 8.03.     Application of Trust Money. The Trustee shall hold in trust money or U.S. Government Obligations deposited with it pursuant to this Article 8. It shall apply the deposited money and the money from U.S. Government Obligations through the Paying Agent and in accordance with this Indenture to the payment of principal of and interest on the Notes.

SECTION 8.04.     Repayment to Company. The Trustee and the Paying Agent shall promptly turn over to the Company upon request any excess money or securities held by them at any time.

Subject to any applicable abandoned property law, the Trustee and the Paying Agent shall pay to the Company upon request any money held by them for the payment of principal or interest that remains unclaimed for two years, and, thereafter, Noteholders entitled to the money must look to the Company for payment as general creditors.

SECTION 8.05.     Indemnity for Government Obligations. The Company shall pay and shall indemnify the Trustee against any tax, fee or other charge imposed on or assessed against deposited U.S. Government Obligations or the principal and interest received on such U.S. Government Obligations.

SECTION 8.06.    Reinstatement.  If the Trustee or Paying Agent is unable to apply any money or U.S. Government Obligations in accordance with this Article 8 by reason of any legal proceeding or by reason of any order or judgment of any court or governmental authority enjoining, restraining or otherwise prohibiting such application, the Company's obligations under this Indenture and the Notes, and the obligations of the Guarantors under the Guaranties, shall be revived and reinstated as though no deposit had occurred pursuant to this Article 8 until such time as the Trustee or Paying Agent is permitted to apply all such money or U.S. Government Obligations in accordance with this Article 8; provided, however, that, if the Company has made any payment of interest on or principal of any Notes because of the reinstatement of its obligations, the Company shall be subrogated to the rights of the Holders of such Notes to receive such payment from the money or U.S. Government Obligations held by the Trustee or Paying Agent.

## ARTICLE 9

### Amendments

SECTION 9.01.    Without Consent of Holders.  The Company, the Guarantors and the Trustee may amend this Indenture, any Collateral Document or the Notes without notice to or consent of any Noteholder:

(1)    to cure any ambiguity, omission, defect or inconsistency;

(2)    to provide for the assumption by a Successor Company of the Obligations of the Company or any Guarantor under this Indenture pursuant to Article 5 of this Indenture;

(3)    to provide for uncertificated Notes in addition to or in place of certificated Notes; provided, however, that the uncertificated Notes are issued in registered form for purposes of Section 163(f) of the Code, or in a manner such that the uncertificated Notes are described in Section 163(f)(2)(B) of the Code;

(4)    to add guarantees with respect to the Notes, including any Guaranties, or to add Collateral to further secure the Notes;

(5)    to add to the covenants of the Company or any Guarantor for the benefit of the Holders or to surrender any right or power herein conferred upon the Company or any Guarantor;

(6)    to make any change that does not adversely affect the rights of any Noteholder;

(7)    to comply with any requirements of the SEC in connection with qualifying, or maintaining the qualification of, this Indenture under the TIA; or

(8)    to evidence the release of a Guarantor pursuant to and in accordance with the terms of this Indenture.

After an amendment under this Section 9.01 becomes effective, the Company shall mail to Noteholders a notice briefly describing such amendment. The failure to give such notice to all Noteholders, or any defect therein, shall not impair or affect the validity of an amendment under this Section 9.01.

SECTION 9.02.     With Consent of Holders.

(a)     Except as provided in Section 9.02(b), the Company, the Guarantors and the Trustee may amend this Indenture, any Collateral Documents or the Notes without notice to any Noteholder but with the written consent of the Holders of at least a majority in principal amount of the Notes then outstanding (including consents obtained in connection with a tender offer or exchange offer for the Notes), including, without limitation, to reflect any amendment to the terms, conditions and other provisions of clauses (ii)–(v) of Section 4.01(b) of this Indenture and the defined terms used therein.

(b)     Without the consent of each Noteholder affected thereby, an amendment may not:

(2)     reduce the amount of Notes whose Holders must consent to an amendment;

(3)     reduce the rate of or extend the time for payment of interest on any Note;

(4)     reduce the principal of or extend the Stated Maturity of any Note;

(5)     reduce the amount payable upon the redemption of any Note or change the time at which any Note may be redeemed in accordance with Article 3;

(6)     make any Note payable in money other than that stated in the Note;

(7)     impair the right of any Noteholder to receive payment of principal and interest on such Noteholder's Notes on or after the due dates therefor or to institute suit for the enforcement of any payment on or with respect to such Noteholder's Notes;

(8)     impair the Company's obligation to make an offer to purchase Notes pursuant to Section 4.04 or 4.09 except as permitted under Section 4.04(g) or 4.09(d), respectively;

(9)     make any change in Section 4.04(g), Section 4.09(d), Section 6.04, 6.07 or the second sentence of this Section;

(10)     make any change in the ranking or priority of any Note that would adversely affect the Noteholders; or

(11)     make any change in any Guaranty or any Collateral Document that would adversely affect the Noteholders.

It shall not be necessary for the consent of the Holders under this Section 9.02 to approve the particular form of any proposed amendment, but it shall be sufficient if such consent approves the substance thereof.

After an amendment under this Section 9.02 becomes effective, the Company shall mail to Noteholders a notice briefly describing such amendment. The failure to give such notice to all Noteholders, or any defect therein, shall not impair or affect the validity of an amendment under this Section 9.02.

Pursuant to Section 12.06, in certain circumstances a Note may be disregarded and deemed not to be outstanding for purposes of this Section.

SECTION 9.03.    Compliance with Trust Indenture Act. Every amendment to this Indenture or the Notes shall comply with the TIA as then in effect.

SECTION 9.04.    Revocation and Effect of Consents and Waivers. A consent to an amendment or a waiver by a Holder of a Note shall bind the Holder and every subsequent Holder of that Note or portion of the Note that evidences the same debt as the consenting Holder's Note, even if notation of the consent or waiver is not made on the Note. However, any such Holder or subsequent Holder may revoke the consent or waiver as to such Holder's Note or portion of the Note if the Trustee receives the notice of revocation before the date the amendment or waiver becomes effective. After an amendment or waiver becomes effective, it shall bind every Noteholder. An amendment or waiver becomes effective upon the execution of such amendment or waiver by the Trustee.

The Company may, but shall not be obligated to, fix a record date for the purpose of determining the Noteholders entitled to give their consent or take any other action described above or required or permitted to be taken pursuant to this Indenture. If a record date is fixed, then notwithstanding the immediately preceding paragraph, those Persons who were Noteholders at such record date (or their duly designated proxies), and only those Persons, shall be entitled to give such consent or to revoke any consent previously given or to take any such action, whether or not such Persons continue to be Holders after such record date. No such consent shall be valid or effective for more than 120 days after such record date.

SECTION 9.05.    Notation on or Exchange of Notes. If an amendment changes the terms of a Note, the Trustee may require the Holder of the Note to deliver it to the Trustee. The Trustee may place an appropriate notation on the Note regarding the changed terms and return it to the Holder. Alternatively, if the Company or the Trustee so determines, the Company in exchange for the Note shall issue and the Trustee shall authenticate a new Note that reflects the changed terms. Failure to make the appropriate notation or to issue a new Note shall not affect the validity of such amendment.

SECTION 9.06.    Trustee To Sign Amendments. The Trustee shall sign any amendment authorized pursuant to this Article 9 if the amendment does not adversely affect the rights, duties, liabilities or immunities of the Trustee. If it does, the Trustee may but need not sign it. In signing such amendment the Trustee shall be entitled to receive indemnity reasonably satisfactory to it and to receive, and (subject to Section 7.01) shall be fully protected in relying

upon, an Officers' Certificate and an Opinion of Counsel stating that such amendment is authorized or permitted by this Indenture.

## ARTICLE 10

### Guaranties

SECTION 10.01.    Guaranties.

(a)    Subject to the limitations set forth in this Article 10, each Guarantor hereby unconditionally and irrevocably guarantees, jointly and severally, to each Holder and to the Trustee and its successors and assigns (i) the full and punctual payment of principal of and interest on the Notes when due, whether at maturity, by acceleration, by redemption or otherwise, and all other monetary obligations of the Company under this Indenture and the Notes and (ii) the full and punctual performance within applicable grace periods of all other obligations of the Company under this Indenture, the Notes and the Collateral Documents (all the foregoing being hereinafter collectively called the *"Guaranteed Obligations"*).

(b)    As of the Issue Date, the Guarantors of the Notes are: 1) Loral Skynet International, LLC, (2) LAPS (HK), (3) Loral SpaceCom Corporation, (4) Loral Skynet Network Services, Inc., (5) Loral Communications Services, Inc., (6) Loral Ground Services, L.L.C., (7) Loral CyberStar International, Inc., (8) Loral CyberStar Services, Inc., (9) Loral CyberStar Holdings, L.L.C., (10) Loral Skynet Network Services Holdings L.L.C., (11) Loral Cyberstar L.L.C., and (12) CyberStar, L.L.C.

(c)    Each Guarantor further agrees that the Guaranteed Obligations may be extended or renewed, in whole or in part, without notice or further assent from such Guarantor and that such Guarantor will remain bound under this Article 10 notwithstanding any extension or renewal of any Guaranteed Obligation.

(d)    Each Guarantor waives presentation to, demand of, payment from and protest to the Company of any of the Guaranteed Obligations and also waives notice of acceleration, notice of intent to accelerate and notice of protest for nonpayment. Subject to Section 6.01, each Guarantor waives notice of any default under the Notes or the Guaranteed Obligations. The obligations of each Guarantor hereunder shall not be affected by: (i) the failure of any Holder or the Trustee to assert any claim or demand or to enforce any right or remedy against the Company or any other Person under this Indenture, the Notes or any other agreement or otherwise; (ii) any extension or renewal of any thereof; (iii) any rescission, waiver, amendment or modification of any of the terms or provisions of this Indenture, the Notes or any other agreement; (iv) the release of any security held by any Holder or the Trustee for the Guaranteed Obligations or any of them; (v) the failure of any Holder or the Trustee to exercise any right or remedy against any other guarantor of the Guaranteed Obligations; or (vi) except as set forth in Section 10.06, any change in the ownership of any such Guarantor.

(e)    Each Guarantor further agrees that its Guaranty herein constitutes a guarantee of payment, performance and compliance when due (and not a guarantee of collection)

and waives any right to require that any resort be had by any Holder or the Trustee to any security held for payment of the Guaranteed Obligations.

(f)     Except as expressly set forth in Sections 8.01, 10.02 and 10.06, the obligations of each Guarantor hereunder shall not be subject to any reduction, limitation, impairment or termination for any reason, including any claim of waiver, release, surrender, alteration or compromise, and shall not be subject to any defense of setoff, counterclaim, recoupment or termination whatsoever or by reason of the invalidity, illegality or unenforceability of the Guaranteed Obligations or otherwise. Without limiting the generality of the foregoing, the obligations of each Guarantor herein shall not be discharged or impaired or otherwise affected by the failure of any Holder or the Trustee to assert any claim or demand or to enforce any remedy under this Indenture, the Notes or any other agreement, by any waiver or modification of any thereof, by any default, failure or delay, willful or otherwise, in the performance of the obligations, or by any other act or thing or omission or delay to do any other act or thing which may or might in any manner or to any extent vary the risk of any such Guarantor or would otherwise operate as a discharge of any such Guarantor as a matter of law or equity.

(g)     Each Guarantor further agrees that its Guaranty herein shall continue to be effective or be reinstated, as the case may be, if at any time payment, or any part thereof, of principal of or interest on any Guaranteed Obligation is rescinded or must otherwise be restored by any Holder or the Trustee upon the bankruptcy or reorganization of the Company or otherwise.

(h)     In furtherance of the foregoing and not in limitation of any other right which any Holder or the Trustee has at law or in equity against any Guarantor by virtue hereof, subject to the limitations set forth in this Article 10, upon the failure of the Company to pay the principal of or interest on any Guaranteed Obligation when and as the same shall become due, whether at maturity, by acceleration, by redemption or otherwise, or to perform or comply with any other Guaranteed Obligation, each Guarantor hereby promises to and shall, upon receipt of written demand by the Trustee, forthwith pay, or cause to be paid, in cash, to the Holders or the Trustee an amount equal to the sum of (1) the unpaid amount of such Guaranteed Obligations, (2) accrued and unpaid interest on such Guaranteed Obligations (but only to the extent not prohibited by law) and (3) all other monetary Guaranteed Obligations of the Company to the Holders and the Trustee.

(i)     Each Guarantor agrees that it shall not be entitled to any right of subrogation in respect of any Guaranteed Obligations guaranteed under this Indenture until payment in full of all Guaranteed Obligations. Each Guarantor further agrees that, as between it, on the one hand, and the Holders and the Trustee, on the other hand, (1) the maturity of the Guaranteed Obligations guaranteed under this Indenture may be accelerated as provided in Article 6 for the purposes of such Guarantor's Guaranty herein, notwithstanding any stay, injunction or other prohibition preventing such acceleration in respect of the Guaranteed Obligations guaranteed under this Indenture, and (2) in the event of any declaration of acceleration of such Guaranteed Obligations as provided in Article 6, such Guaranteed Obligations (whether or not due and payable) shall forthwith become due and payable by such Guarantor for the purposes of this Section 10.01.

(j)     Each Guarantor also agrees to pay any and all costs and expenses (including reasonable attorneys' fees) incurred by the Trustee or any Holder in enforcing any rights under this Section 10.01.

SECTION 10.02.     Limitation on Liability.  Any term or provision of this Indenture to the contrary notwithstanding, the maximum aggregate amount of the Guaranteed Obligations guaranteed hereunder by any Guarantor shall not exceed the maximum amount that can be hereby guaranteed without rendering this Indenture, as it relates to such Guarantor, voidable under applicable law relating to fraudulent conveyance or fraudulent transfer or similar laws affecting the rights of creditors generally.

SECTION 10.03.     Successors and Assigns.  This Article 10 shall be binding upon each Guarantor and its successors and assigns and shall inure to the benefit of the successors and assigns of the Trustee and the Holders and, in the event of any transfer or assignment of rights by any Holder or the Trustee, the rights and privileges conferred upon that party in this Indenture and in the Notes shall automatically extend to and be vested in such transferee or assignee, all subject to the terms and conditions of this Indenture.

SECTION 10.04.     No Waiver.  Neither a failure nor a delay on the part of either the Trustee or the Holders in exercising any right, power or privilege under this Article 10 shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise of any right, power or privilege.  The rights, remedies and benefits of the Trustee and the Holders herein expressly specified are cumulative and not exclusive of any other rights, remedies or benefits which either may have under this Article 10, at law, in equity, by statute or otherwise.

SECTION 10.05.     Modification.  No modification, amendment or waiver of any provision of this Article 10, nor the consent to any departure by any Guarantor therefrom, shall in any event be effective unless the same shall be in writing and signed by the Trustee, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given.  No notice to or demand on any Guarantor in any case shall entitle such Guarantor to any other or further notice or demand in the same, similar or other circumstances.

SECTION 10.06.     Release of Guarantor.  The Guaranty of a Guarantor will be automatically released:

(1)     upon the sale or other disposition (including by way of consolidation or merger or dissolution) of that Guarantor to a Person that is not (either before or after giving effect to such transaction) the Company or an Affiliate of the Company, if such sale or other disposition complies with Section 4.09 and Article 11;

(2)     upon the sale or other disposition of all or substantially all the assets of that Guarantor to a Person that is not (either before or after giving effect to such transaction) the Company or an Affiliate of the Company, if such sale or other disposition complies with Section 4.09 and Article 11;

(3)     if the Company designates that Guarantor as an Unrestricted Subsidiary in compliance with the applicable provisions of this Indenture; or

(4)     upon legal defeasance or covenant defeasance or satisfaction and discharge of this Indenture as provided in Article 8.

ARTICLE 11

Collateral

SECTION 11.01.     Collateral Documents; Additional Collateral.

(a)     In order to secure the due and punctual payment of the principal of, premium, if any, and interest on the Notes when and as the same shall be due and payable, whether on an Interest Payment Date, at maturity, pursuant to an Asset Disposition Offer or Change of Control Offer, or by acceleration, redemption or otherwise, and interest on the overdue principal of and (to the extent permitted by law) interest, if any, on the Notes and the performance of all other obligations of the Company and the Guarantors to the Holders, the Trustee and the Collateral Agent under this Indenture, the Notes, the Collateral Documents and any other documents contemplated hereby, the Company, the Guarantors and the Collateral Agent have simultaneously with the execution of this Indenture entered into the Security Agreement, and may in the future enter into additional Collateral Documents.  The Collateral Agent, the Trustee, the Company and the Guarantors each hereby agree that the Collateral Agent holds its interest in the Collateral in trust for its benefit, the benefit of the Trustee and the benefit of the Holders pursuant to the terms of the Collateral Documents.  Each of the Company and the Guarantors covenants and agrees that it will execute, acknowledge and deliver to the Collateral Agent such further assignments, transfers, assurances or other instruments and will do or cause to be done all such acts and things as may be necessary or proper to assure and confirm to the Collateral Agent its interest in the Collateral, or any part thereof, as from time to time constituted, and the right, title and interest in and to the Collateral Documents so as to render the same available for the security and benefit of this Indenture and of the Notes.

(b)     Promptly upon the acquisition or receipt by the Company or any of the Guarantors of property and assets, whether real, personal or mixed, tangible or intangible, and including, without limitation, property and assets acquired or received pursuant to a merger or consolidation of any Person or Persons with or into the Company or a Guarantor, pursuant to an Asset Disposition, pursuant to a transaction as a result of which a Guarantor is released as provided in Section 10.06, or pursuant to a transaction as a result of which a Person becomes a Guarantor as provided in Section 4.11 (each such item of property and each such asset so acquired or received, but excluding any of the foregoing which would constitute Excluded Collateral, being referred to herein as *"After-Acquired Property"*):

(i)     except for Unperfected Collateral, the Company or the applicable Guarantor, as the case may be, and the Collateral Agent will enter into all supplemental indentures, if any, required pursuant to the terms of this Indenture (including, without limitation, Section 4.11 hereof) and all such amendments or supplements to the Collateral Documents or such additional Collateral Documents as shall be necessary in order to grant and create a valid first priority Lien on and security interest in such After-Acquired Property in favor of the Collateral Agent (subject to no prior Liens except as permitted by this Indenture), and the Company shall cause appropriate financing statements, mortgages

and other papers to be filed in such governmental offices as shall be necessary in order to perfect any Lien in such After-Acquired Property as to which a Lien may, under the Uniform Commercial Code or any other law of the applicable jurisdiction, be perfected by filing, and, if any such After-Acquired Property consists of stock certificates, promissory notes or other property as to which, under the relevant Uniform Commercial Code or other law, a Lien may be perfected by possession or control, deliver such certificates, promissory notes and other property, together with stock powers or assignments duly endorsed in blank, to the Collateral Agent or take such other steps as may from time to time be necessary or desirable to grant the Collateral Agent control over such After-Acquired Property;

(ii)    for any such After-Acquired Property that constitutes Unperfected Collateral, (A) the Company or the applicable Guarantor, as the case may be, and the Collateral Agent will enter into all supplemental indentures, if any, required pursuant to the terms of this Indenture (including, without limitation, Section 4.11 hereof) and all such amendments or supplements to the Collateral Documents or such additional Collateral Documents as shall be necessary in order to grant and create a valid Lien on and security interest in such After-Acquired Property in favor of the Collateral Agent;

(iii)    the Company or the applicable Guarantor, as the case may be, shall also deliver to the Trustee the following:

(A)    to the extent such After-Acquired Property consists of real property or a leasehold interest in real property, a customary title insurance policy;

(B)    any Opinions of Counsel required pursuant to Section 11.02(b) below; and

(C)    evidence of payment of all filing fees, recording and registration charges, transfer taxes and other costs and expenses, including reasonable legal fees and disbursements of counsel for the Collateral Agent (and any local counsel), that may be incurred to validly and effectively subject the After-Acquired Property to the Lien of any applicable Collateral Document and perfect such Lien; and

(iv)    The Company shall deliver to the Collateral Agent an Opinion of Counsel and an Officers' Certificate to the effect that the documents that have been or are therewith delivered to the Collateral Agent pursuant to this Section 11.01(b) (including any amendments, supplements or other Collateral Documents referred to in paragraph (i) above) conform to the requirements of this Indenture.

(c)    Each Holder, by accepting a Note, agrees to and shall be bound by all the terms and provisions of the Collateral Documents, as the same may be amended or supplemented from time to time, and hereby grants the Collateral Agent full power and authority to execute, deliver, perform and enforce all such Collateral Documents without any consent or other action by the Holders.

Notwithstanding any provision of this Indenture or any Collateral Document to the contrary, the Obligors shall not be obligated to take any action under any foreign law to create or perfect a security interest in any asset (other than satellites and transponders) located outside the United States, and the Obligors shall have until the number of days described in Schedule 11.01 after the consummation date to perfect the security interest in Collateral set forth on Schedule 11.01. To the extent the creation of a Lien requires the consent of a third party, the Company shall be deemed to have satisfied its obligation to provide a Lien under this Indenture and the Collateral Documents if it shall, with consent or by virtue of the provisions of applicable law (including the applicable UCC), have provided a Lien even though the Trustee may not be able to transfer the Collateral to third parties, render performance to the Person party to the Collateral or be able to compel performance from such Person to the Trustee.

SECTION 11.02.    Recording, Registration and Opinions.

(a)    The Company and the Guarantors shall take or cause to be taken all action required to perfect, maintain, preserve and protect the Lien on and security interest in the Collateral granted by the Collateral Documents (subject only to Liens expressly permitted by this Indenture), including without limitation, the filing of financing statements, continuation statements and any instruments of further assurance, in such manner and in such places as may be required by law fully to preserve and protect the rights of the Holders, the Collateral Agent and the Trustee under this Indenture and the Collateral Documents to all property comprising the Collateral. The Company and the Guarantors shall from time to time promptly pay all financing and continuation statement recording, registration and/or filing fees, charges and taxes relating to this Indenture and the Collateral Documents, any amendments thereto and any other instruments of further assurance required hereunder or pursuant to the Collateral Documents.

(b)    (i)    The Company and the Guarantors shall furnish to the Trustee and the Collateral Agent on the Issue Date a customary Opinion of Counsel stating that this Indenture, the Notes and the Collateral Documents have been duly authorized, executed and delivered by, and constitute the valid, binding and enforceable obligations of, the Company and the Guarantors. Such Opinion of Counsel shall address perfection of the Liens contemplated by this Indenture and the Collateral Documents and such other issues as the Trustee and the Collateral Agent shall reasonably request, and such Opinion of Counsel may be subject to customary exceptions.

(ii)    The Company shall furnish to the Trustee and the Collateral Agent, promptly after the execution and delivery of this Indenture, an Opinion of Counsel in compliance with TIA Section 314(b)(1) either (A) substantially to the effect that, in the opinion of such counsel, this Indenture and the grant of the Liens on and security interests in the Collateral intended to be made by the Collateral Documents and all other instruments of further assurance, including, without limitation, financing statements, have been properly recorded and filed to the extent necessary to record or register (as the case may be), and if applicable, to perfect the Liens on and security interests in the Collateral created by the Collateral Documents, to the extent that a Lien or security interest may be perfected by filing, and stating that as to the Liens and security interests created pursuant to the Collateral Documents, such recordings, registrations and filings are the only recordings, registrations and filings necessary to give notice thereof and that no re-recordings, re-registrations or refilings are necessary to maintain such notice (other than as stated

in such opinion), or (B) to the effect that, in the opinion of such counsel, no such action is necessary to record or register such Liens or to perfect such security interests.

(iii)     The Company or the applicable Guarantor shall furnish to the Trustee and the Collateral Agent, at the time of execution and delivery of any additional Collateral Documents or any amendments or supplements to existing Collateral Documents, an Opinion of Counsel either substantially to the effect set forth in clause (b)(ii)(A) above (but relating only to such additional Collateral Documents or any amendments or supplements to existing Collateral Documents and the related After-Acquired Property) or to the effect set forth in clause (b)(ii)(B) above, and to the further effect that such additional Collateral Documents or amendments or supplements to existing Collateral Documents, as the case may be, and, if applicable, such Collateral Documents as amended and supplemented thereby, have been duly authorized, executed and delivered by, and constitute the valid, binding and enforceable obligations of the Company or the relevant Guarantor, as the case may be, subject to customary exceptions.

(c)     The Company shall furnish to the Trustee on the anniversary of the Issue Date in each year, beginning with 2006, an Opinion of Counsel, dated as of such date, which complies with TIA Section 314(b)(2), either (i)(A) stating that, in the opinion of such counsel, such action has been taken with respect to the recording, registration, filing, re-recording, re-registration and refiling of this Indenture and all supplemental indentures, financing statements, continuation statements and other documents as is necessary to maintain the Lien of the Collateral Documents and reciting with respect to the Liens on and security interests in the Collateral the details of such action or referring to prior Opinions of Counsel in which such details are given, and (B) stating that, based on relevant laws as in effect on the date of such Opinion of Counsel, all financing statements, continuation statements and other documents have been executed and filed that are necessary as of such date and during the succeeding 24 months fully to maintain the Liens and security interests of the Holders and the Trustee hereunder and under the Collateral Documents with respect to the Collateral; provided that if there is a required filing of a continuation statement within such 24 month period and such continuation statement is not effective if filed at the time of the opinion, such opinion may so state and in that case the Company shall cause a continuation statement to be timely filed so as to maintain such Liens and security interests and shall provide a further Opinion of Counsel to the effect of this clause (i) upon the filing of the relevant continuation statement; or (ii) stating that, in the opinion of such counsel, no such action is necessary to maintain such Liens or security interests.

SECTION 11.03.     Release of Collateral.

(a)     The Collateral Agent shall not at any time release Collateral from the Liens created by this Indenture and the Collateral Documents unless such release is in accordance with the provisions of this Indenture and the Collateral Documents.

(b)     The Collateral Agent shall release Collateral from the Liens contemplated by this Indenture and the Collateral Documents if, when and to the extent required by Section 11.05 or 11.07 hereof.

(c)     The release of any Collateral from the Lien of the Collateral Documents shall not be deemed to impair the security under this Indenture in contravention of the provisions hereof if and to the extent the Collateral is released pursuant to this Indenture and the Collateral Documents. To the extent applicable, the Company shall cause TIA Section 314(d) relating to the release of property from the Lien of the Collateral Documents and relating to the substitution therefor of any property to be subjected to the Lien of the Collateral Documents to be complied with. Any certificate or opinion required by TIA Section 314(d) may be made by an Officer of the Company, except in cases where TIA Section 314(d) requires that such certificate or opinion be made by an independent person, which person shall be an independent engineer, appraiser or other expert selected or approved by the Trustee in the exercise of reasonable care.

SECTION 11.04.     Possession and Use of Collateral.

Subject to and in accordance with the provisions of this Indenture and the Collateral Documents, so long as the Collateral Agent has not exercised rights or remedies with respect to the Collateral in connection with an Event of Default that has occurred and is continuing, the Company and the Guarantors shall have the right to remain in possession and retain exclusive control of and to exercise all rights with respect to the Collateral (other than monies or U.S. Government Obligations deposited pursuant to Article 8), to operate, manage, develop, lease, use, consume and enjoy the Collateral, to alter or repair any Collateral so long as such alterations and repairs do not impair the Lien of the Collateral Documents thereon, and to collect, receive, use, invest and dispose of the reversions, remainders, interest, rents, lease payments, issues, profits, revenues, proceeds and other income thereof.

SECTION 11.05.     Specified Releases of Collateral.

(a)     *Satisfaction and Discharge; Defeasance.* The Company and the Guarantors shall be entitled to obtain a full release of all of the Collateral from the Liens of this Indenture and of the Collateral Documents upon compliance with the conditions precedent set forth in Article 8 for legal defeasance, covenant defeasance or satisfaction and discharge. Upon delivery by the Company to the Trustee of an Officers' Certificate and an Opinion of Counsel, each to the effect that such conditions precedent have been complied with (and which may be the same Officers' Certificate and Opinion of Counsel required by Article 8), together with such documentation, if any, as may be required by the TIA (including, without limitation, TIA Section 314(d)) prior to the release of such Collateral, the Trustee shall forthwith take all necessary action (at the request of and the expense of the Company) to release and reconvey to the Company and the applicable Guarantors without recourse all of the Collateral, and shall deliver such Collateral in its possession to the Company and the applicable Guarantors including, without limitation, the execution and delivery of releases and satisfactions wherever required.

(b)     *Dispositions of Collateral Permitted by Section 4.09.* The Company and the Guarantors, as the case may be, shall be entitled to obtain a release of, and the Collateral Agent shall release, items of Collateral (the *"Released Collateral"*) subject to an Asset Disposition or any other disposition that is permitted under the terms of this Indenture upon compliance with the conditions precedent that the Company shall have delivered to the Collateral Agent the following to the extent applicable:

(i)     An Officers' Certificate of the Company requesting release of such Released Collateral (A) specifically describing the proposed Released Collateral, (B) certifying that such sale complies with the terms and conditions of this Indenture, including, without limitation, Section 4.09 hereof (but may assume that the proceeds from such sale will be applied in compliance with Section 4.09), (C) certifying the extent to which that the consideration from such sale will constitute After-Acquired Collateral and Excluded Collateral, and that all Net Available Cash from the sale of any of the Released Collateral will be applied pursuant to Section 4.09, (D) certifying there is not and will not be a Default or Event of Default in effect or continuing on the date thereof, or the date of such sale, (E) certifying that the release of the Collateral will not result in a Default or Event of Default hereunder and (F) certifying that all conditions precedent to such release have been complied with;

(ii)     All documentation required by the TIA (including, without limitation, the certificates of fair value required pursuant to TIA Section 314(d), which include, without limitation, a statement that the proposed release will not impair the security granted under this Indenture in contravention of the provisions hereof), if any, prior to the release of Collateral by the Collateral Agent, and all documentation required to subject the Consideration to the Lien of the relevant Collateral Documents, and all documents required by Section 11.01 hereof; and

(iii)     An Opinion of Counsel stating that the documents that have been or are therewith delivered to the Trustee in connection with such release conform to the requirements of this Indenture and that all conditions precedent herein provided for relating to such release have been complied with.

Upon compliance by the Company with the conditions precedent set forth above, the Collateral Agent shall cause to be released and reconveyed to the Company or the applicable Guarantor the Released Collateral without recourse by executing a release in the form provided by the Company or the applicable Guarantor and reasonably acceptable to the Collateral Agent.

SECTION 11.06.     Disposition of Collateral Without Release.

Notwithstanding the provisions of Section 11.05 and subject to Section 11.07 below, so long as no Default or Event of Default shall have occurred and be continuing or would result therefrom, the Company and the Guarantors may, without any prior release or consent by the Collateral Agent, conduct ordinary course activities in respect of the Collateral not constituting Asset Dispositions which do not individually or in the aggregate adversely affect the value of the Collateral taken as a whole, including (A) selling or otherwise disposing of, in any single transaction or series of related transactions, any property subject to the Lien of this Indenture or the Collateral Documents which has become worn out or obsolete and which either has an aggregate fair market value of $1.0 million or less or which is replaced by property of substantially equivalent or greater value which becomes subject to the Lien of the Collateral Documents as After-Acquired Property; (B) abandoning, terminating, canceling, releasing or making alterations in or substitutions of any leases or contracts subject to the Lien of this Indenture or any of the Collateral Documents; (C) surrendering or modifying any franchise, license or permit subject to the Lien of this Indenture or any of the Collateral Documents which

it may own or under which it may be operating; (D) altering, repairing, replacing, changing the location or position of and adding to its structures, machinery, systems, equipment, fixtures, and appurtenances, provided, however, that no change in the location of any such Collateral subject to the Lien of any of the Collateral Documents shall be made which results in such Lien becoming unperfected or otherwise impairs the Lien of the Collateral Documents; (E) demolishing, dismantling, tearing down or scrapping any Collateral or abandoning any thereof if, in the good faith opinion of the Board of Directors of the Company (as evidenced by a resolution of the Board of Directors delivered to the Collateral Agent if it involves Collateral having a fair market value in excess of $1.0 million) such demolition, dismantling, tearing down, scrapping or abandonment is in the best interests of the Company, will not interfere with or impede the Collateral Agent's ability to realize the value of the remaining Collateral and will not impair the maintenance and operation of the remaining Collateral, and the fair market value and utility of the Collateral as an entirety, and the security for the Notes, will not thereby be otherwise impaired; (F) granting a nonexclusive license of any intellectual property; and (G) abandoning intellectual property which has become obsolete and not used in the business of the Company or its Subsidiaries.

SECTION 11.07.    Form and Sufficiency of Release.

In the event that the Company or any Guarantor has sold, exchanged, or otherwise disposed of or proposes to sell, exchange or otherwise dispose of any portion of the Collateral that under the provisions of Section 11.05 or 11.06 may be sold, exchanged or otherwise disposed of by the Company or any Guarantor, and the Company or such Guarantor requests the Collateral Agent to furnish a written disclaimer, release or quitclaim of any interest in such property under this Indenture and the Collateral Documents, upon being satisfied that the Company or such Guarantor is selling, exchanging or otherwise disposing of the Collateral in accordance with the provisions of Section 11.05 or 11.06 (which may include receipt of an Officers' Certificate and Opinion of Counsel upon the request of the Collateral Agent), the Collateral Agent shall execute, acknowledge and deliver to the Company or such Guarantor such an instrument in the form provided by the Company and reasonably acceptable to the Collateral Agent providing for release without recourse, promptly after satisfaction of the conditions set forth herein for delivery of any such release and shall take such other action as the Company or such Guarantor may reasonably request and is necessary to effect such release. Notwithstanding the preceding sentence, all purchasers and grantees of any property or rights purporting to be released shall be entitled to rely upon any release executed by the Collateral Agent hereunder as sufficient for the purpose of this Indenture and as constituting a good and valid release of the property therein described from the Lien of this Indenture and of the Collateral Documents.

SECTION 11.08.    Purchaser Protected.

No purchaser or grantee of any property or rights purporting to be released shall be bound to ascertain the authority of the Collateral Agent to execute the release or to inquire as to the existence of any conditions herein prescribed for the exercise of such authority.

SECTION 11.09.    Authorization of Actions To Be Taken by the Collateral Agent Under the Collateral Documents.

Subject to the provisions of the Collateral Documents:

(a)     the Collateral Agent may, in its sole discretion and without the consent of the Holders, take all actions it deems necessary or appropriate in order to (i) comply with, enforce and perform, from time to time, any of the terms of the Collateral Documents and (ii) collect and receive any and all amounts payable in respect of the Obligations of the Company and the Guarantors hereunder and under the Collateral Documents; and

(b)     the Collateral Agent shall have power to institute and to maintain such suits and proceedings as it may deem expedient to prevent any impairment of the Collateral by any act that may be unlawful or in violation of the Collateral Documents or this Indenture, and such suits and proceedings as the Collateral Agent may deem expedient to preserve or protect its interests and the interests of the Holders in the Collateral (including the power to institute and maintain suits or proceedings to restrain the enforcement of or compliance with any legislative or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid if the enforcement of, or compliance with, such enactment, rule or order would impair the security interest thereunder or be prejudicial to the interests of the Holders or of the Collateral Agent).

SECTION 11.10.     Authorization of Receipt of Funds by the Collateral Agent Under the Collateral Documents.

The Collateral Agent is authorized to receive any funds for the benefit of Holders distributed under the Collateral Documents, to apply such funds as provided in this Indenture and the Collateral Documents, and to make further distributions of such funds to the Holders in accordance with the provisions of Article 11 and the other provisions of this Indenture.

SECTION 11.11.     Third Party Consents to Pledge of Collateral.

If the Company or any Guarantor is required to obtain the consent of any third party to permit the Company and/or such Guarantor(s) to grant and create a valid first priority Lien on and security interest in any item of Collateral material to the business of the Company and its Subsidiaries taken as a whole pursuant to the terms of this Agreement or any Collateral Documents, the Company or the applicable Guarantor shall use its Commercially Reasonable Efforts to obtain such consent but shall not be required to seek such consent to the extent that the provisions of Sections 9-406 through 9-409 of the applicable Uniform Commercial Code permit the granting of the Lien on and security interest in such item of Collateral without the consent of such third party (even if enforcement of the Lien and rights and obligations of the parties to such item of Collateral remain unaffected).

ARTICLE 12

Miscellaneous

SECTION 12.01.     Trust Indenture Act Controls.  If any provision of this Indenture limits, qualifies or conflicts with another provision which is required to be included in this Indenture by the TIA, the required provision shall control.  Each Guarantor in addition to performing its obligations under its Guaranty shall perform such other obligations as may be imposed upon it with respect to this Indenture by the TIA.

SECTION 12.02.    Notices.  Any notice, request or communication shall be in writing and delivered in person or mailed by first-class mail, postage prepaid,  addressed as follows:

if to the Company or any Guarantor:

Loral Skynet Corporation

_____

_____

Attention: [_____]

with a copy to:

[_____]

_____

_____

Attention: [_____]

if to the Trustee:

[_____]

_____

_____

Attention: [_____]

The Company, any Guarantor or the Trustee by notice to the other may designate additional or different addresses for subsequent notices or communications.

Any notice or communication mailed to a Noteholder shall be mailed to the Noteholder at the Noteholder's address as it appears on the registration books of the Registrar and shall be sufficiently given if so mailed within the time prescribed.

Failure to mail a notice or communication to a Noteholder or any defect in it shall not affect its sufficiency with respect to other Noteholders.  If a notice or communication is mailed in the manner provided above, it is duly given, whether or not the addressee receives it.

Any notice or communication shall also be so mailed to any Person described in TIA § 313(c), to the extent required by the TIA.  Copies of any such communication or notice to a Holder shall also be mailed to the Trustee, the Registrar, co-registrar, Paying Agent and transfer agent at the same time.

Where this Indenture provides for notice in any manner, such notice may be expressly waived in writing by the Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice.  Waiver of notice by Holders shall be filed with the Trustee, but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such waiver.

In case by reason of the suspension of regular mail service it shall be impracticable to give such notice by mail, then such notification as shall be made with the approval of the Trustee shall constitute a sufficient notification for every purpose hereunder.

SECTION 12.03.     Communication by Holders with Other Holders. Noteholders may communicate pursuant to TIA § 312(b) with other Noteholders with respect to their rights under this Indenture or the Notes. The Company, each Guarantor, the Trustee, the Registrar and anyone else shall have the protection of TIA § 312(c).

SECTION 12.04.     Certificate and Opinion as to Conditions Precedent.  Upon any request or application by the Company to the Trustee to take or refrain from taking any action under this Indenture, the Company shall furnish to the Trustee:

(1)     an Officers' Certificate in form and substance reasonably satisfactory to the Trustee stating that, in the opinion of the signers, all conditions precedent, if any, provided for in this Indenture relating to the proposed action have been complied with; and

(2)     an Opinion of Counsel in form and substance reasonably satisfactory to the Trustee stating that, in the opinion of such counsel, all such conditions precedent have been complied with.

SECTION 12.05.     Statements Required in Certificate or Opinion.  Each certificate or opinion with respect to compliance with a covenant or condition provided for in this Indenture shall include:

(1)     a statement that the individual making such certificate or opinion has read such covenant or condition;

(2)     a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based;

(3)     a statement that, in the opinion of such individual, he or she has made such examination or investigation as is necessary to enable him or her to express an informed opinion as to whether or not such covenant or condition has been complied with; and

(4)     a statement as to whether or not, in the opinion of such individual, such covenant or condition has been complied with;

provided, however, that with respect to matters of fact an Opinion of Counsel may rely on an Officers' Certificate or certificates of public officials.

SECTION 12.06.     When Notes Disregarded.  In determining whether the Holders of the required principal amount of Notes have concurred in any direction, waiver or consent, Notes owned by the Company or by any Person directly or indirectly controlling or controlled by or under direct or indirect common control with the Company shall be disregarded and deemed not to be outstanding, except that, for the purpose of determining whether the

Trustee shall be protected in relying on any such direction, waiver or consent, only Notes which a Trust Officer of the Trustee knows are so owned shall be so disregarded. Also, subject to the foregoing, only Notes outstanding at the time shall be considered in any such determination. Notwithstanding the foregoing, Notes owned on the Issue Date by MHR or any Related Party thereof shall not be so disregarded so long as such Notes are owned by MHR or any Related Party thereof.

SECTION 12.07. <u>Rules by Trustee, Paying Agent and Registrar.</u> The Trustee may make reasonable rules for action by or a meeting of Noteholders. The Registrar and the Paying Agent may make reasonable rules for their functions.

SECTION 12.08. <u>Legal Holidays.</u> A ***"Legal Holiday"*** is a Saturday, a Sunday or a day on which banking institutions are not required to be open in the State of New York. If a payment date is a Legal Holiday, payment shall be made on the next succeeding day that is not a Legal Holiday, and no interest shall accrue for the intervening period. If a regular record date is a Legal Holiday, the record date shall not be affected.

SECTION 12.09. <u>Governing Law.</u> This Indenture and the Notes shall be governed by, and construed in accordance with, the laws of the State of New York but without giving effect to applicable principles of conflicts of law to the extent that the application of the laws of another jurisdiction would be required thereby.

SECTION 12.10. <u>No Recourse Against Others.</u> No director, officer, employee, incorporator or stockholder, as such, of the Company or any Guarantor will have any liability for any obligations of the Company or any Guarantor under the Notes, any Guaranty or this Indenture or for any claim based on, in respect of, or by reason of such obligations or their creation. Each Holder of the Notes by accepting a Note waives and releases all such liability. The waiver and release are part of the consideration for issuance of the Notes.

SECTION 12.11. <u>Successors.</u> All agreements of the Company and the Guarantors in this Indenture and the Notes shall bind their respective successors. All agreements of the Trustee in this Indenture shall bind its successors.

SECTION 12.12. <u>Multiple Originals.</u> The parties may sign any number of copies of this Indenture. Each signed copy shall be an original, but all of them together represent the same agreement. One signed copy is enough to prove this Indenture.

SECTION 12.13. <u>Table of Contents; Headings.</u> The table of contents, cross-reference sheet and headings of the Articles and Sections of this Indenture have been inserted for convenience of reference only, are not intended to be considered a part hereof and shall not modify or restrict any of the terms or provisions hereof.

IN WITNESS WHEREOF, the parties have caused this Indenture to be duly executed as of the date first written above.

LORAL SKYNET CORPORATION,
as the Company

By:_____
Name:_____
Title:_____

[GUARANTORS]

By:_____
Name:_____
Title:_____


[            ], as Trustee and as Collateral Agent

By:_____
Name:_____
Title:_____

## PERFECTION DEADLINE

| Collateral Type | Deadline |
|---|---|
| 1. Deposit Accounts | 90 days after the Issue Date |
| 2. Owned Real Property | 45 days after the Issue Date |
| 3. Intellectual Property to the extent perfection of such asset is governed by federal law............................ | 15 days after the Issue Date |

PROVISIONS RELATING TO THE NOTES

1.      Definitions.

1.1     Certain Definitions.

For the purposes of this Appendix A the following terms shall have the meanings indicated below:

*"Applicable Procedures"* means, with respect to any transfer or transaction involving a Global Note or beneficial interest therein, the rules and procedures of the Depository as in effect from time to time.

*"Definitive Note"* means a certificated Note that does not include the Global Securities Legend.

*"Depository"* means The Depository Trust Company, its nominees and their respective successors.

*"Initial Notes"* means the $126.0 million of Notes issued on the Issue Date.

*"Notes Custodian"* means the custodian with respect to a Global Note (as appointed by the Depository), or any successor Person thereto and shall initially be the Trustee.

*"Transfer Restricted Notes"* means Notes that bear or are required to bear the Transfer Restriction Legend.

1.2     Other Definitions.

| Term | Defined in Section |
|---|---|
| "Additional Definitive Notes" | 2.1(a) |
| "Additional Global Notes" | 2.1(a) |
| "Agent Members" | 2.1(b) |
| "Global Notes" | 2.1(a) |
| "Global Note Legend" | 2.3(g)(i) |
| "Initial Global Notes" | 2.1(a) |
| "Restricted Definitive Notes" | 2.1(a) |
| "Restricted Global Notes" | 2.1(a) |
| "Transfer Restriction Legend" | 2.3(g)(i) |
| "Unrestricted Definitive Notes" | 2.1(a) |
| "Unrestricted Global Notes" | 2.1(a) |

2.      The Notes.

2.1    Form and Dating.

(a)    *General*.

The Initial Notes shall be issued initially (i) in the form of two or more permanent global notes in definitive, fully registered form (collectively, the *"Initial Global Notes"*), at least one of which shall bear the Transfer Restriction Legend, and at least one of which shall not bear such legend, and (ii) to the extent necessary, in the form of one or more Definitive Notes.

Additional Notes constituting interest paid in-kind with respect to Notes evidenced by a Global Note may be issued by the annotation of an increase in the principal amount of such Global Note or by the issuance of one or more additional global Notes in definitive, fully registered form (*"Additional Global Notes"*). Additional Global Notes evidencing interest paid in-kind with respect to Transfer Restricted Notes shall constitute Transfer Restricted Notes.

Additional Notes constituting interest paid in-kind with respect to Notes evidenced by a Definitive Note shall be issued in the form of one or more additional Definitive Notes (*"Additional Definitive Notes"*). Additional Definitive Notes evidencing interest paid in-kind with respect to Transfer Restricted Notes shall constitute Transfer Restricted Notes.

The Initial Global Notes and any Additional Global Notes are collectively referred to herein as *"Global Notes."* All Global Notes shall be initially issued in each case without interest coupons and with the Global Note Legend, shall be deposited on behalf of the purchasers of such Notes represented thereby with the Notes Custodian and registered in the name of the Depository or a nominee of the Depository, and duly executed by the Company and authenticated by the Trustee as provided in this Indenture. The aggregate principal amount of the Global Notes may from time to time be increased or decreased by adjustments made on the records of the Trustee and the Depository or its nominee as hereinafter provided.

Global Notes that are Transfer Restricted Notes are referred to herein as *"Restricted Global Notes,"* and Global Notes that are not Transfer Restricted Notes are referred to herein as *"Unrestricted Global Notes."* Definitive Notes that are Transfer Restricted Notes are referred to herein as *"Restricted Definitive Notes,"* and Definitive Notes that are not Transfer Restricted Notes are referred to herein as *"Unrestricted Definitive Notes."*

(b)    *Book-Entry Provisions*. This Section 2.1(b) shall apply only to a Global Note deposited with or on behalf of the Depository.

The Company shall execute and the Trustee shall, in accordance with this Section 2.1(b), authenticate and deliver initially one or more Global Notes that (a) shall be registered in the name of the Depository for such Global Note or Global Notes or the nominee of such Depository and (b) shall be delivered by the Trustee to such Depository or pursuant to such Depository's instructions or held by the Trustee as custodian for the Depository.

Members of, or participants in, the Depository (*"Agent Members"*) shall have no rights under this Indenture with respect to any Global Note held on their behalf by the Depository or by the Trustee as the custodian of the Depository or under such Global Note, and

the Company, the Trustee and any agent of the Company or the Trustee shall be entitled to treat the Depository as the absolute owner of such Global Note for all purposes whatsoever. Notwithstanding the foregoing, nothing herein shall prevent the Company, the Trustee or any agent of the Company or the Trustee from giving effect to any written certification, proxy or other authorization furnished by the Depository or impair, as between the Depository and its Agent Members, the operation of customary practices of such Depository governing the exercise of the rights of a holder of a beneficial interest in any Global Note.

(c)     *Certificated Notes*.  Except as provided in this Section 2.1 or Section 2.3, owners of beneficial interests in Global Notes shall not be entitled to receive physical delivery of Definitive Notes.

2.2     <u>Authentication</u>.  The Trustee shall authenticate and deliver:  (1) on the Issue Date, $126.0 million principal amount of Notes, (2) from time to time to the extent permitted pursuant to Section 4.01(b) of the Indenture, Additional Notes for original issue in aggregate principal amounts specified in Officers' Certificates of the Company pursuant to Section 4.01(b), and (3) from time to time, Notes for issue pursuant to Sections 2.06, 2.07, 2.09, 3.06 and 9.05 of the Indenture, in each case upon receipt of an Officers' Certificate or a written order of the Company signed by two Officers or by an Officer and either an Assistant Treasurer or an Assistant Secretary of the Company.  Such Officers' Certificate or order shall specify the amount of the Notes to be authenticated and the date on which the original issue of Notes is to be authenticated.

2.3     <u>Transfer and Exchange</u>.

(a)     *Transfer and Exchange of Global Notes*.  A Global Note may not be transferred as a whole except by the Depository to a nominee of the Depository, by a nominee of the Depository to the Depository or to another nominee of the Depository, or by the Depository or any such nominee to a successor Depository or a nominee of such successor Depository.  All Global Notes will be exchanged by the Company for Definitive Notes if (i) the Company delivers to the Trustee notice from the Depository that it is unwilling or unable to continue to act as Depository or that it is no longer a clearing agency registered under the Exchange Act and, in either case, a successor Depository is not appointed by the Company within 120 days after the date of such notice from the Depository, (ii) the Company in its sole discretion determines that the Global Notes (in whole but not in part) should be exchanged for Definitive Notes and delivers a written notice to such effect to the Trustee, or (iii) there shall have occurred and be continuing a Default or an Event of Default and such exchange shall be requested by a written notice given to the Depository by a Holder.  Upon the occurrence of any of the preceding events in (i), (ii) or (iii) above, Definitive Notes shall be issued in such names as the Depository shall instruct the Trustee.  Global Notes also may be exchanged or replaced, in whole or in part, as provided in Section 2.07 of the Indenture.  A Global Note may not be exchanged for another Note other than as provided in this Section 2.3(a), however, beneficial interests in a Global Note may be transferred and exchanged as provided in Section 2.3(b) or (c) hereof, in each case subject to the requirements of Section 2.3(f) hereof.

(b)     *Transfer and Exchange of Beneficial Interests in the Global Notes*.  The transfer and exchange of beneficial interests in the Global Notes shall be effected through the

Depository, in accordance with the provisions of this Indenture and the Applicable Procedures. Beneficial interests in the Restricted Global Notes shall be subject to restrictions on transfer comparable to those set forth herein to the extent required by the Securities Act. Transfers of beneficial interests in the Global Notes also shall require compliance with the following, as applicable:

(i)     Transfer of Beneficial Interests in the Same Global Note. Beneficial interests in a Restricted Global Note may be transferred to Persons who take delivery thereof in the form of a beneficial interest in the same Restricted Global Note in accordance with Section 2.3(f) hereof and the transfer restrictions set forth in the Transfer Restriction Legend. Beneficial interests in an Unrestricted Global Note may be transferred to Persons who take delivery thereof in the form of a beneficial interest in the same Unrestricted Global Note.

(ii)     Transfers and Exchanges of Beneficial Interests in a Global Note for Beneficial Interests in the other Global Note. In connection with all transfers and exchanges of beneficial interests in a Global Note for beneficial interests in the other Global Note, the transferor of such beneficial interest must deliver to the Registrar (A) a written order from a Participant given to the Depository in accordance with the Applicable Procedures directing the Depository to credit or cause to be credited a beneficial interest in the applicable Global Note in an amount equal to the beneficial interest to be transferred or exchanged, (B) instructions given in accordance with the Applicable Procedures containing information regarding the Participant account to be credited with such increase, and (C) the documentation required by Section 2.3(f) hereof. Upon satisfaction of all of the requirements for transfer or exchange of beneficial interests in Global Notes contained in this Indenture (including, without limitation, Section 2.3(f) hereof) and the Notes or otherwise applicable under the Securities Act, the Trustee shall adjust the principal amount of the relevant Global Notes pursuant to Section 2.3(h) hereof.

(c)     *Transfer or Exchange of Beneficial Interests for Definitive Notes.*

If any holder of a beneficial interest in a Global Note proposes to exchange such beneficial interest for a Definitive Note or to transfer such beneficial interest to a Person who takes delivery thereof in the form of a Definitive Note, then, upon (i) delivery to the Registrar of (A) a written order from a Participant given to the Depository in accordance with the Applicable Procedures directing the Depository to cause to be issued a Definitive Note in an amount equal to the beneficial interest to be transferred or exchanged, and (B) instructions given by the Depository to the Registrar containing information regarding the Person in whose name such Definitive Note shall be registered to effect such transfer or exchange, and (ii) if the beneficial interest being transferred or exchanged is a beneficial interest in a Restricted Global Note, satisfaction of the conditions set forth in Section 2.3(f) hereof, the Trustee shall cause the aggregate principal amount of the applicable Global Note to be reduced accordingly pursuant to Section 2.3(h) hereof, and the Company shall execute and, upon receipt of an authentication order pursuant to Section 2.2, the Trustee shall authenticate and deliver to the Person designated in the instructions a Definitive Note in the appropriate principal amount. Any Definitive Note issued in exchange for a beneficial interest pursuant to this Section 2.3(c) shall be registered in

such name or names and in such authorized denomination or denominations as the holder of such beneficial interest shall instruct the Registrar through instructions from the Depository and the Participant. The Trustee shall deliver such Definitive Notes to the Persons in whose names such Notes are so registered.

Any Definitive Note issued upon exchange or transfer of a beneficial interest in an Unrestricted Global Note that is issued to a Person that may be deemed to be an "underwriter" within the meaning of 11 U.S.C. § 1145 (*"Section 1145"*) or an "affiliate" or a "control person" within the meaning of the Securities Act and any Definitive Note issued upon exchange or transfer of a beneficial interest in a Restricted Global Note shall, in each case, unless otherwise permitted under Section 2.3(f), bear the Transfer Restriction Legend and shall be subject to all restrictions on transfer contained therein.

(d)     *Transfer and Exchange of Definitive Notes for Beneficial Interests.*

If any Holder of a Definitive Note proposes to exchange such Note for a beneficial interest in a Global Note or to transfer such Definitive Note to a Person who takes delivery thereof in the form of a beneficial interest in a Global Note, then, upon (i) delivery to the Registrar of a written order and instructions of the types described in Section 2.3(b)(ii) above and an endorsement or instrument of transfer as described in Section 2.3(e) below, and (ii) if the Definitive Note being transferred or exchanged is a Restricted Definitive Note, satisfaction of the conditions set forth in Section 2.3(f) hereof, the Trustee shall cancel the applicable Definitive Note and increase or cause to be increased the aggregate principal amount of the applicable Global Note.

(e)     *Transfer and Exchange of Definitive Notes for Definitive Notes.*

Upon request by a Holder of Definitive Notes and such Holder's compliance with the provisions of this Section 2.3(e) and, if applicable, Section 2.3(f), the Registrar shall register the transfer or exchange of Definitive Notes. Prior to such registration of transfer or exchange, the requesting Holder shall present or surrender to the Registrar the Definitive Notes duly endorsed or accompanied by a written instrument of transfer in form satisfactory to the Registrar duly executed by such Holder or by its attorney, duly authorized in writing. In addition, the requesting Holder shall provide any additional certifications, documents and information, as applicable, required pursuant to Section 2.3(f).

Any Definitive Note issued upon exchange or transfer of an Unrestricted Definitive Note that is issued to a Person that may be deemed to be an "underwriter" within the meaning of Section 1145 or an "affiliate" or a "control person" within the meaning of the Securities Act and any Definitive Note issued upon exchange or transfer of a Restricted Definitive Note shall, in each case, unless otherwise permitted under Section 2.3(f), bear the Transfer Restriction Legend and shall be subject to all restrictions on transfer contained therein.

(f)     *Transfers and Exchanges of Transfer Restricted Notes.* No Person may transfer or exchange a Restricted Definitive Note, a Restricted Global Note or a beneficial interest in a Restricted Global Note (including, without limitation, the removal of the Transfer Restriction Legend thereon) unless such transfer or exchange is made (i) pursuant to an effective

registration statement under the Securities Act, or (ii) pursuant to an exemption from registration requirements of the Securities Act and, in the case of clause (ii), if the Registrar or the Company so requests, the Registrar receives an opinion of counsel in form reasonably acceptable to the Registrar and the Company stating that (A) such transfer or exchange is in compliance with the Securities Act and (B) if such transferee or exchangee seeks the removal of the Transfer Restriction Legend, the restrictions on transfer contained herein and in the Transfer Restriction Legend are no longer required in order to maintain compliance with the Securities Act. Upon satisfaction of the requirements of this Section 2.3(f) with respect to the removal of the Transfer Restriction Legend, as appropriate, such Restricted Definitive Note shall be exchanged for an Unrestricted Definitive Note or such beneficial interest in a Restricted Global Note shall be exchanged for a beneficial interest in a corresponding Unrestricted Global Note, and the Trustee shall adjust the principal balances of the Global Notes pursuant to Section 2.3(h) hereof.

(g)    *Legends*.  The following legends shall appear on the face of all Global Notes and Definitive Notes issued under this Indenture to the extent required by the applicable provisions of this Indenture:

(i)    Transfer Restriction Legend. Each Transfer Restricted Note shall bear a legend substantially in the following form (the *"Transfer Restriction Legend"*).

**"THIS NOTE (OR ITS PREDECESSOR) WAS ORIGINALLY ISSUED IN A TRANSACTION PURSUANT TO 11 U.S.C. SECTION 1145 AND HAS NOT BEEN REGISTERED OR QUALIFIED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR UNDER THE SECURITIES LAWS OF ANY STATE OR OTHER JURISDICTION. THIS NOTE MAY NOT BE SOLD, OFFERED FOR SALE OR OTHERWISE TRANSFERRED UNLESS REGISTERED OR QUALIFIED UNDER THE SECURITIES ACT AND APPLICABLE STATE SECURITIES LAWS OR UNLESS THE COMPANY AND THE REGISTRAR OF THIS NOTE RECEIVE AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THEM THAT SUCH REGISTRATION OR QUALIFICATION IS NOT REQUIRED."**

**[include the following two paragraphs only if the Transfer Restricted Note is a Definitive Note:]**

**"THE HOLDER OF THIS NOTE AGREES THAT IT WILL, AND EACH SUBSEQUENT HOLDER IS REQUIRED TO, NOTIFY ANY PURCHASER OF THIS NOTE FROM IT OF THE RESALE RESTRICTIONS REFERRED TO ABOVE.**

**IN CONNECTION WITH ANY TRANSFER, THE HOLDER WILL DELIVER TO THE REGISTRAR SUCH CERTIFICATES AND OTHER INFORMATION AS THE REGISTRAR MAY REASONABLY REQUIRE TO CONFIRM THAT THE TRANSFER COMPLIES WITH THE FOREGOING RESTRICTIONS."**

(ii)    Global Note Legend.  Each Global Note shall bear a legend in substantially the following form (the "**Global Note Legend**"):

"**UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.**"

(h)    *Cancellation and/or Adjustment of Global Notes.*  At such time as all beneficial interests in a particular Global Note have been exchanged for Definitive Notes or a particular Global Note has been redeemed, repurchased or cancelled in whole and not in part, each such Global Note shall be returned to or retained and cancelled by the Trustee in accordance with Section 2.10 of this Indenture.  At any time prior to such cancellation, if any beneficial interest in a Global Note is exchanged for or transferred to a Person who will take delivery thereof in the form of a beneficial interest in another Global Note or for Definitive Notes, the principal amount of Notes represented by such Global Note shall be reduced accordingly and an endorsement shall be made on such Global Note by the Trustee or by the Depository at the direction of the Trustee to reflect such reduction; and if the beneficial interest is being exchanged for or transferred to a Person who will take delivery thereof in the form of a beneficial interest in another Global Note, such other Global Note shall be increased accordingly and an endorsement shall be made on such Global Note by the Trustee or by the Depository at the direction of the Trustee to reflect such increase.

(i)    *General Provisions Relating to Transfers and Exchanges.*

(i)    To permit registrations of transfers and exchanges, the Company shall execute and the Trustee shall authenticate Global Notes and Definitive Notes upon receipt of an authentication order.  The Company shall make available to the Trustee from time to time upon request a reasonable supply of Definitive Notes in definitive, fully registered form without interest coupons.

(ii)    No service charge shall be made to a holder of a beneficial interest in a Global Note or to a Holder of a Definitive Note for any registration of transfer or exchange, but the Company may require payment of a sum sufficient to cover any transfer tax or similar governmental charge payable in connection therewith (other than any such transfer taxes or similar governmental charge payable upon exchange or transfer pursuant to Sections 2.09, 3.06, 4.04, 4.09 and 9.05 of this Indenture).

(iii)     All Global Notes and Definitive Notes issued upon any registration of transfer or exchange of Global Notes or Definitive Notes shall be the valid obligations of the Company, evidencing the same Indebtedness, and entitled to the same benefits under this Indenture, as the Global Notes or Definitive Notes surrendered upon such registration of transfer or exchange.

(iv)     Neither the Company nor the Registrar shall be required (A) to issue, to register the transfer of or to exchange any Notes during a period beginning at the opening of business 15 days before the day of any selection of Notes for redemption under Section 3.02 of the Indenture and ending at the close of business on the day of selection, (B) to register the transfer of or to exchange any Note so selected for redemption in whole or in part, except the unredeemed portion of any Note being redeemed in part or (C) to register the transfer of or to exchange a Note between a Record Date and the next succeeding Interest Payment Date.

(v)     Prior to due presentment for the registration of a transfer of any Note, the Trustee, any Agent and the Company may deem and treat the Person in whose name any Note is registered as the absolute owner of such Note for the purpose of receiving payment of principal of and interest on such Notes and for all other purposes, and none of the Trustee, the Registrar, or the Company shall be affected by notice to the contrary.

(vi)     The Trustee shall authenticate Global Notes and Definitive Notes in accordance with the provisions of Section 2.2 hereof.

(vii)     All certifications, certificates and Opinions of Counsel required to be submitted to the Registrar pursuant to this Section 2.3 to effect a registration of transfer or exchange may be submitted by facsimile.

[FORM OF FACE OF NOTES]

[Insert Global Note Legend here if appropriate]

[Insert Restricted Securities Legend here if appropriate]

No. [    ]

$[    ]
CUSIP No. $[    ]
ISIN No. [    ]

14% Senior Secured Cash/PIK Notes due 2015

LORAL SKYNET CORPORATION, a Delaware corporation, promises to pay to [CEDE & CO.][1] [    ], or registered assigns, the principal sum of [    ] DOLLARS [, or such greater or lesser amount as may from time to time be endorsed on the Schedule of Increases or Decreases in Global Note attached hereto (but in no event may such amount exceed the aggregate principal amount of Notes authenticated pursuant to Section 2.2 of Appendix A to the Indenture referred to below and then outstanding pursuant to Section 2.08 of the Indenture),][1] on [    ], 2015.

Interest Payment Dates[2]:        [    ] and [    ], commencing [    ], 200[    ].

Record Dates: [    ]and [    ].

Additional provisions of this Note are set forth on the other side of this Note.

Dated: [        ], 20[    ]

LORAL SKYNET CORPORATION

By:_____
Name:_____
Title:_____

By:_____
Name:_____

---

[1] Use if Global Note.

[2] (a) if the Issue Date occurs in Q3 2005, the interest payment dates will be May 15 and November 15, commencing May 15, 2006;
(b) if the Issue Date occurs in Q4 2005, the interest payment dates will be July 15 and January 15, commencing July 15, 2006; and
(c) if the Issue Date occurs in Q1 2006, the interest payment dates will be May 15 and November 15, commencing November 15, 2006.

Title:_____

TRUSTEE'S CERTIFICATE OF
AUTHENTICATION

[                    ],

as Trustee, certifies
that this is one of
the Notes referred
to in the Indenture.

By: _____
    Authorized Signatory

[FORM OF REVERSE SIDE OF NOTES]

14% Senior Secured Cash/PIK Notes due 2015

1.    Interest and Principal

LORAL SKYNET CORPORATION, a Delaware corporation (such corporation, and its successors and assigns under the Indenture hereinafter referred to, being herein called the *"Company"*), promises to pay interest on the principal amount of this Note at the rate per annum shown above. In certain circumstances, the Company may pay all or a portion of such interest in-kind through the issuance of Additional Notes in lieu of cash, as more particularly described in Section 4.01(b) of the Indenture. Subject to Section 4.01(c) of the Indenture, interest on overdue principal (and, to the extent lawful, on overdue installments of interest) shall accrue at the rate that is 2.0% per annum in excess of the rate specified in the preceding sentence. The Company will pay interest semi-annually in arrears on each Interest Payment Date. Interest on the Notes (including Additional Notes) will accrue from the date of issuance of each Note or, if interest has already been paid, from the date it was most recently paid or provided for. Interest will be computed on the basis of a 360-day year of twelve 30-day months.

The Notes will mature on [   ], 2015.

2.    Method of Payment

The Company will pay interest on the Notes (except defaulted interest) to the Persons who are registered holders of Notes at the close of business on the Record Date next preceding the Interest Payment Date even if Notes are canceled after the Record Date and on or before the Interest Payment Date. Holders must surrender Notes to a Paying Agent to collect principal payments. The Company will pay principal, premium, if any, and interest in money of the United States that at the time of payment is legal tender for payment of public and private debts. Payments in respect of the Notes represented by a Global Note (including principal, premium, if any, and interest) will be made by wire transfer of immediately available funds to the accounts specified by The Depository Trust Company. The Company will make all payments in respect of a certificated Note (including principal, premium, if any, and interest) by mailing a check to the registered address of each Holder thereof; provided, however, that payments on a certificated Note will be made by wire transfer to a U.S. dollar account maintained by the payee with a bank in the United States if such Holder elects payment by wire transfer by giving written notice to the Trustee or the Paying Agent to such effect designating such account no later than 30 days immediately preceding the relevant due date for payment (or such other date as the Trustee may accept in its discretion).

3.    Paying Agent and Registrar

Initially, [              ] (the *"Trustee"*), will act as Paying Agent and Registrar. The Company may appoint and change any Paying Agent, Registrar or co-registrar without notice. The Company or any of its domestically incorporated Wholly Owned Subsidiaries may act as Paying Agent, Registrar or co-registrar.

4.    Indenture

The Company issued the Notes under an Indenture dated as of [ ], 2005 (as such may be amended or supplemented from time to time, *"Indenture"*), among the Company, the Guarantors, the Trustee and the Collateral Agent. The terms of the Notes include those stated in the Indenture and those made part of the Indenture by reference to the Trust Indenture Act of 1939 (15 U.S.C. §§ 77aaa-77bbbb) as in effect on the date of the Indenture (the *"TIA"*). Terms defined in the Indenture and not defined herein have the meanings ascribed thereto in the Indenture. The Notes are subject to all such terms, and Noteholders are referred to the Indenture and the TIA for a statement of those terms.

The Notes are senior obligations of the Company.

The Indenture contains covenants that limit the ability of the Company and its subsidiaries to, among other things, incur additional indebtedness; layer indebtedness; pay dividends or distributions on, or redeem or repurchase capital stock; make investments; engage in transactions with affiliates; create liens on assets; transfer or sell assets; restrict dividends or other payments from subsidiaries; and consolidate, merge or transfer all or substantially all of its assets and the assets of its subsidiaries. These covenants are subject to important exceptions and qualifications.

5.    Optional Redemption

Except as set forth below, the Company will not be entitled to redeem the Notes at its option.

On and after [ ], 2009, [48 months after issuance], the Company will be entitled at its option to redeem all or a portion of the Notes upon not less than 30 nor more than 60 days' notice, at the redemption prices set forth below (expressed in percentages of principal amount) on the date of redemption (the *"Redemption Date"*), plus accrued and unpaid interest to the Redemption Date (subject to the right of Holders of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date), if redeemed during the 12-month period commencing on [ ] of the years set forth below:

| Period | Redemption Price |
|---|---|
| 2009 | 110.0% |
| 2010 | 108.0% |
| 2011 | 106.0% |
| 2012 | 104.0% |
| 2013 | 102.0% |
| 2014 | 100.0% |

Subject to the right of Holders to object, as set forth below in this paragraph, prior to [                ], 2009, the Company may elect to redeem all or a portion of the Notes upon not less than 30 nor more than 60 days' notice, at the redemption price of 110% of the principal amount thereof plus accrued and unpaid interest to the Redemption Date (subject to the right of Holders of record on the relevant Record Date to receive interest due on the relevant Interest

Payment Date). In such event, (1) the Officers' Certificate required pursuant to Section 3.01 of the Indenture shall also certify a resolution of the Board of Directors of the Company approving such redemption and (2) such notice of redemption shall inform the Holders of their right to object to and prevent such redemption, and provide a reasonable mechanism by which Holders may exercise such right. If within ten (10) Business Days following the date that such redemption notice is sent to the Holders, written notice is received by the Company from the Holders of at least two-thirds (2/3) in principal amount of the then outstanding Notes objecting to such redemption (such notices from the Holders of such two-thirds or greater amount, collectively, the "*Requisite Objection to Redemption Notice*"), then the Company shall not consummate such redemption. If the Requisite Objection to Redemption Notice is not received by the Company by the expiration of such ten (10) Business Day-period, then the Company may consummate such redemption as specified in such redemption notice.

6.      Notice of Redemption

Notice of redemption will be mailed by first class mail at least 30 days but not more than 60 days before the Redemption Date to each Holder of Notes to be redeemed at the Holder's registered address. Notes in denominations of $1,000 principal amount or less may be redeemed in whole and not in part. Notes in denominations larger than $1,000 principal amount may be redeemed in part but only in whole multiples of $1,000. If money sufficient to pay the redemption price of and accrued interest on all Notes (or portions thereof) to be redeemed on the Redemption Date is deposited with the Paying Agent on or before the Redemption Date and certain other conditions are satisfied, on and after such date interest will cease to accrue on such Notes (or such portions thereof) called for redemption unless the Company defaults in making the redemption payment.

7.      Put Provisions

Upon a Change of Control, each Holder will have the right to require that the Company repurchase such Holder's Notes at a purchase price set forth below, plus accrued and unpaid interest, if any, to the date of purchase (subject to the right of holders of record on the relevant Record Date to receive interest due on the related Interest Payment Date),if repurchased during the 12-month period commencing on [ ] of the years set forth below:

| Period | Purchase Price |
|--------|---------------|
| 2005 | 104% |
| 2006 | 103% |
| 2007 | 102% |
| 2008 and thereafter | 101% |

in each case as provided in, and subject to the terms of, the Indenture.

In certain circumstances, the Company must use the Net Available Cash from Asset Dispositions to make an offer to Holders to repurchase Notes at a purchase price of 100% of the principal amount, plus accrued and unpaid interest.

8. Guaranty

The payment by the Company of the principal of, and premium and interest on, the Notes is fully and unconditionally guaranteed on a joint and several senior basis by each of the Guarantors. Not all Subsidiaries of the Company are required to be Guarantors.

9. Collateral

Subject to certain exceptions described in the Indenture, the Notes are secured by security interests in and liens on the Collateral (as defined in the Indenture). Collateral may be released under certain circumstances as more particularly described in the Indenture.

10. Transfer; Exchange

The Notes are in registered form without coupons. A Holder may transfer or exchange Notes in accordance with the Indenture. The Registrar may require a Holder, among other things, to furnish appropriate endorsements or transfer documents and to pay any taxes and fees required by law or permitted by the Indenture. The Registrar need not register the transfer of or exchange any Notes selected for redemption (except, in the case of a Note to be redeemed in part, the portion of the Note not to be redeemed) or any Notes for a period of 15 days before the mailing of a notice of redemption of Notes to be redeemed or 15 days before an interest payment date, as applicable.

11. Persons Deemed Owners

The registered Holder of this Note may be treated as the Note's owner for all purposes.

12. Unclaimed Money

If money for the payment of principal or interest remains unclaimed for two years, the Trustee or Paying Agent shall pay the money back to the Company at its request unless an abandoned property law designates another Person. After any such payment, Holders entitled to the money must look only to the Company and not to the Trustee for payment.

13. Discharge and Defeasance

Subject to certain conditions, the Company at any time shall be entitled to terminate some or all of its obligations under the Notes and the Indenture if the Company deposits with the Trustee money or U.S. Government Obligations for the payment of principal and interest on the Notes to redemption or maturity, as the case may be.

14. Amendment, Waiver

Subject to certain exceptions set forth in the Indenture, (i) the Indenture, the Collateral Documents and the Notes may be amended with the written consent of the Holders of at least a majority in principal amount outstanding of the Notes and (ii) any default or noncompliance with any provision may be waived with the written consent of the Holders of a

majority in principal amount outstanding of the Notes. Subject to certain exceptions set forth in the Indenture, without the consent of any Noteholder, the Company, the Guarantors, and the Trustee shall be entitled to amend the Indenture, the Collateral Documents or the Notes to cure any ambiguity, omission, defect or inconsistency, to comply with Article 5 of the Indenture, to provide for uncertificated Notes in addition to or in place of certificated Notes, to add guarantees with respect to the Notes, including any Guaranties, to add Collateral to further secure the Notes, to add additional covenants or surrender rights and powers conferred on the Company or any Guarantors, to comply with any request of the SEC in connection with qualifying the Indenture under the TIA, to make any change that does not adversely affect the rights of any Noteholder, or to evidence the release of a Guarantor in accordance with the Indenture.

15.    Defaults and Remedies

Under the Indenture, Events of Default include: (i) defaults in any payment of interest on any Note when the same becomes due and payable, continued for 30 days; (ii) default in payment of principal on the Notes at maturity, upon optional redemption pursuant to Section 5 of the Notes, upon declaration of acceleration or otherwise, or failure by the Company to redeem or purchase Notes when required; (iii) failure by the Company or any Guarantor that is a Significant Subsidiary to comply with other agreements in the Indenture or the Notes, in certain cases subject to notice and lapse of time; (iv) certain accelerations (including failure to pay within any grace period after final maturity) of other Indebtedness of the Company, or any Significant Subsidiary (whether or not a Guarantor) if the amount accelerated (or so unpaid) exceeds $50.0 million; (v) certain events of bankruptcy or insolvency with respect to the Company, or any Significant Subsidiary (whether or not a Guarantor); (vi) certain judgments or decrees for the payment of money in excess of $50.0 million against the Company or any Significant Subsidiary (whether or not a Guarantor); and (vii) certain defaults with respect to Guaranties and Collateral Documents in certain cases subject to notice and lapse of time. If an Event of Default occurs and is continuing, the Trustee or the Holders of at least 40.0% in principal amount of the Notes then outstanding may declare all the Notes to be due and payable by notice in writing to the Company and the Trustee, and upon such declaration, the Notes will be due and payable immediately. Certain events of bankruptcy or insolvency are Events of Default which will result in the Notes being due and payable immediately upon the occurrence of such Events of Default.

Noteholders may not enforce the Indenture or the Notes except as provided in the Indenture. The Trustee may refuse to enforce the Indenture or the Notes unless it receives reasonable indemnity or security against any loss, liability or expense. Subject to certain limitations, Holders of a majority in principal amount of the Notes may direct the Trustee in its exercise of any trust or power. The Trustee may withhold from Noteholders notice of any continuing Default (except a Default in payment of principal or interest) if it determines that withholding notice is in the interest of the Holders.

16.    Trustee Dealings with the Company

Subject to certain limitations imposed by the Act, the Trustee under the Indenture, in its individual or any other capacity, may become the owner or pledgee of Notes and may otherwise deal with and collect obligations owed to it by the Company or its Affiliates and may

otherwise deal with the Company or its Affiliates with the same rights it would have if it were not Trustee.

17. No Recourse Against Others

No director, officer, employee, incorporator or stockholder, as such, of the Company or any Guarantor will have any liability for any obligations of the Company or any Guarantor under the Notes, any Guaranty or the Indenture or for any claim based on, in respect of, or by reason of such obligations or their creation. Each Holder of the Notes by accepting a Note waives and releases all such liability. The waiver and release are part of the consideration for issuance of the Notes.

18. Authentication

This Note shall not be valid until an authorized signatory of the Trustee (or an authenticating agent) manually signs the certificate of authentication on the other side of this Note.

19. Abbreviations

Customary abbreviations may be used in the name of a Noteholder or an assignee, such as TEN COM (=tenants in common), TEN ENT (=tenants by the entireties), JT TEN (=joint tenants with rights of survivorship and not as tenants in common), CUST (=custodian), and U/G/M/A (=Uniform Gift to Minors Act).

20. CUSIP Numbers

The Company in issuing the Notes may use "CUSIP" numbers and corresponding "ISINs" (if then generally in use) and, if so, the Trustee may use "CUSIP" numbers and corresponding "ISINs" in notices of redemption as a convenience to Holders; provided, however, that any such notice may state that no representation is made as to the correctness of such numbers either as printed on the Notes or as contained in any notice of a redemption and that reliance may be placed only on the other identification numbers printed on the Notes, and any such redemption shall not be affected by any defect in or omission of such numbers.

21. Governing Law

This Note shall be governed by, and construed in accordance with, the laws of the state of New York but without giving effect to applicable principles of conflicts of law to the extent that the application of the laws of another jurisdiction would be required thereby.

22. Copies

The Company will furnish to any Noteholder upon written request and without charge to the Noteholder a copy of the Indenture which has in it the text of this Note in larger type. Requests may be made to:

Loral Skynet Corporation

_____

_____

Attention: [_____]

## ASSIGNMENT FORM

To assign this Note, fill in the form below:

I or we assign and transfer this Note to

(Print or type assignee's name, address and zip code)

(Insert assignee's soc. sec. or tax I.D. No.)

and irrevocably appoint _____ agent to transfer this Note on the books of the Company.  The agent may substitute another to act for him.

_____

Date: _____ Your Signature: _____

_____

Sign exactly as your name appears on the other side of this Note.

[TO BE ATTACHED TO GLOBAL NOTES]

## SCHEDULE OF INCREASES OR DECREASES IN GLOBAL NOTE

The following increases or decreases in this Global Note have been made:

| Date of Exchange | Amount of decrease in principal amount of this Global Note | Amount of increase in principal amount of this Global Note | Principal amount of this Global Note following such decrease or increase | Signature of authorized officer of Trustee or Notes Custodian |
| --- | --- | --- | --- | --- |

## OPTION OF HOLDER TO ELECT PURCHASE

If you want to elect to have this Note purchased by the Company pursuant to Section 4.04 or 4.09 of the Indenture, check the box: ☐

If you want to elect to have only part of this Note purchased by the Company pursuant to Section 4.04 or 4.09 of the Indenture, state the amount in principal amount: $_____

Date: _____          Your Signature:_____

(Sign exactly as your name appears on the other side of this Note.)

Signature Guarantee: _____

(Signature must be guaranteed)

Signatures must be guaranteed by an "eligible guarantor institution" meeting the requirements of the Registrar, which requirements include membership or participation in the Security Transfer Agent Medallion Program (*"STAMP"*) or such other "signature guarantee program" as may be determined by the Registrar in addition to, or in substitution for, STAMP, all in accordance with the Securities Exchange Act of 1934, as amended.

THIS DOCUMENT IS MARKED TO SHOW CHANGES FROM THE
INDENTURE THAT WAS FILED AS AN EXHIBIT TO THE FORM T-3 OF
LORAL ORION, INC. FILED WITH THE SECURITIES AND EXCHANGE
COMMISSION ON JUNE 8, 2005 AS COMPARED TO THE INDENTURE
THAT IS BEING FILED WITH THE BANKRUPTCY COURT ON THE
DATE HEREOF AS PART OF THE PLAN SUPPLEMENT.  THIS
DOCUMENT REFLECTS SUBSTANTIAL CHANGES IN THE TERMS OF
THE NOTES NEGOTIATED SUBSEQUENT TO THE MAILING OF THE
DISCLOSURE STATEMENT.

LORAL SKYNET CORPORATION

Issuer

14% SENIOR SECURED CASH/PIK NOTES DUE 2015

INDENTURE

Dated as of [  ], 2005

[          ]

Trustee

2 **Error! Unknown document property name.**100269.00001 West 5743991 v9

NY2:\1548705\01\X6ZL01!.DOC\60116.0003          2

# CROSS-REFERENCE TABLE

| TIA Section | | Indenture Section |
|---|---|---|
| 310(a)(1) | ........................ | 7.10 |
| (a)(2) | ........................ | 7.10 |
| (a)(3) | ........................ | N.A. |
| (a)(4) | ........................ | N.A. |
| (a)(5) | ........................ | 7.10 |
| (b) | ........................ | 7.08; 7.10 |
| (c) | ........................ | N.A. |
| 311(a) | ........................ | 7.11 |
| (b) | ........................ | 7.11 |
| (c) | ........................ | N.A. |
| 312(a) | ........................ | 2.05, 12.03 |
| (b) | ........................ | 12.03 |
| (c) | ........................ | 12.03 |
| 313(a) | ........................ | 7.06 |
| (b)(1) | ........................ | N.A. |
| (b)(2) | ........................ | 7.06 |
| (c) | ........................ | 12.02 |
| (d) | ........................ | 7.06 |
| 314(a) | ........................ | 4.02; 4.03 |
| (b) | ........................ | N.A. |
| (c)(1) | ........................ | 12.04 |
| (c)(2) | ........................ | 12.04 |
| (c)(3) | ........................ | N.A. |
| (d) | ........................ | 11.03 |
| (e) | ........................ | 12.05 |
| (f) | ........................ | N.A. |
| 315(a) | ........................ | 7.01 |
| (b) | ........................ | 7.05; 12.02 |
| (c) | ........................ | 7.01 |
| (d) | ........................ | 7.01 |
| (e) | ........................ | 6.11 |
| 316(a)(last sentence) | ........................ | 12.06 |
| (a)(1)(A) | ........................ | 6.05 |
| (a)(1)(B) | ........................ | 6.04 |
| (a)(2) | ........................ | Section 1 of the Note; 12.06 |
| (b) | ........................ | Section 1 of the Note; 6.07 |
| (c) | ........................ | 9.04 |
| 317(a)(1) | ........................ | 6.08 |

| | | |
|---|---|---|
| (a)(2) | ................................................................................................ | 6.09 |
| (b) | ................................................................................................ | 2.04 |
| 318(a) | ................................................................................................ | 12.01 |

N.A. means Not Applicable.

Note: This Cross-Reference Table shall not, for any purpose, be deemed to be part of this Indenture.

# TABLE OF CONTENTS

ARTICLE 1 Definitions and Incorporation by Reference ................................................1

SECTION 1.01.    Certain Definitions..........................................................................1

SECTION 1.02.    Other Definitions. ....................................................................6̶28

SECTION 1.03.    Incorporation by Reference of Trust Indenture Act. .............6̶28

SECTION 1.04.    Rules of Construction. .............................................................6̶29

ARTICLE 2 The Notes ..............................................................................................6̶30

SECTION 2.01.    Form and Dating. ....................................................................6̶30

SECTION 2.02.    Execution and Authentication. ................................................6̶30

SECTION 2.03.    Registrar and Paying Agent. ...................................................6̶31

SECTION 2.04.    Paying Agent To Hold Money in Trust. ..................................6̶31

SECTION 2.05.    Noteholder Lists......................................................................6̶31

SECTION 2.06.    Transfer and Exchange............................................................6̶32

SECTION 2.07.    Replacement Notes. .................................................................6̶32

SECTION 2.08.    Outstanding Notes....................................................................6̶32

SECTION 2.09.    Temporary Notes......................................................................6̶33

SECTION 2.10.    Cancellation.............................................................................6̶33

SECTION 2.11.    Defaulted Interest.....................................................................6̶33

SECTION 2.12.    CUSIP Numbers......................................................................6̶33

ARTICLE 3 Redemption ...........................................................................................6̶33

SECTION 3.01.    Notices to Trustee. ..................................................................6̶33

SECTION 3.02.    Selection of Notes To Be Redeemed.......................................6̶34

SECTION 3.03.    Notice of Redemption..............................................................6̶35

SECTION 3.04.    Effect of Notice of Redemption...............................................6̶35

SECTION 3.05.    Deposit of Redemption Price. ..................................................6̶35

SECTION 3.06.    Notes Redeemed in Part...........................................................6̶36

ARTICLE 4 Covenants ..............................................................................................6̶36

SECTION 4.01.    Payment of Notes.....................................................................6̶36

SECTION 4.02.    F̶i̶n̶a̶n̶c̶i̶a̶l̶ ̶R̶e̶p̶o̶r̶t̶s̶.̶ ..........................6[Intentionally Left Blank]. _____ 38

SECTION 4.03.    Compliance Certificate. ...........................................................6̶38

SECTION 4.04.    Change of Control....................................................................6̶38

SECTION 4.05.    Limitation on Restricted Payments...........................................6̶40

SECTION 4.06.    Limitation on Indebtedness.......................................................6̶42

SECTION 4.07.    Limitation on Liens..................................................................6̶44

SECTION 4.08.    A̶n̶t̶i̶-̶L̶a̶y̶e̶r̶i̶n̶g̶.̶...................................................................6

S̶E̶C̶T̶I̶O̶N̶ ̶4̶.̶0̶9̶.̶    Limitation on Restrictions on Distributions from Restricted
        Subsidiaries. ...........................................................................6̶45

SECTION 4̶.̶1̶0̶.̶4.09.  Limitation on Sales of Assets and Subsidiary Stock..................6̶46

SECTION 4̶.̶1̶1̶.̶4.10.  Limitation on Affiliate Transactions. .......................................6̶48

SECTION 4.11.    Guarantors................................................................................50

SECTION 4.12.    G̶u̶a̶r̶a̶n̶t̶o̶r̶s̶.̶.............................................................................6

S̶E̶C̶T̶I̶O̶N̶ ̶4̶.̶1̶3̶.̶    Limitation on the Issuance and Sale of Capital Stock of Restricted
        Subsidiaries. ...........................................................................6̶51

SECTION 4̶.̶1̶4̶.̶4.13.  Limitation on Sale/Leaseback Transactions...............................6̶51

SECTION 4.14.      Existence. ..................................................................................51
SECTION 4.15.      Existence. ....................................................................................6
SECTION 4.16.      Payment of Taxes and Other Claims. ...............................6̶52
SECTION 4.17.4.16.  Insurance; Maintenance of Properties...........................6̶52
SECTION 4.18.4.17.  Notice of Defaults. ........................................................6̶52
SECTION 4.19.4.18.  Business Activities. .......................................................6̶53
SECTION 4.20.      Payments for Consent. .......................................................6
SECTION 4.21.4.19.  Use of Proceeds. ............................................................6̶53
SECTION 4.22.4.20.  Further Instruments and Acts. .......................................6̶53

ARTICLE 5 Merger .................................................................................................6̶53
SECTION 5.01.      Merger and Consolidation................................................6̶53

ARTICLE 6 Defaults and Remedies.......................................................................6̶55
SECTION 6.01.      Events of Default. ...........................................................6̶55
SECTION 6.02.      Acceleration....................................................................6̶56
SECTION 6.03.      Other Remedies...............................................................6̶57
SECTION 6.04.      Waiver of Past Defaults...................................................6̶57
SECTION 6.05.      Control by Majority.........................................................6̶57
SECTION 6.06.      Limitation on Suits..........................................................6̶58
SECTION 6.07.      Rights of Holders to Receive Payment. ...........................6̶58
SECTION 6.08.      Collection Suit by Trustee................................................6̶58
SECTION 6.09.      Trustee May File Proofs of Claim....................................6̶58
SECTION 6.10.      Priorities..........................................................................6̶59
SECTION 6.11.      Undertaking for Costs......................................................6̶59
SECTION 6.12.      Waiver of Stay or Extension Laws...................................6̶59
SECTION 6.13.      Payment of Premium........................................................6̶59

ARTICLE 7 Trustee ................................................................................................6̶60
SECTION 7.01.      Duties of Trustee. ...........................................................6̶60
SECTION 7.02.      Rights of Trustee.............................................................6̶61
SECTION 7.03.      Individual Rights of Trustee. ...........................................6̶61
SECTION 7.04.      Trustee's Disclaimer........................................................6̶61
SECTION 7.05.      Notice of Defaults. ..........................................................6̶61
SECTION 7.06.      Reports by Trustee to Holders..........................................6̶62
SECTION 7.07.      Compensation and Indemnity. .........................................6̶62
SECTION 7.08.      Replacement of Trustee....................................................6̶63
SECTION 7.09.      Successor Trustee by Merger. ..........................................6̶63
SECTION 7.10.      Eligibility; Disqualification. ............................................6̶64
SECTION 7.11.      Preferential Collection of Claims Against Company. .................6̶64

ARTICLE 8 Discharge of Indenture; Defeasance....................................................6̶64
SECTION 8.01.      Discharge of Liability on Notes; Defeasance. ..............................6̶64
SECTION 8.02.      Conditions to Defeasance. ...............................................6̶65
SECTION 8.03.      Application of Trust Money. ............................................6̶66
SECTION 8.04.      Repayment to Company.....................................................6̶66
SECTION 8.05.      Indemnity for Government Obligations.............................6̶66
SECTION 8.06.      Reinstatement...................................................................6̶66

ARTICLE 9 Amendments.................................................................................................6<u>67</u>

    SECTION 9.01.      Without Consent of Holders. ........................................6<u>67</u>

    SECTION 9.02.      With Consent of Holders. ..............................................6<u>67</u>

    SECTION 9.03.      Compliance with Trust Indenture Act. .........................6<u>69</u>

    SECTION 9.04.      Revocation and Effect of Consents and Waivers. ........6<u>69</u>

    SECTION 9.05.      Notation on or Exchange of Notes................................6<u>69</u>

    SECTION 9.06.      Trustee To Sign Amendments. .....................................6<u>69</u>

ARTICLE 10 Guaranties.................................................................................................6<u>69</u>

    SECTION 10.01.     Guaranties....................................................................6<u>69</u>

    SECTION 10.02.     Limitation on Liability. ................................................6<u>71</u>

    SECTION 10.03.     Successors and Assigns................................................6<u>72</u>

    SECTION 10.04.     No Waiver. ...................................................................6<u>72</u>

    SECTION 10.05.     Modification.................................................................6<u>72</u>

    SECTION 10.06.     Release of Guarantor....................................................6<u>72</u>

ARTICLE 11 Collateral ..................................................................................................6<u>73</u>

    SECTION 11.01.     Collateral Documents; Additional Collateral................6<u>73</u>

    SECTION 11.02.     Recording, Registration and Opinions.........................6<u>75</u>

    SECTION 11.03.     Release of Collateral. ...................................................6<u>76</u>

    SECTION 11.04.     Possession and Use of Collateral. ................................6<u>77</u>

    SECTION 11.05.     Specified Releases of Collateral. .................................6<u>77</u>

    SECTION 11.06.     Disposition of Collateral Without Release....................6<u>78</u>

    SECTION 11.07.     Form and Sufficiency of Release..................................6<u>79</u>

    SECTION 11.08.     Purchaser Protected......................................................6<u>79</u>

    SECTION 11.09.     Authorization of Actions To Be Taken by the Collateral Agent Under the Collateral Documents....................................6<u>79</u>

    SECTION 11.10.     Authorization of Receipt of Funds by the Collateral Agent Under the Collateral Documents.......................................6<u>80</u>

    <u>SECTION 11.11.</u>     <u>Third Party Consents to Pledge of Collateral. ................80</u>

ARTICLE 12 Miscellaneous...........................................................................................6<u>80</u>

    SECTION 12.01.     Trust Indenture Act Controls.......................................6<u>80</u>

    SECTION 12.02.     Notices. .......................................................................6<u>80</u>

    SECTION 12.03.     Communication by Holders with Other Holders. .........6<u>81</u>

    SECTION 12.04.     Certificate and Opinion as to Conditions Precedent.....6<u>82</u>

    SECTION 12.05.     Statements Required in Certificate or Opinion.............6<u>82</u>

    SECTION 12.06.     When Notes Disregarded. ............................................6<u>82</u>

    SECTION 12.07.     Rules by Trustee, Paying Agent and Registrar.............6<u>83</u>

    SECTION 12.08.     Legal Holidays. ...........................................................6<u>83</u>

    SECTION 12.09.     Governing Law.............................................................6<u>83</u>

    SECTION 12.10.     No Recourse Against Others.........................................6<u>83</u>

    SECTION 12.11.     Successors. ..................................................................6<u>83</u>

    SECTION 12.12.     Multiple Originals........................................................6<u>83</u>

    SECTION 12.13.     Table of Contents; Headings........................................6<u>83</u>

Appendix A – Provisions Relating to the Notes