EXHIBIT 2

[FORM OF FACE OF NOTES]

[Insert Global Note Legend here if appropriate]

[Insert Restricted Securities Legend here if appropriate]

No. [      ]

$[      ]
CUSIP No. $[      ]
ISIN No. [      ]

14% Senior Secured Cash/PIK Notes due 2015

LORAL SKYNET CORPORATION, a Delaware corporation, promises to pay to [CEDE & CO.][1] [      ], or registered assigns, the principal sum of [      ] DOLLARS [, or such greater or lesser amount as may from time to time be endorsed on the Schedule of Increases or Decreases in Global Note attached hereto (but in no event may such amount exceed the aggregate principal amount of Notes authenticated pursuant to Section 2.2 of Appendix A to the Indenture referred to below and then outstanding pursuant to Section 2.08 of the Indenture),][1] on [      ], 2015.

Interest Payment Dates[2]:      [      ] and [      ], commencing [      ], 200[   ].

Record Dates: [      ] and [      ].

Additional provisions of this Note are set forth on the other side of this Note.

Dated: [          ], 20[   ]

LORAL SKYNET CORPORATION

By:_____
Name:_____
Title:_____

By:_____
Name:_____

_____

[1] Use if Global Note.

[2] (a) if the Issue Date occurs in Q3 2005, the interest payment dates will be May 15 and November 15, commencing May 15, 2006;
(b) if the Issue Date occurs in Q4 2005, the interest payment dates will be July 15 and January 15, commencing July 15, 2006; and
(c) if the Issue Date occurs in Q1 2006, the interest payment dates will be May 15 and November 15, commencing November 15, 2006.

Title:_____

TRUSTEE'S CERTIFICATE OF
AUTHENTICATION

[                ],

as Trustee, certifies
that this is one of
the Notes referred
to in the Indenture.

By: _____
      Authorized Signatory

[FORM OF REVERSE SIDE OF NOTES]

14% Senior Secured Cash/PIK Notes due 2015

1.    Interest and Principal

LORAL SKYNET CORPORATION, a Delaware corporation (such corporation, and its successors and assigns under the Indenture hereinafter referred to, being herein called the *"Company"*), promises to pay interest on the principal amount of this Note at the rate per annum shown above. In certain circumstances, the Company may pay all or a portion of such interest in-kind through the issuance of Additional Notes in lieu of cash, as more particularly described in Section 4.01(b) of the Indenture. Subject to Section 4.01(c) of the Indenture, interest on overdue principal (and, to the extent lawful, on overdue installments of interest) shall accrue at the rate that is 2.0% per annum in excess of the rate specified in the preceding sentence. The Company will pay interest semi-annually in arrears on each Interest Payment Date. Interest on the Notes (including Additional Notes) will accrue from the date of issuance of each Note or, if interest has already been paid, from the date it was most recently paid or provided for. Interest will be computed on the basis of a 360-day year of twelve 30-day months.

The Notes will mature on [  ], 2015.

2.    Method of Payment

The Company will pay interest on the Notes (except defaulted interest) to the Persons who are registered holders of Notes at the close of business on the Record Date next preceding the Interest Payment Date even if Notes are canceled after the Record Date and on or before the Interest Payment Date. Holders must surrender Notes to a Paying Agent to collect principal payments. The Company will pay principal, premium, if any, and interest in money of the United States that at the time of payment is legal tender for payment of public and private debts. Payments in respect of the Notes represented by a Global Note (including principal, premium, if any, and interest) will be made by wire transfer of immediately available funds to the accounts specified by The Depository Trust Company. The Company will make all payments in respect of a certificated Note (including principal, premium, if any, and interest) by mailing a check to the registered address of each Holder thereof; provided, however, that payments on a certificated Note will be made by wire transfer to a U.S. dollar account maintained by the payee with a bank in the United States if such Holder elects payment by wire transfer by giving written notice to the Trustee or the Paying Agent to such effect designating such account no later than 30 days immediately preceding the relevant due date for payment (or such other date as the Trustee may accept in its discretion).

3.    Paying Agent and Registrar

Initially, [          ] (the *"Trustee"*), will act as Paying Agent and Registrar. The Company may appoint and change any Paying Agent, Registrar or co-registrar without notice. The Company or any of its domestically incorporated Wholly Owned Subsidiaries may act as Paying Agent, Registrar or co-registrar.

4.    Indenture

The Company issued the Notes under an Indenture dated as of [ ], 2005 (as such may be amended or supplemented from time to time, *"Indenture"*), among the Company, the Guarantors, the Trustee and the Collateral Agent. The terms of the Notes include those stated in the Indenture and those made part of the Indenture by reference to the Trust Indenture Act of 1939 (15 U.S.C. §§ 77aaa-77bbbb) as in effect on the date of the Indenture (the *"TIA"*). Terms defined in the Indenture and not defined herein have the meanings ascribed thereto in the Indenture. The Notes are subject to all such terms, and Noteholders are referred to the Indenture and the TIA for a statement of those terms.

The Notes are senior obligations of the Company.

The Indenture contains covenants that limit the ability of the Company and its subsidiaries to, among other things, incur additional indebtedness; layer indebtedness; pay dividends or distributions on, or redeem or repurchase capital stock; make investments; engage in transactions with affiliates; create liens on assets; transfer or sell assets; restrict dividends or other payments from subsidiaries; and consolidate, merge or transfer all or substantially all of its assets and the assets of its subsidiaries. These covenants are subject to important exceptions and qualifications.

5.   Optional Redemption

Except as set forth below, the Company will not be entitled to redeem the Notes at its option.

On and after [ ], 2009, [48 months after issuance], the Company will be entitled at its option to redeem all or a portion of the Notes upon not less than 30 nor more than 60 days' notice, at the redemption prices set forth below (expressed in percentages of principal amount) on the date of redemption (the *"Redemption Date"*), plus accrued and unpaid interest to the Redemption Date (subject to the right of Holders of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date), if redeemed during the 12-month period commencing on [ ] of the years set forth below:

| Period | Redemption Price |
|---|---|
| 2009 | 110.0% |
| 2010 | 108.0% |
| 2011 | 106.0% |
| 2012 | 104.0% |
| 2013 | 102.0% |
| 2014 | 100.0% |

Subject to the right of Holders to object, as set forth below in this paragraph, prior to [_____], 2009, the Company may elect to redeem all or a portion of the Notes upon not less than 30 nor more than 60 days' notice, at the redemption price of 110% of the principal amount thereof plus accrued and unpaid interest to the Redemption Date (subject to the right of Holders of record on the relevant Record Date to receive interest due on the relevant Interest

Payment Date). In such event, (1) the Officers' Certificate required pursuant to Section 3.01 of the Indenture shall also certify a resolution of the Board of Directors of the Company approving such redemption and (2) such notice of redemption shall inform the Holders of their right to object to and prevent such redemption, and provide a reasonable mechanism by which Holders may exercise such right. If within ten (10) Business Days following the date that such redemption notice is sent to the Holders, written notice is received by the Company from the Holders of at least two-thirds (2/3) in principal amount of the then outstanding Notes objecting to such redemption (such notices from the Holders of such two-thirds or greater amount, collectively, the "***Requisite Objection to Redemption Notice***"), then the Company shall not consummate such redemption. If the Requisite Objection to Redemption Notice is not received by the Company by the expiration of such ten (10) Business Day-period, then the Company may consummate such redemption as specified in such redemption notice.

6.    Notice of Redemption

Notice of redemption will be mailed by first class mail at least 30 days but not more than 60 days before the Redemption Date to each Holder of Notes to be redeemed at the Holder's registered address. Notes in denominations of $1,000 principal amount or less may be redeemed in whole and not in part. Notes in denominations larger than $1,000 principal amount may be redeemed in part but only in whole multiples of $1,000. If money sufficient to pay the redemption price of and accrued interest on all Notes (or portions thereof) to be redeemed on the Redemption Date is deposited with the Paying Agent on or before the Redemption Date and certain other conditions are satisfied, on and after such date interest will cease to accrue on such Notes (or such portions thereof) called for redemption unless the Company defaults in making the redemption payment.

7.    Put Provisions

Upon a Change of Control, each Holder will have the right to require that the Company repurchase such Holder's Notes at a purchase price set forth below, plus accrued and unpaid interest, if any, to the date of purchase (subject to the right of holders of record on the relevant Record Date to receive interest due on the related Interest Payment Date),if repurchased during the 12-month period commencing on [ ] of the years set forth below:

| Period | Purchase Price |
|---|---|
| 2005................................................................................ | 104% |
| 2006................................................................................ | 103% |
| 2007................................................................................ | 102% |
| 2008 and thereafter.......................................................... | 101% |

in each case as provided in, and subject to the terms of, the Indenture.

In certain circumstances, the Company must use the Net Available Cash from Asset Dispositions to make an offer to Holders to repurchase Notes at a purchase price of 100% of the principal amount, plus accrued and unpaid interest.

8.   Guaranty

The payment by the Company of the principal of, and premium and interest on, the Notes is fully and unconditionally guaranteed on a joint and several senior basis by each of the Guarantors.  Not all Subsidiaries of the Company are required to be Guarantors.

9.   Collateral

Subject to certain exceptions described in the Indenture, the Notes are secured by security interests in and liens on the Collateral (as defined in the Indenture).  Collateral may be released under certain circumstances as more particularly described in the Indenture.

10.   Transfer; Exchange

The Notes are in registered form without coupons.  A Holder may transfer or exchange Notes in accordance with the Indenture.  The Registrar may require a Holder, among other things, to furnish appropriate endorsements or transfer documents and to pay any taxes and fees required by law or permitted by the Indenture.  The Registrar need not register the transfer of or exchange any Notes selected for redemption (except, in the case of a Note to be redeemed in part, the portion of the Note not to be redeemed) or any Notes for a period of 15 days before the mailing of a notice of redemption of Notes to be redeemed or 15 days before an interest payment date, as applicable.

11.   Persons Deemed Owners

The registered Holder of this Note may be treated as the Note's owner for all purposes.

12.   Unclaimed Money

If money for the payment of principal or interest remains unclaimed for two years, the Trustee or Paying Agent shall pay the money back to the Company at its request unless an abandoned property law designates another Person.  After any such payment, Holders entitled to the money must look only to the Company and not to the Trustee for payment.

13.   Discharge and Defeasance

Subject to certain conditions, the Company at any time shall be entitled to terminate some or all of its obligations under the Notes and the Indenture if the Company deposits with the Trustee money or U.S. Government Obligations for the payment of principal and interest on the Notes to redemption or maturity, as the case may be.

14.   Amendment, Waiver

Subject to certain exceptions set forth in the Indenture, (i) the Indenture, the Collateral Documents and the Notes may be amended with the written consent of the Holders of at least a majority in principal amount outstanding of the Notes and (ii) any default or noncompliance with any provision may be waived with the written consent of the Holders of a

majority in principal amount outstanding of the Notes. Subject to certain exceptions set forth in the Indenture, without the consent of any Noteholder, the Company, the Guarantors, and the Trustee shall be entitled to amend the Indenture, the Collateral Documents or the Notes to cure any ambiguity, omission, defect or inconsistency, to comply with Article 5 of the Indenture, to provide for uncertificated Notes in addition to or in place of certificated Notes, to add guarantees with respect to the Notes, including any Guaranties, to add Collateral to further secure the Notes, to add additional covenants or surrender rights and powers conferred on the Company or any Guarantors, to comply with any request of the SEC in connection with qualifying the Indenture under the TIA, to make any change that does not adversely affect the rights of any Noteholder, or to evidence the release of a Guarantor in accordance with the Indenture.

15.    Defaults and Remedies

Under the Indenture, Events of Default include: (i) defaults in any payment of interest on any Note when the same becomes due and payable, continued for 30 days; (ii) default in payment of principal on the Notes at maturity, upon optional redemption pursuant to Section 5 of the Notes, upon declaration of acceleration or otherwise, or failure by the Company to redeem or purchase Notes when required; (iii) failure by the Company or any Guarantor that is a Significant Subsidiary to comply with other agreements in the Indenture or the Notes, in certain cases subject to notice and lapse of time; (iv) certain accelerations (including failure to pay within any grace period after final maturity) of other Indebtedness of the Company, or any Significant Subsidiary (whether or not a Guarantor) if the amount accelerated (or so unpaid) exceeds $50.0 million; (v) certain events of bankruptcy or insolvency with respect to the Company, or any Significant Subsidiary (whether or not a Guarantor); (vi) certain judgments or decrees for the payment of money in excess of $50.0 million against the Company or any Significant Subsidiary (whether or not a Guarantor); and (vii) certain defaults with respect to Guaranties and Collateral Documents in certain cases subject to notice and lapse of time. If an Event of Default occurs and is continuing, the Trustee or the Holders of at least 40.0% in principal amount of the Notes then outstanding may declare all the Notes to be due and payable by notice in writing to the Company and the Trustee, and upon such declaration, the Notes will be due and payable immediately. Certain events of bankruptcy or insolvency are Events of Default which will result in the Notes being due and payable immediately upon the occurrence of such Events of Default.

Noteholders may not enforce the Indenture or the Notes except as provided in the Indenture. The Trustee may refuse to enforce the Indenture or the Notes unless it receives reasonable indemnity or security against any loss, liability or expense. Subject to certain limitations, Holders of a majority in principal amount of the Notes may direct the Trustee in its exercise of any trust or power. The Trustee may withhold from Noteholders notice of any continuing Default (except a Default in payment of principal or interest) if it determines that withholding notice is in the interest of the Holders.

16.    Trustee Dealings with the Company

Subject to certain limitations imposed by the Act, the Trustee under the Indenture, in its individual or any other capacity, may become the owner or pledgee of Notes and may otherwise deal with and collect obligations owed to it by the Company or its Affiliates and may

otherwise deal with the Company or its Affiliates with the same rights it would have if it were not Trustee.

17.     No Recourse Against Others

No director, officer, employee, incorporator or stockholder, as such, of the Company or any Guarantor will have any liability for any obligations of the Company or any Guarantor under the Notes, any Guaranty or the Indenture or for any claim based on, in respect of, or by reason of such obligations or their creation. Each Holder of the Notes by accepting a Note waives and releases all such liability. The waiver and release are part of the consideration for issuance of the Notes.

18.     Authentication

This Note shall not be valid until an authorized signatory of the Trustee (or an authenticating agent) manually signs the certificate of authentication on the other side of this Note.

19.     Abbreviations

Customary abbreviations may be used in the name of a Noteholder or an assignee, such as TEN COM (=tenants in common), TEN ENT (=tenants by the entireties), JT TEN (=joint tenants with rights of survivorship and not as tenants in common), CUST (=custodian), and U/G/M/A (=Uniform Gift to Minors Act).

20.     CUSIP Numbers

The Company in issuing the Notes may use "CUSIP" numbers and corresponding "ISINs" (if then generally in use) and, if so, the Trustee may use "CUSIP" numbers and corresponding "ISINs" in notices of redemption as a convenience to Holders; provided, however, that any such notice may state that no representation is made as to the correctness of such numbers either as printed on the Notes or as contained in any notice of a redemption and that reliance may be placed only on the other identification numbers printed on the Notes, and any such redemption shall not be affected by any defect in or omission of such numbers.

21.     Governing Law

This Note shall be governed by, and construed in accordance with, the laws of the state of New York but without giving effect to applicable principles of conflicts of law to the extent that the application of the laws of another jurisdiction would be required thereby.

22.     Copies

The Company will furnish to any Noteholder upon written request and without charge to the Noteholder a copy of the Indenture which has in it the text of this Note in larger type. Requests may be made to:

Loral Skynet Corporation

_____

Attention: [_____]

## ASSIGNMENT FORM

To assign this Note, fill in the form below:

I or we assign and transfer this Note to

(Print or type assignee's name, address and zip code)

(Insert assignee's soc. sec. or tax I.D. No.)

and irrevocably appoint _____ agent to transfer this Note on the books of the Company.  The agent may substitute another to act for him.

_____

Date: _____ Your Signature: _____

_____

Sign exactly as your name appears on the other side of this Note.

[TO BE ATTACHED TO GLOBAL NOTES]

## SCHEDULE OF INCREASES OR DECREASES IN GLOBAL NOTE

The following increases or decreases in this Global Note have been made:

| Date of Exchange | Amount of decrease in principal amount of this Global Note | Amount of increase in principal amount of this Global Note | Principal amount of this Global Note following such decrease or increase | Signature of authorized officer of Trustee or Notes Custodian |
|---|---|---|---|---|

## OPTION OF HOLDER TO ELECT PURCHASE

If you want to elect to have this Note purchased by the Company pursuant to Section 4.04 or 4.09 of the Indenture, check the box: ☐

If you want to elect to have only part of this Note purchased by the Company pursuant to Section 4.04 or 4.09 of the Indenture, state the amount in principal amount:
$ _____

Date: _____          Your Signature: _____
                             (Sign exactly as your name appears on
                             the other side of this Note.)

Signature Guarantee: _____
                             (Signature must be guaranteed)

Signatures must be guaranteed by an "eligible guarantor institution" meeting the requirements of the Registrar, which requirements include membership or participation in the Security Transfer Agent Medallion Program (*"STAMP"*) or such other "signature guarantee program" as may be determined by the Registrar in addition to, or in substitution for, STAMP, all in accordance with the Securities Exchange Act of 1934, as amended.