# EXHIBIT 14

MHR Capital Partners LP
MHR Capital Partners (100) LP
MHR Institutional Partners II LP
MHR Institutional Partners IIA LP
40 West 57th Street, 24th Floor
New York, NY 10019

Thracia LLC
c/o P. Schoenfeld Asset Management LLC
1330 Avenue of the Americas
New York, NY 10019

\_\_ \_\_, 2005

Loral Space & Communications Ltd.
600 Third Avenue
New York, New York 10016
Attention: Bernard Schwartz

Re:   Commitment to Purchase New Skynet Notes

Gentlemen:

Loral Space & Communications Ltd. ("Ltd."), Loral Space & Communications Corporation, Loral SpaceCom Corporation, Loral Satellite, Inc., Space Systems/Loral, Inc., Loral Communications Services, Inc., Loral Ground Services, L.L.C., Loral Orion, Inc., Loral CyberStar Global Services, Inc., Loral Cyberstar GmbH, Loral CyberStar Japan, Inc., Loral CyberStar Services, Inc., Loral CyberStar Holdings, L.L.C., Loral CyberStar International, Inc., Loral Asia Pacific Satellite (HK) Limited, SS/L Export Corporation, CyberStar, L.P., CyberStar, L.L.C., Loral Skynet Network Services, Inc., and Loral Licensing Ltd. (collectively, the "Debtors"), intend to engage in a reorganization (the "Reorganization") pursuant to chapter 11 of title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). The Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on July 15, 2003, and subsequently filed a Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code on March 22, 2005 attached as Exhibit A hereto (as amended and supplemented from time to time in accordance with and subject to the terms of this Agreement, the "Plan"). It is our understanding that in connection with the Reorganization, among other things: each holder of an Allowed Orion General Unsecured Claim on the record date set therefor shall have a Subscription Right entitling such holder to subscribe for up to its New Skynet Notes Pro Rata Share of New Skynet Notes in connection with the Rights Offering. Holders of Allowed Orion General Unsecured Claims have the right, but not the obligation, to participate in the Rights Offering as provided in the Plan.

Terms used in this letter agreement (this "Agreement") with initial capital letters that are not otherwise defined shall have the meanings ascribed to such terms in the Plan.

1. The Commitment.

(a) Subject to the terms and conditions hereof, (i) MHR Capital Partners LP, MHR Capital Partners (100) LP, MHR Institutional Partners II LP, MHR Institutional Partners IIA LP and/or one or more of their affiliates (collectively, "MHR") agrees to purchase 95% (ninety five percent) and (ii) Thracia LLC ("Schoenfeld,") agrees to purchase 5% (five percent) (Schoenfeld together with MHR, the "Backstop Purchasers" and, each individually, a "Backstop Purchaser") at the same price provided in the Plan any amount of New Skynet Notes not subscribed for or not otherwise purchased pursuant to the Rights Offering, (the "Commitment").

(b) MHR agrees that it shall purchase all New Skynet Notes that Schoenfeld would have been obligated to purchase pursuant to its Commitment, and MHR's Commitment shall include Schoenfeld's Commitment if and to the extent that (i) Schoenfeld is not a party to this Agreement or does not perform its Commitment as required hereunder, or (ii) Schoenfeld asserts any right it may have under this Agreement and it is thereby not, or is asserting that it is not, required to perform its Commitment hereunder and MHR has a similar right hereunder but MHR does not assert such right and elects to perform its Commitment hereunder. The Debtors agree that if MHR performs its Commitment pursuant to Sections 1(b)(i) and 1(b)(ii) above: (x) such performance shall be deemed performance by Schoenfeld in all respects, (y) the Debtors shall be required to perform all their respective obligations hereunder and (z) payments of the Subscription Purchase Price and the Backstop Fee shall be adjusted and paid accordingly.

2. The Closing.

(a) The delivery of and payment for the New Skynet Notes purchased hereunder and the consummation of the Rights Offering shall take place at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 on the Effective Date (the "Closing").

(b) Upon Closing:

(i) the Backstop Purchasers, in satisfaction of their Commitment, shall each pay by wire transfer the purchase price payable in consideration of any New Skynet Notes purchased pursuant to Sections 1(a) or 1(b);

(ii) the Debtors shall deliver to each of the Backstop Purchasers (or their designees) New Skynet Notes or, if the New Skynet Notes are in global form, The Depositary Trust Company ("DTC") shall then credit the account of the participating organizations in DTC's system designated by such Backstop Purchaser with portions of the principal amount of the global notes representing the New Skynet Notes (which global notes shall be issued to DTC) purchased by such Backstop Purchaser pursuant to its Commitments, as previously allocated by written notice of such Backstop Purchaser to Ltd.;

(iii) the Debtors shall deliver all deliveries required to satisfy the conditions set forth in this Agreement;

(iv) the Debtors shall pay all fees, costs and expenses incurred by each of the Backstop Purchasers, including without limitation fees and expenses (x) of counsel(s) to each of the Backstop Purchasers, and (y) incurred in connection with the preparation and filing, including filing fees, of submissions under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended (the "HSR Act") (all of the fees, costs and expenses set forth in this Section 2(b)(iv), collectively "Expenses"); and

(v) the Debtors shall pay the Backstop Fee to each of the Backstop Purchasers in accordance with Section 3.

3. Consideration for the Commitment

In consideration for the Commitment, at the Closing MHR shall receive 95% (ninety five percent) of the Backstop Fee and Schoenfeld shall receive 5% (five percent) of the Backstop Fee; provided, however that if MHR's Commitment is adjusted pursuant to Section 1(b), Schoenfeld's portion of the Backstop Fee shall be distributed to MHR at the Closing.

4. Representations and Warranties.

(a) Each of the Debtors hereby jointly and severally represents and warrants as of the date of this Agreement, and, other than those representations and warranties that speak only as of a specified date, as of the Closing, to each of the Backstop Purchasers that:

(i) Such Debtor is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization, except where the failure to be in good standing could not, individually and in the aggregate, reasonably be expected to have a Material Adverse Effect (as defined herein), and has all requisite corporate or other power and authority to execute, deliver and perform its obligations hereunder and to consummate the transactions contemplated hereby and to own, lease and operate its properties and assets and to conduct its business as now being conducted. Such Debtor and each of its subsidiaries is duly qualified to transact business in each jurisdiction in which the nature of property owned or leased by it or the conduct of its business requires it to be so qualified, except where the failure to be duly qualified to transact business, could not, individually or in the aggregate, reasonably or be expected to have a Material Adverse Effect;

(ii) Each of such Debtor's subsidiaries is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization, except where the failure to be in good standing could not, individually and in the aggregate, reasonably be expected to have a Material Adverse Effect. All of the outstanding shares of capital stock of each of Ltd.'s subsidiaries is duly authorized, validly issued, fully paid and nonassessable and, with respect to the, direct and indirect, wholly owned subsidiaries of any Debtor, all such shares are owned by Ltd. or another wholly owned subsidiary of Ltd., free and clear of all liens, preemptive rights, rights of first refusal, subscription and similar rights;

(iii) Such Debtor has the requisite power and authority to execute and file with the Bankruptcy Court the Plan and the Disclosure Statement. The formulation,

3

preparation and filing of the Plan has been (A) duly and validly authorized by all necessary corporate or other action on the part of such Debtor and (B) duly and validly executed and delivered by such Debtor. Upon the entry of the Confirmation Order, the Plan shall constitute a valid and binding obligation of such Debtor enforceable against such Debtor in accordance with its terms;

(iv) Subject to entry of the Confirmation Order and the Bermuda Order, and except for the applicable requirements of the Securities Act of 1933, as amended (the "Securities Act"), the Securities Exchange Act of 1934, as amended (the "Exchange Act") and any applicable state and foreign securities and communications laws, the Communications Act of 1934, the HSR Act and the Bankruptcy Code, the Confirmation Order, the Bermuda Order and the Plan (collectively, the "Applicable Requirements"), the execution, delivery and performance of this Agreement and each of the Plan Documents by such Debtor, as applicable, and the consummation by such Debtor of the transactions contemplated hereby and thereby in accordance with the terms hereof and thereof do not and shall not (A) violate any provision of the articles of incorporation or by-laws or other organizational documents of such Debtor or (B) conflict with, violate, constitute a breach of or result in the creation of a lien or any other encumbrance against, such Debtor or its properties pursuant to any material contract, agreement or instrument by which such Debtor or any of its subsidiaries is bound or any judgment, order, decree, law, statute, rule, regulation or other judicial or governmental restriction to which such Debtor or any of its subsidiaries is subject, other than such violations, conflicts or breaches that have not had nor could, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect;

(v) The New Skynet Notes issuable upon exercise of the Subscription Rights or purchasable pursuant to Section 1, have been or as of the Closing shall be duly authorized and reserved for issuance, and when issued, sold and delivered against payment therefor upon exercise of the Subscription Rights, or pursuant to the provisions of Section 1 or 3, as the case may be, shall be validly issued, fully paid, non-assessable and free of all liens, preemptive rights, rights of first refusal, subscription and similar rights;

(vi) Since the Balance Sheet Date (as defined below), except as set forth in the Plan or as described in the Disclosure Statement, there has not occurred with respect to the Debtors (A) any event, fact or circumstance which has had or could, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect or (B) any event, fact or circumstance affecting generally the industry in which the Debtors conduct their business, which could reasonably be expected to materially and adversely affect the ability of the Debtors to operate their businesses consistent with past practices;

(vii) Since the Balance Sheet Date, except as set forth in the Plan or as described in the Disclosure Statement or as approved by the Bankruptcy Court, such Debtor has carried on its business only in the ordinary and usual course consistent with past practice;

4

(viii) Except with respect rights or licenses for orbital slots, such Debtor has good and marketable title to all of its material real and personal properties, which on the Effective Date shall be free and clear of all liens, except (x) as set forth in the Plan or as described in the Disclosure Statement or (y) as could not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect;

(ix) Except as set forth in the Plan or as described in the Disclosure Statement, there is no litigation, proceeding or governmental investigation (collectively, "Litigation") to which such Debtor is a party which is pending, or to the knowledge of such Debtor, threatened, against such Debtor or any properties or rights of such Debtor which could, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect . Such Debtor is not in violation of any term of any judgment, writ, decree, injunction or order entered by any court or governmental authority and outstanding against it or any of its properties or rights, except for such violations which could not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect;

(x) As of the Effective Date, no Debtor shall be in conflict with, or in default or violation of, any law, order, or agreement applicable to it or by which any property or asset of such Debtor is bound or affected, except for such conflicts, defaults, or violations that could not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect; and

(xi) In connection with the Subscription Rights and New Skynet Notes being offered to the Backstop Purchasers hereunder and in the Rights Offering:

(x) the Debtors have not offered the Subscription Rights or New Skynet Notes by means of any form of general solicitation or general advertising, including, but not limited to, (i) any advertisement, article notice or other communication published in any newspaper, magazine or website or similar publication or similar medium or broadcast over television or the internet or (ii) any seminar, meeting or webcast whose attendees have been invited by a general solicitation or general advertising; and

(y) the Debtors and the Surviving Entities have no knowledge of any fact or circumstance which would prohibit the issuance, sale and delivery of the Subscription Rights or the New Skynet Notes, as applicable, or affect the ability of New Skynet to issue the New Skynet Notes to either of the Backstop Purchasers without registration under the Securities Act, as contemplated herein and in the Plan.

The representations and warranties set forth in this Section 4(xi) (the "Surviving Representation") shall survive as if made, and shall be assumed by, New Skynet for a period of twelve (12) months following the date of the Closing.

(b) Each Backstop Purchaser hereby represents and warrants to the Debtors:

(i) It is a limited liability corporation, limited partnership, corporation or other entity, as the case may be, duly organized, validly existing and in good standing

5

under the laws of its state of incorporation and has all requisite power and authority to execute, deliver and perform its obligations hereunder and to consummate the transactions contemplated hereby;

(ii) The execution, delivery and performance of this Agreement by such Backstop Purchaser and the consummation by such Backstop Purchaser of the transactions contemplated hereby have been duly and validly authorized by all necessary action on the part of such Backstop Purchaser;

(iii) This Agreement has been duly executed and delivered by such Backstop Purchaser and constitutes the legal, valid and binding obligation of such Backstop Purchaser, enforceable against such Backstop Purchaser in accordance with its terms;

(iv) It is an "accredited investor" within the meaning of Regulation D of the Securities Act;

(v) It acknowledges that it has such knowledge and experience in financial or business matters that it is capable of evaluating the merits and risks of the investment contemplated hereby; and

(vi) New Skynet Notes to be received by such Backstop Purchaser hereunder will be acquired for such Backstop Purchaser's own account, not as nominee or agent, and not with a view to the resale or distribution of any part thereof in violation of the Securities Act, and such Backstop Purchaser has no present intention of selling, granting any participation in, or otherwise distributing the same in violation of the Securities Act. Notwithstanding anything in this Section 4(b)(vi) to the contrary, by making the representations herein, such Backstop Purchaser does not agree to hold the New Skynet Notes for any minimum or other specific term and reserves the right to dispose of the New Skynet Notes at any time in accordance with or pursuant to a registration statement or an exemption from the registration requirements under the Securities Act.

5. Certain Conditions.

(a) The obligations of each of the Backstop Purchasers to consummate the transactions contemplated herein shall be subject to the satisfaction (or waiver by such Backstop Purchaser, including pursuant to Section 1(b)) of each of the following conditions:

(i) (x) the order of the Bankruptcy Court confirming the Plan, which order shall provide for, among other things, the approval of this Agreement (the "Confirmation Order"), in a form reasonably satisfactory to each of the Backstop Purchasers, shall have been entered by the Bankruptcy Court, (y) such Confirmation Order shall have become a Final Order (as defined in the Plan) prior to [_____], 2005 and (z) none of the Debtors shall have made a public announcement, entered into an agreement or filed any pleading, evidencing its intention to support or otherwise supports any transaction with respect to the reorganization or sale of any of the Debtors or otherwise materially inconsistent with the transactions contemplated by the Plan or this Agreement;

6

(ii) any plan of reorganization of the Debtors shall be consummated only on terms consistent with the Plan, in all material respects, and all of the conditions precedent to the confirmation and effectiveness of the Plan set forth in Section 12 of the Plan shall have been satisfied, in all material respect, in a manner reasonably satisfactory to each of the Backstop Purchasers;

(iii) the final documentation relating to the Plan and the transactions contemplated by the Plan, including, without limitation, the Plan Supplement and each of the Plan Documents, shall be in form and substance reasonably satisfactory to each of the Backstop Purchasers and shall be consistent with the Plan and the exhibits attached thereto, and any and all amendments or modifications to the Plan on or after the date hereof shall be in form and substance reasonably satisfactory to each of the Backstop Purchasers;

(iv) the Restructuring Transactions shall be consummated in a manner reasonably satisfactory to each of the Backstop Purchasers;

(v) (x) the representations and warranties of each of the Debtors contained in this Agreement that are qualified as to materiality shall be true and correct in all respects, on and as of the date hereof and, with respect to the Debtors that are to continue in existence immediately following the Effective Date, or the successors of the Debtors or new entities created pursuant to the Plan (the "Surviving Entities"), as of the Closing, with the same force and effect as though made on and as of such date, except to the extent that any representation or warranty is made as of a specified date, in which case such representation or warranty shall be true and correct as of such specified date, and (y) the representations and warranties that are not so qualified shall be true and correct in all material respects on and as of the date hereof and, with respect to the Surviving Entities, as of the Closing, with the same force and effect as though made on and as of such date, except to the extent that any representation or warranty is made as of a specified date, in which case such representation or warranty shall be true and correct in all material respects as of such specified date, and (z) the Debtors shall have performed or complied with, in all material respects, their covenants required to be performed or complied with under this Agreement on or prior to the date hereof and the Closing, as applicable (and Ltd. shall have delivered to each of the Backstop Purchasers a certificate of its Chief Executive Officer or Chief Financial Officer to the effect that each of the conditions specified in this Section 5(a)(v) is satisfied in all respects);

(vi) the New Skynet Notes to be purchased by each of the Backstop Purchasers pursuant to its Commitment shall be issued and distributed in accordance with the Plan and this Agreement pursuant to an exemption from registration under the Securities Act; and

(vii) no provision of any applicable law or regulation and no judgment, injunction, decree or other legal restraint shall prohibit the consummation of the Plan, the Rights Offering or the transactions contemplated by this Agreement.

7

(b) The obligations of each of the Debtors to consummate the transactions contemplated herein shall be subject to the satisfaction (or waiver by the Debtors) of each of the following conditions:

(i) (x) the Confirmation Order shall have been entered by the Bankruptcy Court, (y) such Confirmation Order shall have become a Final Order (as defined in the Plan), and (z) the conditions precedent to the effectiveness of the Plan shall have been satisfied or waived in accordance with the Plan;

(ii) subject to Section 1(b), (x) the representations and warranties of each of the Backstop Purchasers contained in this Agreement that are qualified as to materiality shall be true and correct in all respects, on and as of the date hereof and the Closing, with the same force and effect as though made on and as of such date, except to the extent that any representation or warranty is made as of a specified date, in which case such representation or warranty shall be true and correct as of such specified date, and (y) the representations and warranties that are not so qualified shall be true and correct in all material respects on and as of the date hereof and the Closing, with the same force and effect as though made on and as of such date, except to the extent that any representation or warranty is made as of a specified date, in which case such representation or warranty shall be true and correct in all material respects as of such specified date, and (z) each of the Backstop Purchasers shall have performed or complied with, in all material respects, their covenants required to be performed or complied with under this Agreement on or prior to date hereof and the Closing, as applicable (and each of the Backstop Purchasers shall have delivered to the Debtors a certificate to the effect that each of the conditions specified in this Section 5(b)(iii) is satisfied in all respects); and

(iii) no provision of any applicable law or regulation and no judgment, injunction, decree or other legal restraint shall prohibit the consummation of the Plan or the Rights Offering.

6. Additional Condition.

The Commitment is subject to the further condition that there shall not have occurred between December 31, 2004 (the "Balance Sheet Date") and the Closing, (i) any circumstance, change in or effect on the Debtors, taken as a whole, that is or could be reasonably likely to be materially adverse to the business, operations, or financial condition of the Debtors, taken as a whole, or (ii) any event, fact or circumstance that could reasonably be expected to materially impair any Debtor's ability to enter into or consummate the transactions contemplated by the Plan or this Agreement (each of the events described in clauses (i) and (ii) above, a "Material Adverse Effect").

7. Satisfaction of the Commitment.

(a) Each Backstop Purchaser may, in its sole discretion, satisfy its Commitment directly and/or indirectly through one or more of its affiliates, separate accounts within its control or investment funds under its or its affiliates' management.

(b)     The Backstop Purchasers may enter into any agreement or arrangement with each other relating to the transactions contemplated by this Agreement; provided, however that no such agreement or arrangement has any effect on the Commitment in the aggregate or shall relieve any party of its obligations hereunder.

8.  Certain Covenants.

(a)     Ltd. shall, and shall cause each of the other Debtors to, promptly provide each of the Backstop Purchasers with drafts of all documents, motions, orders, filings or pleadings that pertain to this Agreement or are otherwise material to the transactions contemplated by the Plan that any Debtor proposes to file with the Bankruptcy Court which relate to the consummation or approval of the Plan, the Disclosure Statement, this Agreement or any provision therein or herein, and shall provide each of the Backstop Purchasers with reasonable opportunity to review such filings to the extent reasonably practicable. Ltd. shall, and shall cause each of the other Debtors to, consult and cooperate with each of the Backstop Purchasers, and consider in good faith the views of the Backstop Purchaser, as contemplated by the Plan, with respect to all such filings and the acceptance or rejection prior to the Closing of any unexpired lease, license or other executory contract.

(b)     Each of the Debtors shall use its reasonable best efforts to obtain all approvals, waivers, consents and other authorizations required by the Applicable Requirements, necessary in connection with the performance of the Plan and this Agreement by each of the Backstop Purchasers and the consummation by each of the Backstop Purchasers of the transactions contemplated hereby and under the Plan; provided, however that the parties shall cooperate with respect to obtaining such approvals, waivers, consents and authorizations, but neither party shall be obligated to take any action on behalf of the other party in order to obtain any such approval, waiver, consent or authorization.

(c)     Ltd. shall, as requested by each of the Backstop Purchasers, either pay directly to the appropriate governmental entity, on behalf of each of the Backstop Purchasers, or reimburse each of the Backstop Purchasers for, any fees paid by each of the Backstop Purchasers in connection with its compliance with the applicable requirements of the HSR Act.

(d)     The Debtors shall use their reasonable best efforts to take, or cause to be taken, promptly all actions and to do, or cause to be done, promptly all things necessary, proper or advisable in order to (i) obtain a Confirmation Order with respect to the Plan and its effectiveness, (ii) include in the Confirmation Order the approval of the payment of the Backstop Fees and Expenses and (iii) consummate the transactions contemplated by the Plan on terms consistent with the terms set forth in the Plan, including, without limitation, obtaining approval for all Applicable Requirements. Each of the Backstop Purchasers and the Debtors shall cooperate fully with each other to the extent reasonable in connection with the foregoing, and neither of the Backstop Purchasers nor any of the Debtors shall take any action for the purpose of delaying, impairing or impeding the receipt of any approval for any Applicable Requirement.

(e)     The Debtors shall pay in full all Expenses incurred by each of the Backstop Purchasers in accordance with Sections 2(b)(iv) or 8(c) or, if this Agreement is terminated prior to the Closing, at the time of any such termination.

9

(f) The Debtors shall deliver to each of the Backstop Purchasers at least ten business days prior to the Closing a written notice, which shall (a) specify the amount payable on the Closing by such Backstop Purchaser in satisfaction of its Commitment, (b) specify the date on which the Closing is to occur and (c) designate the account to which each of the Backstop Purchasers shall deliver the amounts so payable, as set forth in Section 2(b)(i).

9. Other Backstop Purchase Commitments. Except as set forth in Section 1(b) or Section 7(b), neither Backstop Purchaser shall have any liability for the Commitment of the other Backstop Purchaser.

10. Certain Notices; Certain Information.

(a) Each of the Debtors hereby covenants that it shall promptly deliver to each of the Backstop Purchasers, and each of the Backstop Purchasers hereby covenants that it shall promptly deliver to the Debtors, written notice of any matter, event or development that would (i) render any representation or warranty made by it herein or in any of the Plan Documents to which it is a direct party inaccurate or incomplete in any respect or (ii) constitute or result in a breach by it of, or a failure by it to comply with, any covenant herein or in any of the Plan Documents to which it is a direct party and is applicable to it.

(b) Each of the Debtors shall furnish each of the Backstop Purchasers with such information regarding itself as any Backstop Purchaser may reasonably request. All such requests for information shall be made to the Chief Executive Officer of Ltd. or his designee, or, if such person is not available, to the Chief Financial Officer of Ltd.

11. Certain Consent Rights. Each of the Debtors hereby covenants that, without the prior written consent of each of the Backstop Purchasers, it shall not, prior to the Closing, enter into any agreement with respect to its securities (including securities contemplated by the Plan), or amend any existing agreement with respect to such securities in any manner inconsistent with the rights of each of the Backstop Purchasers pursuant to this Agreement.

12. Removal of Legends. In the event that, following the transactions contemplated by the Plan and this Agreement, any certificates, notes or other forms of evidence of securities ("Securities") of New Loral or New Skynet held by each of the Backstop Purchasers bear a restrictive legend then:

(a) if either Backstop Purchaser delivers to New Loral or New Skynet, as the case may be, (i) a certificate, in a form reasonably satisfactory to such corporation certifying that such Securities have been transferred pursuant to a registration statement that is effective under the Securities Act or (ii) a certificate, in a form reasonably satisfactory to such corporation, certifying that such Securities have been transferred without registration in accordance with the requirements of Rule 144 under the Securities Act, such corporation shall, or shall instruct its transfer agent to, issue upon surrender of such Securities one or more new Securities in respect of those so transferred evidenced by Securities so surrendered, which new Securities shall not bear any such legend; and

(b) if either Backstop Purchaser delivers to New Loral or New Skynet, as the case may be, an opinion of outside counsel to such Backstop Purchaser, reasonably acceptable to

10

New Loral or New Skynet, as the case may be, that, in the opinion of such counsel, such legend is not, or is no longer, required to ensure compliance with the Securities Act, New Loral or New Skynet, as the case may be, shall, or shall instruct its transfer agent to, issue upon surrender of such Securities one or more new Securities, which new Securities shall not bear any such legend.

13. Termination by Backstop Purchaser; Survival. Each Backstop Purchaser shall be entitled to terminate its obligations under this Agreement by giving written notice thereof to Ltd. and the other Backstop Purchaser in the event any of the Debtors materially breaches this Agreement (and fails to cure such breach within ten (10) days from the receipt of notice of such breach), fails to satisfy any of the material terms or conditions of this Agreement, in all material respects, the substantial satisfaction, in all material respects, of any such term or condition becomes impossible, any of the conditions set forth in Section 5 is not satisfied by [_____], 2005 or Ltd. or any other Debtor shall have made a public announcement, entered into an agreement or filed any pleading, evidencing its intention to support or otherwise supports any transaction with respect to the reorganization or sale of any of the Debtors or otherwise materially inconsistent with the transactions contemplated by this Agreement and the Plan. Upon any termination of or non-ocurence of the Closing pursuant to this Agreement, the provisions of Sections 8(e), 14, 15, 16 and 18 shall survive any such termination.

14. Indemnification.

(a) If (i) the Debtors or any Surviving Entities breach the Surviving Representation or (ii) any action, suit or proceeding (related to or arising from this Agreement or the transactions contemplated hereby) shall be commenced against, or any claim or demand (related to or arising from this Agreement or the transactions contemplated hereby) shall be asserted against either of the Backstop Purchasers by a third-party, then the Surviving Entities, on a joint and several basis, (each, an "Indemnifying Party") shall indemnify, defend and hold harmless each Backstop Purchaser and each such Backstop Purchaser's affiliates and each of their respective officers, directors, managers, partners, stockholders, employees, advisors, agents and other representatives and any affiliate of the foregoing, and each of their respective successors and permitted assigns (each, an "Indemnified Party") from and against, and shall promptly reimburse each Indemnified Party for, all losses, damages, liabilities, costs and expenses, including, without limitation, interest, court costs and reasonable attorneys' fees and expenses arising or resulting from or in connection with (i) any such breach of the Surviving Representation for which the Backstop Purchasers have asserted a claim in accordance with this Section 14 on or prior to one year following the date of the Closing and (ii) any such action, suit or proceeding by a third-party (collectively, "Indemnified Liabilities"); provided, however that Indemnified Liabilities shall exclude any portion of such losses, damages, liabilities, costs or expenses resulting from an Indemnified Party's gross negligence or willful misconduct.

(b) Each Indemnified Party entitled to indemnification hereunder shall (i) give prompt written notice to the Indemnifying Party of any claim with respect to which it seeks indemnification or contribution pursuant to this Agreement and (ii) permit such Indemnifying Party to assume the defense of such claim with counsel selected by the Indemnified Party and reasonably satisfactory to the Indemnifying Party; provided, however, that any Indemnified Party entitled to indemnification hereunder shall have the right to employ separate counsel and to participate in the defense of such claim, but the fees and expenses of such counsel shall be at the

11

expense of such Indemnified Party unless (x) the Indemnifying Party has agreed in writing to pay such fees and expenses, (y) the Indemnifying Party shall have failed to assume the defense of such claim within 20 days of delivery of the written notice of the Indemnified Party with respect to such claim or failed to employ counsel selected by such Indemnifying party and reasonably satisfactory to such Indemnified Party or (z) in the reasonable judgment of such Indemnified Party, based upon advice of its counsel, a conflict of interest may exist between such Indemnified Party and the Indemnifying Party with respect to such claims (in which case, if the Indemnified Party notifies the Indemnifying Party in writing that it elects to employ separate counsel at the expense of the Indemnifying Party, the Indemnifying Party shall not have the right to assume the defense of such claim on behalf of such Indemnified Party). In connection with any settlement negotiated by an Indemnifying Party, no Indemnifying Party shall, and no Indemnified Party shall be required by an Indemnifying Party to, (i) enter into any settlement which does not include as an unconditional term thereof the giving by the claimant or plaintiff to the Indemnified Party of a release from all liability in respect to such claim or litigation (ii) enter into any settlement that attributes by its terms liability to the Indemnified Party, or (iii) consent to the entry of any judgment that does not include as a term thereof a full dismissal of the litigation or proceeding with prejudice. In addition, without the consent of the Indemnified Party (which consent shall not be unreasonably withheld), no Indemnifying Party shall be permitted to consent to entry of any judgment or enter into any settlement which provides for any action on the part of the Indemnified Party other than the payment of money damages which are to be paid in full by the Indemnifying Party. If an Indemnifying Party fails or elects not to assume the defense of a claim pursuant to clause (y) above, or is not entitled to assume or continue the defense of such claim pursuant to clause (z) above, the Indemnified Party shall have the right without prejudice to its right of indemnification hereunder to, in its discretion exercised in good faith and upon advice of counsel, to contest, defend and litigate such claim and may settle such claim, either before or after the initiation of litigation, at such time and upon such terms as the Indemnified Party deems fair and reasonable; provided, however that at least 10 days prior to any settlement, written notice of its intention to settle is given to the Indemnifying Party. If requested by the Indemnifying Party, the Indemnified Party agrees (at no expense to the Indemnified Party) to cooperate with the Indemnifying Party and its counsel in contesting any claim that the Indemnifying Party elects to contest.

15. Notices. All notices and other communications hereunder must be in writing. Any notice or other communication hereunder shall be deemed duly delivered when received by the party for whom it is intended as evidenced by an executed receipt after it is sent by registered or certified mail, return receipt requested, postage prepaid, or via a reputable international overnight courier service, in each case to the intended recipient at the address therefor set forth on the signature page hereto. Any party hereto may give any notice or other communication hereunder by personal delivery or telecopy, but no such notice or other communication shall be deemed to have been duly given unless and until it actually is received by the party for whom it is intended. Any party may change the address to which notices and other communications hereunder are to be delivered by giving the other parties notice in the manner herein set forth.

Notices shall be addressed as follows:

    If to MHR:                MHR Fund Management LLC
                                      40 West 57th Street, 24th Floor

|                         |                                      |
|-------------------------|--------------------------------------|
|                         | New York, NY 10019                   |
|                         | Attention: Hal Goldstein             |
|                         | Fax: (212) 262-9356                  |
| If to Schoenfeld:       | Thracia LLC                          |
|                         | c/o P. Schoenfeld Asset Management LLC |
|                         | 1330 Avenue of the Americas          |
|                         | New York, NY 10019                   |
|                         | Attention: Frank Argenziano, CFO     |
|                         | Fax: (212) 649-9540                  |
| For MHR and Schonefeld With a copy to: | Stroock & Stroock & Lavan LLP 180 Maiden Lane New York, New York 10038-4982 Attention: Doron Lipshitz, Esq. Fax: (212) 806-6006 |
|                         | And                                  |
| If to the Debtors:      | Loral Space & Communications Ltd. 600 Third Avenue New York, New York 10016 Attention: Bernard Schwartz Fax: |
| With a copy to:         | Weil, Gotshal & Manges LLP 767 Fifth Avenue New York, New York 10153 Attention: Fax: |

16. <u>Successors and Assigns</u>. The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, and, except as contemplated by Section 7 hereof, no party may assign, delegate or otherwise transfer any of its rights or obligations hereunder without the consent of the other parties hereto. Nothing in this Agreement is intended to confer upon any person not a party to hereto any right, benefit or remedy of and nature whatsoever under or by reason of this Agreement, including, without limitation, to confer third party beneficiary rights.

17. <u>Amendments</u>. This Agreement represents the final agreement among the parties hereto with respect to the subject matter hereof and may not be contradicted by evidence of prior or contemporaneous agreements of the parties. There are no unwritten oral agreements between the parties relating to the subject matter hereof. This Agreement may not be amended or modified except by a written instrument signed by each of the Backstop Purchasers and Ltd.

18. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to its principles of conflicts of law.

13

19. <u>Effectiveness</u>.  This Agreement shall become effective and validate the legal obligations of the parties hereto upon the later of:

       (a)    the exchange of executed counterparts of this Agreement by you and MHR;

       (b)    the approval of this Agreement by the Bankruptcy Court; and

       (c)    any approvals required by the Bermuda joint provisional liquidators or the Bermuda court that has jurisdiction over the cases of Ltd. and Loral Licensing Ltd.

[Remainder of Page Intentionally Blank]

This Agreement may be executed in counterparts which, taken together, shall constitute one and the same instrument. If you are in agreement with the foregoing, please execute the enclosed copy of this Agreement as indicated and return it to the undersigned.

Very truly yours,

MHR CAPTIAL PARTNERS LP
MHR CAPITAL PARTNERS (100) LP

By: MHR Advisors LLC, general partner


By: _____
     Name:
     Title:


MHR INSTITUTIONAL PARTNERS II LP
MHR INSTITUTIONAL PARTNERS IIA LP

By: MHR Institutional Advisors II LLC, general partner


By: _____
     Name:
     Title:


THRACIA LLC

By:

By: _____
     Name:
     Title:

[Signature Page to Backstop Agreement]

ACCEPTED AND AGREED TO:

                            LORAL SPACE & COMMUNICATIONS LTD.

                            By: _____
                                Name:
                                Title:

LORAL SPACECOM CORPORATION
LORAL SPACE & COMMUNICATIONS CORPORATION
LORAL SATELLITE, INC.
SPACE SYSTEMS/LORAL, INC.
LORAL COMMUNICATIONS SERVICES, INC.
LORAL GROUND SERVICES, L.L.C.
LORAL ORION, INC.
LORAL CYBERSTAR GLOBAL SERVICES, INC.
LORAL CYBERSTAR GMBH
LORAL CYBERSTAR JAPAN, INC.
LORAL CYBERSTAR SERVICES, INC.
LORAL CYBERSTAR HOLDINGS, L.L.C.
LORAL CYBERSTAR INTERNATIONAL, INC.
LORAL ASIA PACIFIC SATELLITE (HK) LIMITED
SS/L EXPORT CORPORATION
CYBERSTAR, L.P.
CYBERSTAR, L.L.C.
LORAL SKYNET NETWORK SERVICES, INC.
LORAL LICENSING LTD.

BY: LORAL SPACE & COMMUNICATIONS LTD., as agent and attorney-in-fact for each of the foregoing entities

By: _____
     Name:
     Title:

[Signature Page to Backstop Agreement]

[Plan of Reorganization]