UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
                                    :
In re                               :       Chapter 11 Case Nos.
                                    :
LORAL SPACE                         :       LEAD CASE 03-41710 (RDD)
 & COMMUNICATIONS LTD., et al.,     :       03-41709 (RDD) through
                                    :       03-41728 (RDD)
         Debtors.                   :       (Jointly Administered)
                                    :
------------------------------------------------------x


# DEBTORS' MEMORANDUM OF LAW IN SUPPORT
## OF CONFIRMATION OF DEBTORS' FOURTH AMENDED JOINT PLAN
## OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE


WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

Attorneys for the Debtors
  as Debtors and Debtors in Possession

Dated: July 12, 2005

# TABLE OF CONTENTS

<div align="right">Page</div>

PRELIMINARY STATEMENT ........................................................................................... 1

FACTS ............................................................................................................................... 5

ARGUMENT ...................................................................................................................... 6

I.      THE BURDEN OF PROOF UNDER SECTION 1129(a)(1) OF THE
BANKRUPTCY CODE........................................................................................... 6

II.     THE PLAN OF REORGANIZATION COMPLIES WITH SECTIONS
1129(a)(1), 1122 AND 1123 OF THE BANKRUPTCY CODE...................................... 7

      A.      Compliance With Section 1122 ................................................................ 8

      B.      Compliance With Section 1123(a).......................................................... 12

      C.      Compliance With Section 1123(b).......................................................... 14

III.    THE DEBTORS HAVE COMPLIED WITH SECTION 1129(a)(2) OF THE
BANKRUPTCY CODE......................................................................................... 16

      A.      Compliance With Section 1125 .............................................................. 17

      B.      Compliance With Section 1126 .............................................................. 18

IV.    THE PLAN OF REORGANIZATION HAS BEEN PROPOSED IN GOOD
FAITH AND NOT BY ANY MEANS FORBIDDEN BY LAW .................................. 22

      A.      The Plan of Reorganization Was Proposed in Good Faith ................................. 22

V.      THE PLAN OF REORGANIZATION PROVIDES THAT PAYMENTS MADE
BY THE DEBTORS FOR SERVICES OR COSTS AND EXPENSES ARE
SUBJECT TO COURT APPROVAL........................................................................ 25

VI.    THE DEBTORS HAVE DISCLOSED ALL NECESSARY INFORMATION
REGARDING DIRECTORS, OFFICERS AND INSIDERS ........................................ 27

VII.   THE PLAN OF REORGANIZATION DOES NOT CONTAIN ANY RATE
CHANGES SUBJECT TO THE JURISDICTION OF ANY GOVERNMENTAL
REGULATORY COMMISSION ............................................................................. 29

VIII. THE PLAN OF REORGANIZATION IS IN THE BEST INTERESTS OF ALL
CREDITORS OF, AND EQUITY INTEREST HOLDERS IN, THE DEBTORS ......... 29

IX.    THE PLAN OF REORGANIZATION HAS BEEN ACCEPTED BY IMPAIRED
CLASSES AND, AS TO SUCH CLASSES, THE REQUIREMENTS OF
SECTION 1129(a)(8) HAVE BEEN SATISFIED ........................................................ 33

X.      THE PLAN OF REORGANIZATION PROVIDES FOR PAYMENT IN FULL
OF ALL ALLOWED PRIORITY CLAIMS ................................................................ 36

<div align="center">i</div>

XI.   AT LEAST ONE CLASS OF IMPAIRED CLAIMS HAS ACCEPTED THE PLAN OF REORGANIZATION ................................................................... 38

XII.  THE PLAN OF REORGANIZATION IS NOT LIKELY TO BE FOLLOWED BY LIQUIDATION OR THE NEED FOR FURTHER FINANCIAL REORGANIZATION ...................................................................................... 39

XIII. ALL STATUTORY FEES HAVE BEEN OR WILL BE PAID ...................................... 43

XIV. THE PLAN OF REORGANIZATION ADEQUATELY AND PROPERLY TREATS RETIREE BENEFITS ................................................................... 43

XV.  THE PLAN OF REORGANIZATION SATISFIES THE "CRAM DOWN" REQUIREMENTS WITH RESPECT TO ALL IMPAIRED REJECTING CLASSES BECAUSE IT DOES NOT DISCRIMINATE UNFAIRLY AND IS FAIR AND EQUITABLE WITH RESPECT TO SUCH CLASSES ............................... 44

    A.   The Plan of Reorganization Does Not Discriminate Unfairly ............................. 44

    B.   The Plan of Reorganization Is Fair and Equitable ............................................... 46

XVI. THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS IN THE PLAN OF REORGANIZATION SHOULD BE APPROVED ....................................... 48

    A.   The Releases of the Released Parties, the Exculpation and the Injunction ......... 48

    B.   Standards for Approving the Releases, Exculpation and Injunction ................... 51

    C.   The Releases, the Exculpation and the Injunction Are Reasonable and Should Be Approved ........................................................................................ 54

CONCLUSION ........................................................................................................... 56

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

In re 11,111, Inc., 117 B.R. 471 (Bankr. D. Minn. 1990)..................................................44

In re A.H. Robins Co., 880 F.2d 694 (4th Cir. 1988),
  cert. denied, 493 U.S. 939 (1989).......................................................................52

Abel v. Shugrue (In re Ionosphere Clubs Inc.),
  184 B.R. 648 (Bankr. S.D.N.Y. 1995)..................................................................53

In re Allegheny Int'l Inc., 118 B.R. 282 (Bankr. W.D. Pa. 1990)...................................52

In re Apex Oil Co., 118 B.R. 683 (Bankr. E.D. Mo. 1990)...........................................28

Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship,
  526 U.S. 434 (1999)........................................................................................30

In re Buttonwood Partners, Ltd., 111 B.R. 57 (Bankr. S.D.N.Y. 1990)....................44, 45

In re Cellular Info. Sys., 171 B.R. 926 (Bankr. S.D.N.Y. 1994).....................................51

In re Century Glove, 1993 WL 239489 (D. Del. Feb 10, 2003).....................................30

In re Continental Airlines, 203 F.3d 203 (3d Cir. 2000)................................................54

Corestates Bank, 202 B.R. 33 (Bankr. E.D. Pa. 1996)................................................30

In re Drexel Burnham Lambert Group, Inc.,
  138 B.R. 723 (Bankr. S.D.N.Y. 1992)..........................................................23, 25,
                                                                                                    39, 41,
                                                                                                    52

In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285 (2d Cir. 1992)..............53, 55

In re Elsinore Shore Assocs., 91 B.R. 238 (Bankr. D.N.J. 1988)............................26, 30

In re Friese, 103 B.R. 90 (Bankr. S.D.N.Y. 1989).......................................................14

In re Future Energy Corp., 83 B.R. 470 (Bankr. S.D. Ohio 1988)................................26

Greer II v. Gaston & Snow (In re Gaston & Snow),
  1996 WL 694421 (S.D.N.Y. December 4, 1996)...................................................52

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

In re Holywell Corp., 913 F.2d 873 (11th Cir. 1990) ..................................................... 11

Heartland Federal Savings & Loan Ass'n v. Briscoe Enter., Ltd. II (In re Briscoe Enter.,
    Ltd. II), 994 F.2d 1160 (5th Cir. 1993) ....................................................................... 6

Huddleston v. Nelson Bunker Hunt Trust Estate,
    117 B.R. 231 (Bankr. N.D. Tex. 1990) ..................................................................... 52

In re Jim Beck, Inc., 207 B.R. 1010 (Bankr. W.D. Va. 1997) ....................................... 14

In re Johns-Manville Corp., 68 B.R. 618 (Bankr. S.D.N.Y. 1986), aff'd in part, rev'd in
    part on other grounds, 78 B.R. 407 (S.D.N.Y. 1987), aff'd, Kane v. Johns-Manville
    Corp. 843 F.2d 636 (2d Cir. 1988) ......................................................................... 7, 16,
                                                                25, 39,
                                                                 44, 45,
                                                                 52

Kane v. Johns-Manville Corp., 843 F.2d 636 (2d Cir. 1988) ....................................... 22

In re Kent Terminal Corp., 166 B.R. 555 (Bankr. S.D.N.Y. 1994) ................................. 6

Kirk v. Texaco, Inc., 82 B.R. 678 (Bankr. S.D.N.Y. 1988) ......................................... 54

Koelbl v. Glessins (In re Koelbl), 751 F.2d 137 (2d Cir. 1984) ................................... 22

In re Labrum & Doak, LLP, 227 B.R. 372 (Bankr. E.D. Pa. 1998) .............................. 30

In re Leslie Fay Cos., 207 B.R. 764 (Bankr. S.D.N.Y. 1997) ................................... 22, 39
                                                                                 41

MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.),
    837 F.2d 89 (2d Cir. 1988), cert. denied, 488 U.S. 868 (1988) ............................... 53

Manati Sugar Co. v. Mock, 75 F.2d 284 (2d Cir. 1935) ............................................. 22

In re Master Mortgage Inv. Fund, Inc., 168 B.R. 930 (Bankr. W.D. Mo. 1994) ......... 54

NLRB v. Bildisco & Bildisco, 465 U.S. 513 (1984) ..................................................... 23

In re Ngan Gung Rest., 254 B.R. 566 (Bankr. S.D.N.Y. 2000) ................................... 23

In re One Times Square Assocs. Ltd. P'ship,
   159 B.R. 695 (Bankr. S.D.N.Y. 1993) .................................................................39

In re PWS Holding Corp., 303 F.3d 308 (3d Cir. 2002),
   cert. denied, 538 U.S. 924 (2003) ......................................................................52

In re Penn Traffic Co., No. 03-22945, 2005 Bankr. LEXIS 785
   (Bankr. S.D.N.Y. March 11, 2003)........................................................................6

Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.),
   761 F.2d 1374 (9th Cir. 1985) .............................................................................40

In re Prudential Energy Co., 58 B.R. 857 (Bankr. S.D.N.Y. 1986)........................40, 41

Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.),
   68 F.3d 26 (2d Cir. 1995)....................................................................................51

In re Resorts Int'l, 145 B.R. 412 (Bankr. D.N.J. 1990) ..............................................30

In re Rivera Echevarria, 129 B.R. 11 (Bankr. D.P.R. 1991).........................................45

In re Spiegel, Inc., 2005 WL 1278094 (Bankr. S.D.N.Y. 2005) ....................................6

In re Texaco Inc., 84 B.R. 893 (Bankr. S.D.N.Y. 1998),
   appeal dismissed, 92 B.R. 38 (Bankr. S.D.N.Y. 1988).....................................40, 41,
                                                                                            52, 53

In re Toy & Sports Warehouse, Inc., 37 B.R. 141 (Bankr. S.D.N.Y. 1984)............7, 16,
                                                                                            28

In re U.S. Truck Co., 47 B.R. 932 (Bankr. E.D. Mich. 1985),
   aff'd, 800 F.2d 581 (6th Cir. 1986) .................................................................39, 40

In re Union Meeting Partners, 165 B.R. 553 (Bankr. E.D. Pa. 1994)............................30

United States v. Reorganized CF&I Fabricators, Inc., 518 U.S. 213 (1996)..................30

In re WCI Cable, Inc., 282 B.R. 457 (Bankr. D. Or. 2002) ..........................................51

In re Woodmere Investors Ltd. P'ship, 178 B.R. 346 (Bankr. S.D.N.Y. 1995)..............39

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

In re WorldCom, Inc., 2003 Bankr. LEXIS 1401 (Bankr. S.D.N.Y. Oct. 31, 2003)................6, 22, 39, 51, 52

In re Zenith Elecs. Corp., 241 B.R. 92 (Bankr. D. Del. 1999)........................................................22

## FEDERAL STATUTES

11 U.S.C. § 507(a)(1).....................................................................................................43

11 U.S.C. § 510(b).....................................................................................................10, 47

11 U.S.C. § 524(e)........................................................................................................51

11 U.S.C. § 1122..........................................................................................................8

11 U.S.C. § 1123(a).....................................................................................................12

11 U.S.C. § 1123(a)(5)(C)............................................................................................54

11 U.S.C. § 1123(b)(1).................................................................................................14

11 U.S.C. § 1123(b)(2).................................................................................................15

11 U.S.C. § 1123(b)(3)(A)............................................................................................51

11 U.S.C. § 1126(a).....................................................................................................19

11 U.S.C. § 1126(c).....................................................................................................20

11 U.S.C. § 1126(d).....................................................................................................20

11 U.S.C. § 1126(f).....................................................................................................19

11 U.S.C. § 1126(g).....................................................................................................19

11 U.S.C. § 1129(a)(1)...................................................................................................7

11 U.S.C. § 1129(a)(2).................................................................................................16

11 U.S.C. § 1129(a)(3).................................................................................................22

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

11 U.S.C. § 1129(a)(4) .................................................................................................. 25

11 U.S.C. § 1129(a)(5) .................................................................................................. 27

11 U.S.C. § 1129(a)(6) .................................................................................................. 29

11 U.S.C. § 1129(a)(7)(A) ............................................................................................ 29

11 U.S.C. § 1129(a)(8) .................................................................................................. 34

11 U.S.C. § 1129(a)(9) .................................................................................................. 36

11 U.S.C. § 1129(a)(9)(C) ............................................................................................ 37

11 U.S.C. § 1129(a)(10) ................................................................................................ 38

11 U.S.C. § 1129(a)(11) ................................................................................................ 39

11 U.S.C. § 1129(a)(12) ................................................................................................ 43

11 U.S.C. § 1129(b) ...................................................................................................... 22

11 U.S.C. § 1129(b)(1) .................................................................................................. 44

11 U.S.C. § 1129(b)(2) .................................................................................................. 46

11 U.S.C. § 1141(d) ...................................................................................................... 51

## MISCELLANEOUS

H.R. Rep. No. 95-595 (1977) ..................................................................................... 7, 16

S. Rep. No. 95-989 (1978) ......................................................................................... 7, 16

7 Collier on Bankruptcy ¶ 1129 (15th rev. ed. 1996) ................................................... 41

5 Collier on Bankruptcy ¶ 1129 (15th rev. ed. 1993) ........................................... 7, 25, 26

-----------------------------------------------------------x
                         :

In re                            :        Chapter 11 Case Nos.
                                    :

LORAL SPACE                  :        LEAD CASE 03-41710 (RDD)
& COMMUNICATIONS LTD., et al.,  :        03-41709 (RDD) through
                                    :        03-41728 (RDD)
          Debtors.              :        (Jointly Administered)
                                    :
-----------------------------------------------------------x

## DEBTORS' MEMORANDUM OF LAW IN SUPPORT
## OF CONFIRMATION OF DEBTORS' FOURTH AMENDED JOINT PLAN
## OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

### PRELIMINARY STATEMENT

This Memorandum of Law (the "Memorandum") is submitted on behalf of Loral

Space & Communications Ltd. ("Loral Ltd.") and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors" and, together

with their non-debtor subsidiaries, "Loral"), in support of confirmation, pursuant to section 1129

of title 11 of the United States Code (the "Bankruptcy Code"), of the Debtors' Fourth Amended

Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated June 3, 2005 (the

"Plan of Reorganization").

As discussed in more detail below, the Plan of Reorganization is the culmination

of the two year long chapter 11 process, which has enabled the reorganization and rehabilitation

of these Debtors. The Plan of Reorganization was negotiated with the Official Committee of

Unsecured Creditors appointed in these chapter 11 cases (the "Creditors' Committee") and the ad

hoc committee of certain trade creditors of Space Systems/Loral, Inc. and Loral SpaceCom

Corporation (the "Ad Hoc Trade Creditors' Committee), and is fully supported by the Creditors'

Committee. The Plan of Reorganization, after extensive, good faith, arms'-length negotiations

among the Debtors and the economic parties in interest in the Debtors' chapter 11 cases, provides for the distribution of the value of the Debtors' estates to the holders of all Allowed Claims[1] in accordance with the priorities and provisions of the Bankruptcy Code. The Plan of Reorganization has been overwhelmingly accepted by the majority of the Classes of creditors entitled to vote thereon.

Notwithstanding the thousands of parties in interest in these Reorganization Cases, the Debtors have received only seven (7) objections to the proposed confirmation of the Plan (collectively, the "Objections"). One of the Objections is a one-page letter written to the Debtors' attorneys by individual stockholders who assert that the Plan of Reorganization is unfair because stockholders will receive no recovery thereunder. Unfortunately, stockholders are not entitled to a distribution in these cases under the provisions of the Bankruptcy Code. One of the Objections is interposed by Oracle Corporation ("Oracle"), a contract counterparty, and relates to a certain executory contract between certain of the Debtors and Oracle. Prior to the filing of the Objection by Oracle and contemporaneously herewith, the Debtors are working with Oracle to resolve its Objection and anticipate that this Objection will be resolved and/or withdrawn prior to the Confirmation Hearing. One of the Objections was submitted by certain Lockheed Martin Entities, which has been resolved. The Debtors will advise the Bankruptcy Court of the resolution at the Confirmation Hearing. One of the Objections was submitted by Tony Christ on behalf of the self-styled Loral Stockholders Protective Committee (the "LSPC") and is based upon, once again, various unsupported allegations and incorrect factual statements

---

[1] Capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan, the Disclosure Statement for Debtors' Fourth Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated June 3, 2005 (the "Disclosure Statement"), or the Plan Supplement to Debtors' Fourth Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated June 28, 2005 (the "Plan Supplement").

regarding the Debtors' businesses, including, in large part, objections to the Sale to Intelsat (as such terms are defined below) and the Disclosure Statement, which were both approved by this Court by final order not appealed by the LSPC. While the LSPC has also filed (i) an objection to the fees of certain professionals retained in the Debtors' Reorganization Cases and (ii) a motion for leave to prosecute certain alleged fraudulent conveyance claims on behalf of the Debtors' estates, such pleadings do not constitute objections to confirmation of the Plan of Reorganization. The Debtors have also received (i) Reservation of Rights of MHR Fund Management LLC in Connection with the Debtors' Fourth Amended Joint Plan of Reorganization Under Chapter 11 of The Bankruptcy Code (the "MHR Reservation"), which is not an objection to confirmation and (ii) a pleading from Mr. Phil Ivaldy entitled "Report of Findings from Loral Ltd. Contracts for Satellites and Services in Support of the LSPCs [sic] Opposition to Debtors' Fourth Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code", seeking an extension of the confirmation discovery schedule (the "Ivaldy Pleading"). As discussed more fully by the Debtors in their Omnibus Response (as defined below), the relief requested in the Ivaldy Pleading is completely inappropriate and unwarranted and the MHR Reservation seeks no relief from this Court.

Thus, only two substantive Objections to confirmation of the Plan of Reorganization have been interposed: (i) the Objection of the plaintiffs (the "ERISA Plaintiffs") in the class action lawsuit entitled *In re Loral Space ERISA Litigation*, No. 03-CV-9729 (CTS) (the "ERISA Litigation") and (ii) the Objection of the official committee of equity security holders appointed in the Debtors' Reorganization Cases (the "Equity Committee"). The ERISA Plaintiffs object to confirmation of the Plan of Reorganization on the basis that the Plan of Reorganization allegedly unfairly discriminates against them, as it treats the ERISA Plaintiffs'

claim in respect of the ERISA Litigation (the "ERISA Litigation Claim") as a Securities Litigation Claim subject to subordination under section 510(b) of the Bankruptcy Code. The ERISA Plaintiffs attempt to convince this Court, based upon a piecemeal assembly of incorrect legal propositions, that the ERISA Litigation Claim is not properly subject to subordination under section 510(b). The statute and the case law are clear, however, that because the ERISA Plaintiffs seek to recover damages for losses stemming from the purchase of certain Loral Ltd. stock, the ERISA Litigation Claim is, in fact, subject to subordination under section 510(b) of the Bankruptcy Code.

The Equity Committee's Objection asserts various legally flawed and factually incorrect arguments in opposition to the Plan of Reorganization including, without limitation, (i) that the Plan of Reorganization violates the good faith requirement of section 1129(a)(3) of the Bankruptcy Code because of newly conjured allegations of collusion between the Debtors and members of the Creditors' Committee, (ii) that the Plan of Reorganization is premised on an improper, non-market tested and artificially low valuation of the Debtors' businesses, and is consequently in violation of the "cram down" requirements of section 1129 of the Bankruptcy Code and (iii) that the Plan of Reorganization cannot be confirmed because certain common stockholders – namely, the Debtors' management – receive Options pursuant to the New Management Stock Plan but holders of equity interests receive no distributions under the Plan of Reorganization. As discussed herein and as demonstrated more fully in the Omnibus Response (as defined below), the Equity Committee's Objection is both factually and legally wrong. Similarly, the Equity Committee's Motion for Leave to Prosecute is rife with incorrect legal and factual assertions and, in reality, represents nothing more than the Equity Committee's latest

4

(and hopefully last) effort to disrupt and derail the Reorganization Cases, to the detriment of the creditors with an economic stake in these Debtors.

For ease of presentation, in addition to this Memorandum, in further support of confirmation of the Plan of Reorganization and in opposition to the Objections, the Debtors have filed contemporaneously herewith:

- Omnibus Response to Objections to Confirmation of the Debtors' Fourth Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Omnibus Response"); and

- Response of the Debtors to Motion of the Official Committee of Equity Security Holders for Leave to Prosecute (together with the Omnibus Response, the "Responses").

As demonstrated herein and in the Responses, and as will be further demonstrated at the Confirmation Hearing, the Plan of Reorganization satisfies all applicable requirements of the Bankruptcy Code, including sections 1122, 1123, 1125, 1126 and 1129. Therefore, the Objections should be overruled and the Plan of Reorganization confirmed.

## FACTS

The pertinent and salient facts are set forth in the Disclosure Statement, the Plan of Reorganization and the Responses. Such facts are incorporated herein as if set forth fully and at length. Salient facts, as necessary, will be referred to in connection with the discussion of applicable legal principles.

## ARGUMENT

## I.

## THE BURDEN OF PROOF UNDER
## SECTION 1129(A)(1) OF THE BANKRUPTCY CODE

To achieve confirmation of the Plan of Reorganization, the Debtors must

demonstrate by a preponderance of the evidence that the Plan of Reorganization satisfies the

provisions of section 1129(a) of the Bankruptcy Code. As set forth by the United States Court of

Appeals for the Fifth Circuit in <u>Heartland Federal Savings & Loan Association v. Briscoe Enter.,</u>

<u>Ltd. II (In re Briscoe Enter., Ltd. II)</u>:

> The combination of legislative silence, Supreme Court holdings, and the structure
> of the [Bankruptcy] Code leads this Court to conclude that preponderance of the
> evidence is the debtor's appropriate standard of proof under both § 1129(a) and in
> a cramdown.

994 F.2d 1160, 1165 (5th Cir. 1993); <u>see also</u> <u>In re Spiegel, Inc.</u>, 2005 WL 1278094, *4 (Bankr.

S.D.N.Y. 2005) ("The Debtors, as proponents of the Plan, have met their burden of proving the

elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the

evidence."); <u>In re WorldCom, Inc.</u>, Case No. 02-13533 (AJG), 2003 Bankr. LEXIS 1401, *136

(Bankr. S.D.N.Y. October 31, 2003) ("A debtor, as the proponent of the Plan, bears the burden of

proof under *section 1129 of the Bankruptcy Code*. A debtor must meet this burden by a

preponderance of the evidence.") (emphasis supplied); <u>In re Penn Traffic Co.</u>, No. 03-22945,

2005 Bankr. LEXIS 785, at *10 (Bankr. S.D.N.Y. March 11, 2005) ("The Debtors, as proponents

of the Plan, have met their burden of proving the elements of sections 1129(a) and (b) of the

Bankruptcy Code ... by a preponderance of the evidence, which is the applicable evidentiary

standard in this Court for confirmation of the Plan."); <u>In re Kent Terminal Corp.</u>, 166 B.R. 555,

561 (Bankr. S.D.N.Y. 1994) ("Notwithstanding this time-sensitive evidentiary burden, the final

burden of proof at both the relief from stay and confirmation hearings remains a preponderance

of the evidence."); 5 Collier on Bankruptcy ¶ 1129.02[4], at 1129-22 (15th rev. ed. 1993) ("[T]he proponent bears the burden of both introduction of evidence and persuasion that each subsection of section 1129(a) has been satisfied."). Through filings with the Bankruptcy Court and testimonial evidence which may be adduced at the Confirmation Hearing, the Debtors will demonstrate, by a preponderance of the evidence, that all of the subsections of section 1129 of the Bankruptcy Code have been satisfied with respect to the Plan of Reorganization.

## II.

### THE PLAN OF REORGANIZATION COMPLIES WITH SECTIONS 1129(A)(1), 1122 AND 1123 OF THE BANKRUPTCY CODE

Pursuant to section 1129(a)(1) of the Bankruptcy Code, a plan must "compl[y] with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(1). The legislative history of section 1129(a)(1) explains that this provision encompasses the requirements of sections 1122 and 1123 governing classification of claims and contents of a plan, respectively. H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978); see also In re Johns-Manville Corp., 68 B.R. 618, 629 (Bankr. S.D.N.Y. 1986), aff'd in part, rev'd in part on other grounds, 78 B.R. 407 (S.D.N.Y. 1987), aff'd, Kane v. Johns-Manville Corp. 843 F.2d 636 (2d Cir. 1988); In re Toy & Sports Warehouse, Inc., 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984). As demonstrated below and in the Responses, the Plan of Reorganization complies fully with the requirements of sections 1122 and 1123, as well as other applicable provisions of the Bankruptcy Code.

## A.    Compliance With Section 1122

Section 1122 of the Bankruptcy Code provides:

> (a)    Except as provided in subsection (b) of this section, a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

11 U.S.C. § 1122. Under this section, a plan may provide for multiple classes of claims or interests as long as each claim or interest within a class is substantially similar to other claims or interests in that class.

The Plan of Reorganization provides for the separate classification of Claims against and Equity Interests in four substantively consolidated groups of Debtors—the Ltd. Debtors, the Orion Debtors, the SpaceCom Debtors and the SS/L Debtors—based upon differences in the legal nature and/or priority of such Claims and Equity Interests. Specifically, the Plan of Reorganization designates a total of twenty-two classes, comprised of seventeen classes of Claims and five classes of Equity Interests. Administrative Expense Claims, Compensation and Reimbursement Claims, Indenture Trustee Fees and Priority Tax Claims are not classified and are separately treated, as discussed in more detail in section X below.

### 1.    Classification of Claims

#### a.    Other Priority Claims

Other Priority Claims are Claims, other than Administrative Expense Claims or Priority Tax Claims, that are entitled to priority in payment under section 507 of the Bankruptcy Code. Ltd. Class 1, Orion Class 1, SpaceCom Class 1 and SS/L Class 1 provide for the separate classification of Other Priority Claims against the Ltd. Debtors, the Orion Debtors, the SpaceCom Debtors and the SS/L Debtors, respectively.

### b.    Secured Tax Claims

Secured Tax Claims are Secured Claims which, absent their secured status, would be Priority Tax Claims. Ltd. Class 2, Orion Class 2, SpaceCom Class 2 and SS/L Class 2 provide for the separate classification of Secured Tax Claims against the Ltd. Debtors, the Orion Debtors, the SpaceCom Debtors and the SS/L Debtors, respectively.

### c.    Secured Claims

Secured Claims are Claims to the extent reflected in the Debtors' Schedules or a proof of claim as Secured Claims, which are secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff. Ltd. Class 3, Orion Class 3, SpaceCom Class 3 and SS/L Class 3 provide for the separate classification of Secured Claims against the Ltd. Debtors, the Orion Debtors, the SpaceCom Debtors and the SS/L Debtors, respectively.

### d.    General Unsecured Claims

Ltd. Class 4, Orion Class 4, SpaceCom Class 4 and SS/L Class 4 provide for the classification of general unsecured Claims against the Ltd. Debtors, the Orion Debtors, the SpaceCom Debtors and the SS/L Debtors, respectively.

Ltd. General Unsecured Claims include, without limitation, (i) Claims of Ltd. trade vendors, (ii) all Claims against Ltd. arising under that certain Guaranty, dated as of December 21, 2001, between Ltd. and Bankers Trust Company, pursuant to which Ltd. guaranteed payment of the 10% senior notes issued by Orion due 2006 and (iii) all Claims arising under the 9½% senior notes issued by Ltd. due 2006.

Orion General Unsecured Claims include, without limitation, (i) Claims of Orion trade vendors, (ii) all Claims arising under the Orion 10% Notes other than the Ltd. Guaranty Claims and (iii) all Claims arising under the 11¼% senior notes issued by Orion due 2006 and the 12½% discount notes issued by Orion due 2007.

SpaceCom General Unsecured Claims and SS/L General Unsecured Claims include, without limitation, Claims of SpaceCom and SS/L trade vendors.

### e. Securities Litigation Claims

Securities Litigation Claims, which are classified separately in Ltd. Class 7, consist of all Claims against any Debtor, whether or not the subject of an existing lawsuit, arising from the rescission of a purchase or sale of shares or notes of any of the Debtors or any affiliate of any Debtor, for damages arising from the purchase or sale of any such security, or for reimbursement, contribution, or indemnification allowed under section 502 of the Bankruptcy Code on account of such Claim. Securities Litigation Claims include, without limitation, any and all Claims against any Debtor asserted in the actions entitled (i) *In re Globalstar Securities Litigation*, Civ. A. No. 01-1748 (SHS) and (ii) *In re Loral Space & Communications Ltd. Securities Litigation*, Civ. A. No. 01-4388 (JGK). Pursuant to the Plan of Reorganization, the treatment of Securities Litigation Claims under the Plan of Reorganization is in accordance with and gives effect to the provisions of section 510(b) of the Bankruptcy Code, which provides that a Claim arising for damages from the purchase or sale of a security of the debtor or an affiliate of the debtor shall be subordinated to all Claims or Interests that are senior to or equal to the Claim or Interest represented by such security, except that if such security is common stock, such Claim has the same priority as common stock. See 11 U.S.C. § 510(b).

## 2. Classification of Equity Interests

As noted above, the Plan of Reorganization provides for the separate classification of Equity Interests in five separate Classes.

### a. Ltd. Preferred Stock Interests

Ltd. Class 5 provides for the separate classification of Ltd. Preferred Stock Interests, which consist of any interest in the (i) Series C Preferred Stock or (ii) Series D Preferred Stock of Loral Ltd.

### b. Equity Interests Other Than Ltd. Preferred Stock Interests

Equity Interests consist of all common stock, warrants, options, rights to receive options and other equity issued by a particular Debtor. Ltd. Class 6, Orion Class 5, SpaceCom Class 5 and SS/L Class 5 provide for the separate classification of Ltd. Equity Interests, Orion Equity Interests, SpaceCom Equity Interests and SS/L Equity Interests, respectively.

## 3. The Debtors' Classification of Claims and Equity Interests Complies with Section 1122 of the Bankruptcy Code

In light of the foregoing classification scheme, it is indisputable that each of the Claims or Equity Interests in each particular Class is substantially similar to the other Claims or Equity Interests in such Class. Accordingly, the Debtors' classification of Claims and Equity Interests does not prejudice the rights of holders of such Claims and Equity Interests. See In re Holywell Corp., 913 F.2d 873, 880 (11th Cir. 1990) (plan proponent allowed considerable discretion to classify claims and interests according to facts and circumstances of case so long as classification scheme does not violate basic priority rights or manipulate voting). Moreover, no objection has been interposed to the classification scheme provided for in the Plan of Reorganization. The classification of Claims and Equity Interests in the Plan complies with section 1122 of the Bankruptcy Code.

**B.**     **Compliance With Section 1123(a)**

Section 1123(a) of the Bankruptcy Code sets forth seven requirements with which every chapter 11 plan must comply. See 11 U.S.C. § 1123(a). The Plan of Reorganization fully complies with each such requirement. Section 3 of the Plan of Reorganization designates Classes of Claims and Classes of Equity Interests as required by section 1123(a)(1) of the Bankruptcy Code. Section 3 of the Plan of Reorganization also specifies whether each Class of Claims and Equity Interests is impaired under the Plan of Reorganization, as required by section 1123(a)(2) of the Bankruptcy Code. Section 4 of the Plan of Reorganization specifies the treatment of each Class of Claims and Equity Interests, as required by section 1123(a)(3) of the Bankruptcy Code. The treatment of each Claim or Equity Interest in each particular Class is the same as the treatment of each other Claim or Equity Interest in such Class as required by section 1123(a)(4) of the Bankruptcy Code.

Section 5 of the Plan of Reorganization, together with the documents and agreements included in the Plan Supplement, provides the means for implementation of the Plan of Reorganization as required by section 1123(a)(5) of the Bankruptcy Code. Specifically, Section 5 of the Plan of Reorganization provides for, among other things, (i) the substantive consolidation of the Ltd. Debtors, the Orion Debtors, the SpaceCom Debtors and the SS/L Debtors, respectively, for all purposes related to the Plan of Reorganization including, without limitation, for purposes of voting, confirmation and distribution, which substantive consolidation is to become effective upon entry of the Confirmation Order, (ii) the effectuation by the Debtors of certain Restructuring Transactions integral to the Debtors' reorganization, (iii) the cancellation and surrender of existing securities of certain Debtors and certain agreements to which certain Debtors are party and (iv) the exemption, pursuant to section 1145 of the Bankruptcy Code and

applicable nonbankruptcy law, of securities to be issued by certain Debtors pursuant to the Plan of Reorganization.

In addition, as noted above, the Plan Supplement includes certain documents and agreements necessary to consummate the terms of the Plan of Reorganization including, without limitation, (i) the form of New Skynet Notes to be offered for purchase, subject to the terms of the Plan of Reorganization, to holders of Orion General Unsecured Claims in connection with the Rights Offering contemplated under the Plan of Reorganization, (ii) the Registration Rights Agreement in connection with the issuance of New Loral Common Stock, New Skynet Preferred Stock and New Skynet Notes as contemplated under the Plan of Reorganization, (iii) revised certificates of incorporation and bylaws of the Reorganized Debtors, as appropriate, (iv) Schedule 8.1 to the Plan of Reorganization, which sets forth the executory contracts and unexpired leases to be assumed by the Debtors in connection with the Plan of Reorganization, (v) a list of those subsidiaries of the Debtors that will be merged or dissolved and assets that will be transferred pursuant to the Plan of Reorganization, (vi) the New Management Stock Plan contemplated under the Plan of Reorganization and (vii) forms of agreements in respect of the employment of certain management by the Reorganized Debtors including.

Section 10.3 of the Plan of Reorganization provides for the prohibition of the issuance of nonvoting equity securities in the New Loral Certificate of Incorporation, the New Skynet Certificate of Incorporation and the Reorganized Subsidiary Debtors' Certificates of Incorporation, ensuring compliance with section 1123(a)(6) of the Bankruptcy Code. Lastly, Section 10.2 of the Plan of Reorganization contains provisions with respect to the manner of selection of officers and directors of New Loral and the Reorganized Debtors that are consistent

with the interests of creditors, equity security holders and public policy in accordance with section 1123(a)(7) of the Bankruptcy Code.

## C.    Compliance With Section 1123(b)

Section 1123(b) of the Bankruptcy Code sets forth the permissive provisions that may be incorporated into a chapter 11 plan. Section 1123(b)(1) provides that a plan may "impair or leave unimpaired any class of claims, secured or unsecured, or of interests." 11 U.S.C. § 1123(b)(1).

The Plan of Reorganization is consistent with section 1123(b)(1) of the Bankruptcy Code. Pursuant to Section 3 of the Plan of Reorganization, Claims and Equity Interests classified in the following sixteen Classes are unimpaired:[2]

- Ltd. Class 1 (Other Priority Claims against the Ltd. Debtors);

- Ltd. Class 2 (Secured Tax Claims against the Ltd. Debtors);

- Ltd. Class 3 (Secured Claims against the Ltd. Debtors);

- Orion Class 1 (Other Priority Claims against the Orion Debtors);

- Orion Class 2 (Secured Tax Claims against the Orion Debtors);

---

[2] The Debtors have received no votes in respect of Ltd. Class 2 (Secured Tax Claims against the Ltd. Debtors), Orion Class 2 (Secured Tax Claims against the Orion Debtors) and SS/L Class 2 (Secured Tax Claims against the SS/L Debtors). Case law in the Southern District of New York provides that, in the event a class of creditors does not vote on a plan of reorganization, such failure to vote is considered a rejection of the plan by such class. See In re Friese, 103 B.R. 90, 91-92 (Bankr. S.D.N.Y. 1989) ("[T]he court cannot deem an impaired class to have accepted a plan if no creditors in that class have voted."); but see In re Jim Beck, Inc., 207 B.R. 1010 (Bankr. W.D. Va. 1997) (in the event a class of creditors does not vote on a plan of reorganization, such class is deemed to have accepted the plan of reorganization.) Accordingly, the Debtors have determined, in consultation with the Creditors' Committee and pursuant to Sections 4.2, 4.9 and 4.19 of the Plan of Reorganization, to provide for the payment in full, plus interest, of any Allowed Claims in Ltd. Class 2 (Secured Tax Claims against the Ltd. Debtors), Orion Class 2 (Secured Tax Claims against the Orion Debtors) and SS/L Class 2 (Secured Tax Claims against the SS/L Debtors). Holders of Allowed Claims in Ltd. Class 2 (Secured Tax Claims against the Ltd. Debtors), Orion Class 2 (Secured Tax Claims against the Orion Debtors) and SS/L Class 2 (Secured Tax Claims against the SS/L Debtors) are now unimpaired.

- Orion Class 3 (Secured Claims against the Orion Debtors);

- Orion Class 5 (Orion Equity Interests);

- SpaceCom Class 1 (Other Priority Claims against the SpaceCom Debtors);

- SpaceCom Class 3 (Secured Claims against the SpaceCom Debtors);

- SpaceCom Class 4 (SpaceCom General Unsecured Claims);

- SpaceCom Class 5 (SpaceCom Equity Interests);

- SS/L Class 1 (Other Priority Claims against the SS/L Debtors);

- SS/L Class 2 (Secured Tax Claims against the SS/L Debtors);

- SS/L Class 3 (Secured Claims against the SS/L Debtors);

- SS/L Class 4 (SS/L General Unsecured Claims); and

- SS/L Class 5 (SS/L Equity Interests).

Also pursuant to Section 3 of the Plan of Reorganization, the Claims and Interests classified in the following six Classes are impaired:

- Ltd. Class 4 (Ltd. General Unsecured Claims);

- Ltd. Class 5 (Ltd. Preferred Stock Interests);

- Ltd. Class 6 (Ltd. Equity Interests);

- Ltd. Class 7 (Securities Litigation Claims);

- Orion Class 4 (Orion General Unsecured Claims); and

- SpaceCom Class 2 (Secured Tax Claims against the SpaceCom Debtors).

Pursuant to section 1123(b)(2) of the Bankruptcy Code, the Plan of Reorganization may, "subject to section 365 of [the Bankruptcy Code], provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section." 11 U.S.C. § 1123(b)(2). Section 8 of the Plan of Reorganization provides for the assumption, rejection or assumption and assignment of the

executory contracts and unexpired leases of the Debtors not previously assumed or rejected (or the subject of a pending motion to assume or reject such executory contract or unexpired lease) under section 365 of the Bankruptcy Code, as contemplated by section 1123(b)(2) of the Bankruptcy Code. Schedule 8.1 to the Plan of Reorganization, filed as part of the Plan Supplement, lists the executory contracts and unexpired leases to be assumed by the Debtors in connection with the Plan.

Based upon the foregoing, the Plan of Reorganization fully complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code and, thus, satisfies the requirements of section 1129(a)(1) of the Bankruptcy Code.

## III.

### THE DEBTORS HAVE COMPLIED WITH
### SECTION 1129(A)(2) OF THE BANKRUPTCY CODE

Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponent "compl[y] with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(2). The legislative history to section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code. See H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); see also Johns-Manville, 68 B.R. at 630; Toy & Sports Warehouse, 37 B.R. at 149. The Debtors have complied with the applicable provisions of the Bankruptcy Code, including the provisions of sections 1125 and 1126 regarding disclosure and solicitation with respect to the Plan of Reorganization.

## A.    Compliance With Section 1125

Section 1125 of the Bankruptcy Code provides in pertinent part:

(b)    An acceptance or rejection of a plan may not be solicited after the commencement of the case under [the Bankruptcy Code] from a holder of a claim or interest with respect to such claim or interest unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary or the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. . . .

(c)    The same disclosure statement shall be transmitted to each holder of a claim or interest of a particular class, but there may be transmitted different disclosure statements, differing in amount, detail, or kind of information, as between classes.

By Order, dated June 3, 2005 (the "Disclosure Statement Order"), after notice and a hearing, the Court approved the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code as containing "adequate information" of a kind and in sufficient detail to enable hypothetical, reasonable investors typical of the Debtors' creditors to make an informed judgment as to whether to accept or reject the Plan of Reorganization.

Accordingly, on June 9, 2005, the Debtors commenced their solicitation of votes to accept or reject the Plan of Reorganization. On June 16, 2005, the Debtors' Court-approved voting and tabulation agent, Financial Balloting Group LLC ("FBG"), filed the Affidavit of Service of Jane Sullivan of Financial Balloting Group LLC, sworn to on June 15, 2005 [Docket No. 2105] (the "Solicitation Affidavit"), regarding the manner in which votes were solicited in respect of the Plan. Specifically, the Solicitation Affidavit states that (i) the Disclosure Statement (which includes as Exhibit A thereto as copy of the Plan of Reorganization), together with the additional solicitation materials approved by the Court in the Disclosure Statement Order, were transmitted to each creditor that was entitled to vote to accept or reject the Plan of Reorganization and (ii) certain non-voting materials approved by the Court were provided to

holders of Claims and Equity Interests that were not entitled to vote to accept or reject the Plan of Reorganization, in compliance with the Disclosure Statement Order. The Debtors did not solicit the vote of any holder of a Claim or Equity Interest as to the acceptance or rejection of the Plan of Reorganization prior to the Court-approved dissemination of the Disclosure Statement.

The deadline for voting to accept or reject the Plan of Reorganization was July 8, 2005, and, on July 11, 2005, FBG filed its certification regarding the methodology applied to the tabulation and results of the voting with respect to Plan of Reorganization (the "Voting Certification") [Docket No. 2175]. The results of the vote in respect of the Plan of Reorganization, as evidenced by the Voting Certification, are discussed in more detail in section IX below.

## B.    Compliance With Section 1126

Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of a plan of reorganization. Under section 1126, only holders of allowed claims and allowed equity interests in impaired classes of claims or equity interests that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject such plan. As set forth in section 1126:

> (a)    The holder of a claim or interest allowed under section 502 of [the Bankruptcy Code] may accept or reject a plan. . . .
>
> (f)    Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.

(g)     Notwithstanding any other provision of this section, a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests.

11 U.S.C. §§ 1126(a), (f) and (g).

As set forth in the Solicitation Affidavit, in accordance with section 1126 of the Bankruptcy Code, the Debtors solicited votes with respect to the Plan of Reorganization from the holders of all Allowed Claims in each Class of impaired Claims that are to receive distributions under the Plan of Reorganization. Certain Classes of Claims and Equity Interests are not entitled to vote on the Plan of Reorganization. Specifically, Ltd. Class 1 (Other Priority Claims against the Ltd. Debtors), Ltd. Class 2 (Secured Tax Claims against the Ltd. Debtors),[3] Ltd. Class 3 (Secured Claim against the Ltd. Debtors), Orion Class 1 (Other Priority Claims against the Orion Debtors), Orion Class 2 (Secured Tax Claims against the Orion Debtors), Orion Class 3 (Secured Claims against the Orion Debtors), Orion Class 5 (Orion Equity Interests), SpaceCom Class 1 (Other Priority Claims against the SpaceCom Debtors), SpaceCom Class 3 (Secured Claims against the SpaceCom Debtors), SpaceCom Class 4 (SpaceCom General Unsecured Claims), SpaceCom Class 5 (SpaceCom Equity Interests), SS/L Class 1 (Other Priority Claims against the SS/L Debtors), SS/L Class 2 (Secured Tax Claims against the SS/L Debtors), SS/L Class 3 (Secured Claims against the SS/L Debtors), SS/L Class 4 (SS/L General Unsecured Claims) and SS/L Class 5 (SS/L Equity Interests) are unimpaired. As a result, pursuant to section 1126(f) of the Bankruptcy Code, holders of Claims and Equity Interests in those Classes are conclusively presumed to have accepted the Plan of Reorganization. Ltd. Class 5 (Ltd. Preferred Stock Interests), Ltd. Class 6 (Ltd. Equity Interests) and Ltd. Class 7 (Securities Litigation Claims) will

---

[3] See footnote 2, supra.

not receive any distributions under the Plan of Reorganization. As a result, pursuant to section 1126(g) of the Bankruptcy Code, holders of Claims and Equity Interests in such Classes are conclusively presumed to have rejected the Plan of Reorganization.

Ltd. Class 4 (Ltd. General Unsecured Claims), Orion Class 4 (Orion General Unsecured Claims) and SpaceCom Class 2 (Secured Tax Claims against the SpaceCom Debtors) are impaired and, pursuant to the Plan of Reorganization, are to receive certain distributions thereunder. Pursuant to section 1126(a) of the Bankruptcy Code, holders of Allowed Claims in Ltd. Class 4 (Ltd. General Unsecured Claims), Orion Class 4 (Orion General Unsecured Claims) and SpaceCom Class 2 (Secured Tax Claims against the SpaceCom Debtors) are entitled to vote to accept or reject the Plan of Reorganization.

As to impaired classes entitled to vote to accept or reject a plan of reorganization, sections 1126(c) and 1126(d) of the Bankruptcy Code specify the requirements for acceptance of a plan by classes of claims and classes of equity interests, respectively:

(c)     A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected the plan.

(d)     A class of interests has accepted the plan if such plan has been accepted by holders of such interests, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount of the allowed interests of such class held by holders of such interests, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. §§ 1126(c) and (d).

As evidenced by the Voting Certification, other than with respect to Ltd. Class 2 (Secured Tax Claims against the Ltd. Debtors), Orion Class 2 (Secured Tax Claims against the Orion Debtors) and SS/L Class 2 (Secured Tax Claims against the SS/L Debtors), in which

Classes the creditors were entitled to vote but did not do so, the Plan of Reorganization has been accepted by creditors holding in excess of two-thirds in amount and one-half in number of the Allowed Claims voted in each of the Classes entitled to vote on the Plan of Reorganization. Specifically, as provided in the Voting Certification:

- 0.00% of the creditors in Ltd. Class 2 (Secured Tax Claims against the Ltd. Debtors) voted on the Plan of Reorganization;

- 94.83% of the creditors in Ltd. Class 4 (Ltd. General Unsecured Claims) that voted on the Plan of Reorganization voted to accept the Plan of Reorganization. Creditors in Ltd. Class 4 that voted to accept the Plan of Reorganization hold 99.02% of the total amount of Allowed Claims held by creditors in Ltd. Class 4 that voted on the Plan of Reorganization;

- 0.00% of the creditors in Orion Class 2 (Secured Tax Claims against the Ltd. Debtors) voted on the Plan of Reorganization;

- 96.40% of the creditors in Orion Class 4 (Orion General Unsecured Claims) that voted on the Plan of Reorganization voted to accept the Plan of Reorganization. Creditors in Orion Class 4 that voted to accept the Plan of Reorganization hold 97.25% of the total amount of Allowed Claims held by creditors in Orion Class 4 that voted on the Plan of Reorganization; and

- 100% of the creditors in SpaceCom Class 2 (Secured Tax Claims against the SpaceCom Debtors) that voted on the Plan of Reorganization voted to accept the Plan of Reorganization. Creditors in SpaceCom Class 2 that voted to accept the Plan of Reorganization hold 100% of the total amount of Allowed Claims held by creditors in Orion Class 4 that voted on the Plan of Reorganization.

In total, approximately 96% in number and approximately 98% in dollar amount of all Allowed Claims that voted on the Plan of Reorganization voted to accept the Plan of Reorganization.

As set forth above, the holders of Claims and Equity Interests in Ltd. Class 5 (Ltd. Preferred Stock Interests), Ltd. Class 6 (Ltd. Equity Interest) and Ltd. Class 7 (Securities Litigation Claims) will receive no recoveries under, and thus are deemed to have rejected, the Plan of Reorganization. In accordance with Section 6.1 of the Plan of Reorganization, the Debtors did not solicit acceptances from the holders of Claims or Equity Interests in such

Classes. Nevertheless, as set forth below, pursuant to section 1129(b) of the Bankruptcy Code, the Plan of Reorganization may be confirmed over the deemed rejection of Ltd. Class 5, Ltd. Class 6 and Ltd. Class 7, because the Plan of Reorganization does not discriminate unfairly and is fair and equitable with respect to such Classes. See 11 U.S.C. § 1129(b).

Based upon the foregoing, the Debtors submit that the requirements of section 1129(a)(2) of the Bankruptcy Code have been satisfied.

## IV.

### THE PLAN OF REORGANIZATION HAS BEEN PROPOSED IN GOOD FAITH AND NOT BY ANY MEANS FORBIDDEN BY LAW

### A.     The Plan of Reorganization Was Proposed in Good Faith

Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The Second Circuit has defined the good faith standard as requiring a showing that "the plan was proposed with 'honesty and good intentions'." Kane v. Johns-Manville Corp., 843 F.2d 636, 649 (2d Cir. 1988) (citing Koelbl v. Glessins (In re Koelbl), 751 F.2d 137, 139 (2d Cir. 1984) (quoting Manati Sugar Co. v. Mock, 75 F.2d 284, 285 (2d Cir. 1935)). In the context of a chapter 11 plan, courts have held that "a plan is proposed in good faith if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the Code." In re WorldCom, Inc., 2003 Bankr. LEXIS 1401 at *151-152; see also In re Leslie Fay Cos., 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997); In re Zenith Elecs. Corp., 241 B.R. 92, 107 (Bankr. D. Del. 1999). "The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the establishment of a chapter 11 plan." Leslie Fay, 207 B.R. at 781 (citations omitted).

The primary goal of chapter 11 is to promote the rehabilitation of the debtor. Congress has recognized that the continuing operation of a debtor's business as a viable entity benefits the national economy through the preservation of jobs and continued production of goods and services. The Supreme Court similarly has recognized that "[t]he fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources." NLRB v. Bildisco & Bildisco, 465 U.S. 513, 528 (1984); see also In re Drexel Burnham Lambert Group, Inc., 138 B.R. 723, 760 (Bankr. S.D.N.Y. 1992) (quoting Bildisco). In addition, courts have stressed the importance of payment of creditors in chapter 11 cases. See In re Ngan Gung Rest., 254 B.R. 566, 571 (Bankr. S.D.N.Y. 2000).

The Plan of Reorganization accomplishes this rehabilitative goal by restructuring the debt obligations of the Debtors and providing the means through which the Debtors may continue to operate as viable enterprises. The Plan of Reorganization promotes such rehabilitation while providing for (i) the payment in full, in Cash, of a significant portion of the Debtors' unsecured debt obligations and (ii) the partial satisfaction of other unsecured Claims by way of non-Cash alternatives. Specifically, pursuant to the Plan of Reorganization, holders of Allowed SpaceCom General Unsecured Claims and Allowed SS/L General Unsecured Claims will be paid in full, in Cash, including interest from the Commencement Date to the Effective Date. In addition, (i) holders of Allowed Ltd. General Unsecured Claims will receive their pro rata share of the New Loral Common Stock Balance (which equals 12,420,652 shares of New Loral Common Stock) and (ii) holders of Allowed Orion General Unsecured Claims will (x) receive their pro rata share of approximately eighty percent (80%) of the New Loral Common Stock, (y) receive their pro rata share of $200 million of preferred stock to be issued by New

Skynet and (z) be offered the right to subscribe for their pro rata share of $120 million in new senior secured notes of New Skynet.

In addition to providing significant and, in two instances, complete recoveries to unsecured creditors, the Plan of Reorganization enables the continuation of the Debtors' two main businesses – fixed satellite services and satellite manufacturing. The Plan of Reorganization contemplates that the Debtors' two primary businesses will emerge intact as New Skynet and New SS/L, respectively, and will continue to operate their businesses, employ their workforces and manage their properties.

The Plan of Reorganization is the result of extensive arms'-length negotiations among the Debtors, the Creditors' Committee and the Ad Hoc Trade Creditors' Committee, and reflects the terms of a consensual agreement among such parties. As stated, the Plan of Reorganization is fully supported by the Creditors' Committee. The support of the Plan of Reorganization by the Creditors' Committee reflects its acknowledgement that the Plan of Reorganization is fundamentally fair to creditors and equity interest holders.

Notwithstanding the extensive, good faith and arms'-length nature of the negotiations in respect of the Plan of Reorganization, as previously stated, the Equity Committee intimates in its Objection to confirmation of the Plan of Reorganization that the Plan of Reorganization was not proposed in good faith because, among other things, certain terms of the Plan of Reorganization are designed so as to intentionally favor certain members of the Creditors' Committee (thereby implying that certain terms of the Plan of Reorganization are the result of collusion among certain members of the Creditors' Committee and the Debtors). See Equity Committee Objection, 6. While a more detailed response to the Equity Committee's Objection is provided in the Responses, the purported conspiracy created by the Equity

24

Committee with respect to the New Skynet Notes is, in reality, nothing more than arms'-length negotiations between and among the parties with an economic stake in these Reorganization Cases, and the natural result of the "give and take" associated with such negotiations. As discussed more fully in the Responses, the Equity Committee has produced no evidence and clearly no credible evidence to substantiate its baseless assertions as to the alleged lack of good faith on the part of the parties that negotiated the Plan of Reorganization.

In light of the foregoing as well as the reasons set forth in the Responses, it is incontrovertible that the Plan of Reorganization (i) has been proposed in good faith and not by any means prohibited by law and (ii) promotes the rehabilitative objectives and purposes of the Bankruptcy Code. Accordingly, the requirements of section 1129(a)(3) are satisfied.

**V.**

### THE PLAN OF REORGANIZATION PROVIDES THAT PAYMENTS MADE BY THE DEBTORS FOR SERVICES OR COSTS AND EXPENSES ARE SUBJECT TO COURT APPROVAL

Section 1129(a)(4) of the Bankruptcy Code requires that certain professional fees and expenses paid by the plan proponent, by the debtor, or by a person receiving distributions of property under the plan, be subject to approval by the Court as reasonable. Specifically, section 1129(a)(4) requires that:

> Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to approval of, the court as reasonable.

11 U.S.C. § 1129(a)(4). Section 1129(a)(4) has been construed to require that all payments of professional fees that are made from estate assets be subject to review and approval as to their reasonableness by the Court. See Drexel, 138 B.R. at 760; Johns-Manville, 68 B.R. at 632; 5 Collier on Bankruptcy ¶ 1129.02[4], at 1129-33 (15th ed. rev. 1993).

Pursuant to the interim application procedures established under section 331 of the Bankruptcy Code and the Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) to Establish Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals, dated August 6, 2003, the Bankruptcy Court authorized and approved the payment of certain fees and expenses of professionals retained in the Reorganization Cases. All such fees and expenses, as well as all other accrued fees and expenses of professionals through the Effective Date, remain subject to final review by the Court for reasonableness under sections 327, 328, 330, 331, 363(b) and 503(b) of the Bankruptcy Code. In addition, pursuant to sections 503(b)(3) and (4), the Bankruptcy Court must review any application for substantial contribution to ensure compliance with the statutory requirements and that the fees requested are reasonable. Lastly, all payments to be made in connection with the Effective Date or which otherwise are required to be disclosed, including any amounts to be paid to officers and directors, will be disclosed at the hearing to consider confirmation of the Plan of Reorganization.

The foregoing procedures for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Debtors satisfy the objectives of section 1129(a)(4) of the Bankruptcy Code. See In re Elsinore Shore Assos., 91 B.R. 238, 268 (Bankr. D.N.J. 1988) (requirements of section 1129(a)(4) satisfied where plan provided for payment of only "allowed" administrative expenses); In re Future Energy Corp., 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988) ("Court approval of payments for services and expenses is governed by various Code provisions -- e.g., §§ 328, 329, 330, 331, and 503(b) -- and need not be explicitly provided for in a Chapter 11 plan."); 5 Collier on Bankruptcy ¶ 1129.02[4], at 1129-33, 1129-34 (15th ed. rev. 1993).

Based upon the foregoing, the Plan of Reorganization complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

<div align="center">VI.</div>

### THE DEBTORS HAVE DISCLOSED ALL NECESSARY INFORMATION REGARDING DIRECTORS, OFFICERS AND INSIDERS

Section 1129(a)(5) of the Bankruptcy Code requires that the plan proponent disclose the identity and affiliations of the proposed officers and directors of the reorganized debtors, that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy, and that there be disclosure of the identity and compensation of any insiders to be retained or employed by the reorganized debtors. 11 U.S.C. § 1129(a)(5).

On July 1, 2005, the Debtors filed with the Bankruptcy Court the List of Directors and Officers for the Reorganized Debtors in Connection with the Debtors' Fourth Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "List of Directors and Officers"), which discloses, among other things, the names of the members of the initial New Loral Board, the initial New Skynet Board, the initial New SS/L Board, the Reorganized Subsidiary Debtors' Boards, and the officers for the Reorganized Debtors. On July 10, 2005, the Debtors filed with the Court an Amended List of Officers for Certain of the Reorganized Debtors in Connection with the Debtors' Fourth Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code. As set forth on the List of Directors and Officers, the initial New Loral Board consists of nine directors. Bernard L. Schwartz, the current Chairman of the Board of Directors and the CEO, will serve as the Chairman of the New Loral Board. Michael B. Targoff will serve as the Non-Executive Vice Chairman of the New Loral Board. In addition, Mr. Schwartz has designated Robert B. Hodes and Arthur L. Simon to serve on the New Loral

Board, and the Creditors' Committee has selected Mark H. Rachesky, Hal Goldstein, Sai S. Devabhaktuni, Dean Olmstead and John D. Harkey, Jr. to serve on the New Loral Board.

The employment of these officers and directors by the Reorganized Debtors is consistent with the interests of creditors and is essential to the ongoing viability of the Debtors' businesses. The current and continuing officers of the Debtors are intimately familiar with the businesses of the Debtors and are necessary to maintain critical business relationships with lenders, suppliers, customers and other parties. The continuation of Bernard L. Schwartz as CEO and Chairman of the New Loral Board is undeniably in the best interests of all parties in interest, in light of, among other things, Mr. Schwartz's vast experience as the leader of the Debtors' various business enterprises. See Toy & Sports Warehouse, 37 B.R. at 149-50 (continuation of debtor's president and founder, who had many years of experience in the debtors' business, satisfied section 1129(a)(5)). Moreover, the designation by Mr. Schwartz of two of the directors of the Initial Loral Board, both of whom are current members of the board of directors of Loral Ltd., and the designation by the Creditors' Committee of Michael B. Targoff as Non-Executive Vice Chairman of the New Loral Board and of five of the directors of the Initial Loral Board is consistent with the interests of creditors and public policy. See In re Apex Oil Co., 118 B.R. 683, 704-05 (Bankr. E.D. Mo. 1990) (where debtors as well as creditors' committee believe control of entity by proposed individuals will be beneficial, section 1129(a)(5) requirements are satisfied).

Based upon the foregoing, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

## VII.

### THE PLAN OF REORGANIZATION DOES NOT
### CONTAIN ANY RATE CHANGES SUBJECT TO THE
### JURISDICTION OF ANY GOVERNMENTAL REGULATORY COMMISSION

Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory

commission having jurisdiction over the rates charged by the reorganized debtor in the operation

of its businesses approve any rate change provided for in the plan of reorganization. 11 U.S.C.

§ 1129(a)(6). The Plan of Reorganization does not provide for rate changes subject to the

jurisdiction of any governmental regulatory agency by the Reorganized Debtors. Accordingly,

section 1129(a)(6) of the Bankruptcy Code is inapplicable to these Reorganization Cases and

such regulatory approval is unnecessary under the terms of the statute.

## VIII.

### THE PLAN OF REORGANIZATION IS IN THE BEST INTERESTS
### OF ALL CREDITORS OF, AND EQUITY INTEREST HOLDERS IN, THE DEBTORS

Section 1129(a)(7) of the Bankruptcy Code requires that a plan of reorganization

be in the best interests of creditors and stockholders. Specifically, section 1129(a)(7) provides in

relevant part:

> With respect to each impaired class of claims or interests –
>
>     (A)    each holder of a claim or interest of such class –
>
>         (i)    has accepted the plan; or
>
>         (ii)    will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date. . . .

11 U.S.C. § 1129(a)(7)(A).

The best interests test focuses on individual dissenting parties rather than classes of claims. See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 441 n.13 (1999). The test requires that each holder of a claim or equity interest either accepts the plan or will receive or retain under the plan property having a present value, as of the effective date of the plan, not less than the amount such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

Under the best interests test, the court must find that each non-accepting creditor will receive or retain value that is not less than the amount he would receive if the debtor were liquidated. See 203 N. LaSalle, 526 U.S. at 440; United States v. Reorganized CF&I Fabricators, Inc., 518 U.S. 213, 228 (1996); Century Glove, 1993 WL 239489 at *7; Corestates Bank, 202 B.R. 33, 55 (E.D. Pa. 1996); In re Labrum & Doak, LLP, 227 B.R. 372, 381 (Bankr. E.D. Pa. 1998); In re Union Meeting Partners, 165 B.R. 553, 573 (Bankr. E.D. Pa. 1994); Resorts Int'l, 145 B.R. 412, 476 (Bankr. D.N.J. 1990); Elsinore Shore, 91 B.R. 238, 269 (Bankr. D.N.J. 1988). As section 1129(a)(7) makes clear, the liquidation analysis applies only to non-accepting impaired claims or equity interests. If a class of claims or equity interests unanimously accepts the plan, the best interests test automatically is deemed satisfied for all members of that class.

In the instant case, because they are unimpaired and, therefore, deemed to accept the Plan of Reorganization, or because they voted unanimously to accept the Plan of Reorganization, the best interests test is inapplicable to holders of Claims and Equity Interests, as applicable, in each of Ltd. Class 1 (Other Priority Claims against the Ltd. Debtors), Ltd. Class 2 (Secured Tax Claims against the Ltd. Debtors), Ltd. Class 3 (Secured Claims against the Ltd. Debtors), Orion Class 1 (Other Priority Claims against the Orion Debtors), Orion Class 2 (Secured Tax Claims against the Orion Debtors), Orion Class 3 (Secured Claims against the

30

Orion Debtors), Orion Class 5 (Orion Equity Interests), SpaceCom Class 1 (Other Priority Claims against the SpaceCom Debtors), SpaceCom Class 2 (Secured Tax Claims against the SpaceCom Debtors), SpaceCom Class 3 (Secured Claims against the SpaceCom Debtors), SpaceCom Class 4 (SpaceCom General Unsecured Claims), SpaceCom Class 5 (SpaceCom Equity Interests), SS/L Class 1 (Other Priority Claims against the SS/L Debtors), SS/L Class 2 (Secured Tax Claims against the SS/L Debtors), SS/L Class 3 (Secured Claims against the SS/L Debtors), SS/L Class 4 (SS/L General Unsecured Claims) and SS/L Class 5 (SS/L Equity Interests). The "best interests" test is, however, applicable to the holders of Claims and Equity Interests (i) that are impaired and that have voted to reject the Plan of Reorganization or (ii) that are fully impaired and, as a result, are deemed to have rejected the Plan of Reorganization. Accordingly, the "best interests" test is applicable only to those holders of Claims that have voted to reject the Plan of Reorganization in (i) Ltd. Class 4 (Ltd. General Unsecured Claims) and Orion Class 4 (Orion General Unsecured Claims) and (ii) holders of Claims or Equity Interests in Ltd. Class 5 (Ltd. Preferred Stock Interests), Ltd. Class 6 (Ltd. Equity Interests) and Ltd. Class 7 (Securities Litigation Claims), which Classes are fully impaired and therefore are deemed to have rejected the Plan of Reorganization.

The starting point in determining whether the Plan of Reorganization meets the "best interests" test is a determination of the amount of proceeds that would be generated from the liquidation of the Debtors in the context of a chapter 7 liquidation. A chapter 7 liquidation of the Debtors' estates would result in a substantial reduction in the ultimate proceeds available for distribution to all creditors and equity interest holders in the Reorganization Cases. The value of the Debtors' assets in a chapter 7 case would be substantially eroded as a result of the compressed liquidation of such assets that might be required under chapter 7 and the consequent

"forced sale" atmosphere. Moreover, the increased costs associated with a liquidation under chapter 7 would substantially reduce the proceeds available for distribution. These costs would include, among other things, administrative fees and costs payable to a trustee in bankruptcy and professional advisors to such trustee and substantial increases in Claims which would be satisfied on a priority basis or on parity with creditors in the Reorganization Cases. In the context of the erosion of asset value and the increased costs and delay associated with a chapter 7 case, confirmation of the Plan of Reorganization provides each non-accepting Claim or Equity Interest holder with a recovery that is not less than such holder would receive in a liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

Exhibit F to the Disclosure Statement sets forth the Debtors' liquidation analyses (the "Liquidation Analyses"). Such analyses demonstrate that the values that may be realized by the holders of Claims in Ltd. Class 4 (Ltd. General Unsecured Claims) and Orion Class 4 (Orion General Unsecured Claims) upon disposition of assets pursuant to a chapter 7 liquidation are not less than the value of the recoveries to such Classes provided for under the Plan of Reorganization. Additionally, the Liquidation Analyses demonstrate that the holders of Claims and Equity Interests in Ltd. Class 5 (Ltd. Preferred Stock Interests), Ltd. Class 6 (Ltd. Equity Interests) and Ltd. Class 7 (Securities Litigation Claims), which are not entitled to any distribution under the Plan of Reorganization, also would not be entitled to any distribution upon disposition of assets pursuant to a chapter 7 liquidation. Recoveries for each such Class, as reflected in the Liquidation Analyses, are as follows:

| Class | Estimated Plan Recovery | Estimated Liquidation Recovery |
|---|---|---|
| Ltd. Class 4 (Ltd. General Unsecured Claims) | 33.9% | 0.0%-3.0% |
| Orion Class 4 (Orion General Unsecured Claims) | 55.5% | 42.1%-48.9% |
| Ltd. Class 5 (Ltd. Preferred Stock Interests) | 0.00% | 0.00% |
| Ltd. Class 6 (Ltd. Equity Interests) | 0.00% | 0.00% |
| Ltd. Class 7 (Securities Litigation Claims) | 0.00% | 0.00% |

Accordingly, the Liquidation Analyses demonstrate that each holder of a Claim or Equity Interest, as applicable, in Ltd. Class 4 (Ltd. General Unsecured Claims), Orion Class 4 (Orion General Unsecured Claims), Ltd. Class 5 (Ltd. Preferred Stock Interests), Ltd. Class 6 (Ltd. Equity Interests) and Ltd. Class 7 (Securities Litigation Claims) will receive or retain under the Plan of Reorganization on account of its respective Claim or Equity Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

## IX.

### THE PLAN OF REORGANIZATION HAS BEEN ACCEPTED BY IMPAIRED CLASSES AND, AS TO SUCH CLASSES, THE REQUIREMENTS OF SECTION 1129(A)(8) HAVE BEEN SATISFIED

Section 1129(a)(8) of the Bankruptcy Code requires each class of impaired claims or interests to accept the plan, as follows:

With respect to each class of claims or interests –

(A)    such class has accepted the plan; or

(B)    such class is not impaired under the plan.

11 U.S.C. § 1129(a)(8).

Holders of Claims and Equity Interests in Ltd. Class 1 (Other Priority Claims against the Ltd. Debtors), Ltd. Class 2 (Secured Tax Claims against the Ltd. Debtors), Ltd. Class 3 (Secured Claims against the Ltd. Debtors), Orion Class 1 (Other Priority Claims against the Orion Debtors), Orion Class 2 (Secured Tax Claims against the Orion Debtors), Orion Class 3 (Secured Claims against the Orion Debtors), Orion Class 5 (Orion Equity Interests), SpaceCom Class 1 (Other Priority Claims against the SpaceCom Debtors), SpaceCom Class 3 (Secured Claims against the SpaceCom Debtors), SpaceCom Class 4 (SpaceCom General Unsecured Claims), SpaceCom Class 5 (SpaceCom Equity Interests), SS/L Class 1 (Other Priority Claims against the SS/L Debtors), SS/L Class 2 (Secured Tax Claims against the SS/L Debtors), SS/L Class 3 (Secured Claims against the SS/L Debtors), SS/L Class 4 (SS/L General Unsecured Claims) and SS/L Class 5 (SS/L Equity Interests) are unimpaired under the Plan and are conclusively presumed to have accepted the Plan of Reorganization pursuant to section 1126(f) of the Bankruptcy Code.

Ltd. Class 4 (Ltd. General Unsecured Claims), Orion Class 4 (Orion General Unsecured Claims) and SpaceCom Class 2 (Secured Tax Claims against the SpaceCom Debtors) are the impaired Classes of Claims eligible to vote. The holders of Claims in Ltd. Class 4 (Ltd. General Unsecured Claims), Orion Class 4 (Orion General Unsecured Claims) and SpaceCom Class 2 (Secured Tax Claims against the SpaceCom Debtors) affirmatively have voted to accept the Plan of Reorganization as follows:

| Class | Amount Accepting (% of Amount Voted) | Amount Rejecting (% of Amount Voted) | Number Accepting (% of Amount Voted) | Number Rejecting (% of Amount Voted) |
|---|---|---|---|---|
| **Ltd. Class 4** | $736,540,221.87 (99.16%) | $6,260,000.00 (0.84%) | 166 (95.40%) | 8 (4.60%) |
| **Orion Class 4** | $627,084,123.23 (97.25%) | $17,750,000.00 (2.75%) | 134 (96.40%) | 5 (3.60%) |
| **SpaceCom Class 2** | $43,095.80 (100.00%) | $0.00 (0.00%) | 1 (100%) | 0 (0.00%) |

The tabulation of votes is discussed in more detail in the Voting Certification. The Debtors will present evidence at the Confirmation hearing concerning the tabulation of votes of impaired Classes that voted on the Plan of Reorganization. As to these unimpaired Classes and impaired and accepting Classes, the requirements of section 1129(a)(8) of the Bankruptcy Code have been satisfied.

As previously stated, as no votes were received in respect of Ltd. Class 2 (Secured Tax Claims against the Ltd. Debtors) and Orion Class 2 (Secured Tax Claims against the Orion Debtors), and in light of controlling legal authority in this jurisdiction, the Debtors have determined to modify the treatment of such Classes in order to render such Classes unimpaired. Additionally, as holders of Claims and Equity Interests in Ltd. Class 5 (Ltd. Preferred Stock Interests), Ltd. Class 6 (Ltd. Equity Interests) and Ltd. Class 7 (Securities Litigation Claims) will not receive any distributions under the Plan of Reorganization, such Classes are deemed to have rejected the Plan of Reorganization. Nonetheless, as set forth below, as to such Classes, the Plan of Reorganization may be confirmed under the "cram down" provisions of section 1129(b) of the Bankruptcy Code.

# X.

## THE PLAN OF REORGANIZATION PROVIDES
## FOR PAYMENT IN FULL OF ALL ALLOWED PRIORITY CLAIMS

Section 1129(a)(9) of the Bankruptcy Code requires that persons holding claims entitled to priority under section 507(a) of the Bankruptcy Code receive specified cash payments under a plan of reorganization. Unless the holder of a particular claim agrees to a different treatment with respect to such claim, section 1129(a)(9) requires a plan to provide as follows:

> (A)     with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of [the Bankruptcy Code], on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;
>
> (B)     with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) of [the Bankruptcy Code], each holder of a claim of such class will receive --
>
> > (i)     if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
> >
> > (ii)     if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and
>
> (C)     with respect to a claim of a kind specified in section 507(a)(8) of [the Bankruptcy Code], the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

11 U.S.C. § 1129(a)(9).

In accordance with section 1129(a)(9)(A) of the Bankruptcy Code, Section 2 of the Plan of Reorganization provides that all Allowed Administrative Expense Claims under section 503(b) of the Bankruptcy Code will be paid in Cash in full on the Effective Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed Administration Expense Claim agrees to different treatment. Section 2 of the Plan of

Reorganization also provides that, notwithstanding the foregoing, Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by any of the Debtors, or liabilities arising under loans or advances to or other obligations incurred by any of the Debtors, whether or not incurred in the ordinary course of business, shall be paid by the Debtors or the Reorganized Debtors in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents related to such transactions.

In addition, Section 2.2 of the Plan of Reorganization provides that all entities seeking an award of compensation under section 503(b) of the Bankruptcy Code for services rendered through and including the Confirmation Date must file their respective applications for final allowance of such awards by the date that is ninety (90) days after the Effective Date.

In accordance with section 1129(a)(9)(B) of the Bankruptcy Code, Section 4 of the Plan of Reorganization provides that all Allowed Other Priority Claims will be paid, except to the extent that a holder of an Allowed Other Priority Claim has agreed to different treatment, in full in Cash on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date such Claim becomes Allowed and (iii) the date for payment provided by any agreement or understanding between the applicable Debtor and the holder of such Claim.

Lastly, the Plan of Reorganization satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code in respect of the treatment of Priority Tax Claims under section 507(a)(8) of the Bankruptcy Code. Section 1129(a)(9)(C) permits deferred payment over a period of six years from the date of assessment of the tax so long as the amount so paid has a value, as of the effective date of the plan, equal to the allowed amount of the priority tax claim. 11 U.S.C. § 1129(a)(9)(C). Pursuant to Section 2 of the Plan of Reorganization, the Debtors are

37

authorized to pay to holders of Allowed Priority Tax Claims, either (i) Cash in an amount equal to the Allowed Priority Tax Claim on the Effective Date, or as soon thereafter as is reasonably practicable, or (ii) equal annual Cash payments commencing on the first (1st) anniversary of the Effective Date in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at a fixed annual rate equal to six percent (6%) over a period through the sixth (6th) anniversary of the date of assessment of such Allowed Priority Tax Claim, subject to the Debtors' rights and the Debtors' sole option to prepay the entire amount of the Allowed Priority Tax Claim. Further, all Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

Based upon the foregoing, the Plan of Reorganization satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

## XI.

## AT LEAST ONE CLASS OF IMPAIRED
## CLAIMS HAS ACCEPTED THE PLAN OF REORGANIZATION

Section 1129(a)(10) of the Bankruptcy Code requires the affirmative acceptance of the Plan by at least one class of impaired claims, "determined without including any acceptance of the plan by any insider." 11 U.S.C. § 1129(a)(10). The Plan of Reorganization clearly satisfies this requirement in that Ltd. Class 4 (Ltd. General Unsecured Claims), Orion Class 4 (Orion General Unsecured Claims) and SpaceCom Class 2 (Secured Tax Claims against the SpaceCom Debtors) have accepted the Plan, without including the acceptance of the Plan of Reorganization by insiders, if any, in such Classes. Additionally, as there is no impaired Class of Claims against the SS/L Debtors, section 1129(a)(10) of the Bankruptcy Code is inapplicable thereto.

## XII.

## THE PLAN OF REORGANIZATION
## IS NOT LIKELY TO BE FOLLOWED BY LIQUIDATION
## OR THE NEED FOR FURTHER FINANCIAL REORGANIZATION

Section 1129(a)(11) of the Bankruptcy Code requires that, as a condition

precedent to confirmation, the Court determine that the Plan of Reorganization is feasible.

Specifically, the Court must determine that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the
> need for further financial reorganization, of the debtor or any successor to the
> debtor under the plan, unless such liquidation or reorganization is proposed in the
> plan.

11 U.S.C. § 1129(a)(11). As described below, and as will be demonstrated at the Confirmation

Hearing, the Plan of Reorganization is feasible within the meaning of this provision.

The feasibility test set forth in section 1129(a)(11) of the Bankruptcy Code

requires the Court to determine whether the Plan of Reorganization is workable and has a

reasonable likelihood of success. See Leslie Fay, 207 B.R. at 788; In re Woodmere Investors

Ltd. P'ship, 178 B.R. 346, 361 (Bankr. S.D.N.Y. 1995); Drexel, 138 B.R. at 762 (Bankr.

S.D.N.Y. 1992); Johns-Manville, 68 B.R. at 635.

The Second Circuit has stated that "the feasibility standard is whether the plan

offers a reasonable assurance of success. Success need not be guaranteed." Johns-Manville

Corp., 843 F.2d 636, 649 (2d Cir. 1988); see also In re U.S. Truck Co., 47 B.R. 932, 944 (E.D.

Mich. 1985) ("'Feasibility' does not, nor can it, require the certainty that a reorganized company

will succeed."), aff'd, 800 F.2d 581 (6th Cir. 1986); In re WorldCom, Inc., 2003 Bankr. LEXIS

1401 at *168 ("The feasibility test set forth in section 1129(a)(11) requires the Court to

determine whether the Plan is workable and has a reasonable likelihood of success."); In re One

Times Square Assocs. Ltd. P'ship, 159 B.R. 695, 709 (Bankr. S.D.N.Y. 1993) ("'It is not

necessary that the success be guaranteed, but only that the plan present a workable scheme of reorganization and operation from which there may be a reasonable expectation of success.'") (quoting 5 Collier on Bankruptcy ¶ 1129.02[11], at 1129-54 (15th ed. 1992)); In re Texaco Inc., 84 B.R. 893, 910 (Bankr. S.D.N.Y. 1998) ("All that is required is that there be reasonable assurance of commercial viability."), appeal dismissed, 92 B.R. 38 (S.D.N.Y. 1988); In re Prudential Energy Co., 58 B.R. 857, 862 (Bankr. S.D.N.Y. 1986) ("Guaranteed success in the stiff winds of commerce without the protection of the [Bankruptcy] Code is not the standard under § 1129(a)(11).").

The key element of feasibility is whether there exists a reasonable probability that the provisions of the plan can be performed. The purpose of the feasibility test is to protect against visionary or speculative plans. As noted by the Ninth Circuit:

> The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation.

Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.), 761 F.2d 1374, 1382 (9th Cir. 1985) (quoting 5 Collier on Bankruptcy ¶ 1129.02, at 1129-36.11 (15th ed. 1984)). However, just as speculative prospects of success cannot sustain feasibility, speculative prospects of failure cannot defeat feasibility. The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds. See U.S. Truck Co., 47 B.R. at 944.

Applying the foregoing standards of feasibility, courts have identified the following factors as probative:

(1)      the adequacy of the capital structure;

(2)      the earning power of the business;

(3)      economic conditions;

(4)      the ability of management;

(5) the probability of the continuation of the same management; and

(6) any other related matters which will determine the prospects of a sufficiently successful operation to enable performance of the provisions of the plan.

Leslie Fay, 207 B.R. at 789 (citing 7 Collier on Bankruptcy ¶ 1129 LH[2], at 1129-82 (15th ed., rev. 1996)); see also Texaco Inc., 84 B.R. at 910; Prudential Energy, 58 B.R. at 862-63. The foregoing list is neither exhaustive nor exclusive. Drexel, 138 B.R. at 763; cf. U.S. Truck Co., 800 F.2d at 589. As the Debtors will demonstrate at the Confirmation Hearing, the Plan of Reorganization satisfies these standards of feasibility.

For purposes of determining whether the Plan of Reorganization satisfies the above-described feasibility standards, the Debtors have analyzed their ability to fulfill their obligations under the Plan of Reorganization. As part of this analysis, the Debtors have prepared projections of their financial performance for each year of the four-year period ending December 31, 2008 (the "Projections"). See Disclosure Statement, Exhibit E. Based upon the information contained in the Disclosure Statement and the Projections, the Debtors will be able to satisfy all of their Cash obligations under the Plan of Reorganization and sustain viable operating entities.

With respect to Administrative Expense Claims, Compensation and Reimbursement Claims, Indenture Trustee Fees, Priority Tax Claims, Other Priority Claims and Secured Claims and Secured Tax Claims, all of which Claims are to be paid in full in Cash under the Plan of Reorganization, the Debtors' Projections reflect that the Debtors will be able to satisfy the aggregate amount of their Cash obligations in respect of such Claims in the manner proposed under the Plan of Reorganization. With respect to the Debtors' unsecured debt obligations, the Plan of Reorganization provides for (i) the satisfaction of certain of such obligations by the provision of stock, notes and preferred stock and (ii) certain Claims that the Debtors propose to satisfy in Cash. Under the Plan of Reorganization, holders of Allowed Ltd.

General Unsecured Claims will receive their pro rata share of the New Loral Common Stock Balance (which equals 12,420,652 shares of New Loral Common Stock). Holders of Allowed Orion General Unsecured Claims will (x) receive their pro rata share of approximately eighty percent (80%) of the New Loral Common Stock, (y) receive their pro rata share of $200 million of preferred stock to be issued by New Skynet and (z) be offered the right to subscribe for their pro rata share of $120 million in new senior secured notes of New Skynet, in satisfaction of the Allowed Orion General Unsecured Claims. The cash generated by this subscription will be used by the Debtors to satisfy, in full, the Allowed SpaceCom General Unsecured Claims and the Allowed SS/L General Unsecured Claims. In the event that any amount of New Skynet Notes are not subscribed for pursuant to the Rights Offering, any such New Skynet Notes shall be purchased by the Backstop Purchasers pursuant to the Backstop Commitment Agreement, thereby providing the Debtors the funding necessary to satisfy the Allowed SpaceCom General Unsecured Claims and the Allowed SS/L General Unsecured Claims.

Based upon the Debtors' estimates of the respective aggregate amounts of the Allowed Administrative Expense Claims, the Allowed Other Priority Claims, the Allowed Secured Tax Claims, the Allowed SpaceCom General Unsecured Claims and the Allowed SS/L General Unsecured Claims, the Debtors will be able to satisfy all such Allowed Claims in Cash. The Plan of Reorganization therefore significantly delevers the Debtors and leaves the Debtors with sufficient Cash and other assets to satisfy their obligations under the Plan of Reorganization. Accordingly, the Plan of Reorganization is not likely to be followed by liquidation or the need for further reorganization and, thus, satisfies the feasibility standard of section 1129(a)(11) of the Bankruptcy Code.

# XIII.

## ALL STATUTORY FEES HAVE BEEN OR WILL BE PAID

Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under section 1930 [of title 28 of the United States Code], as determined by the court at the hearing on confirmation of the plan." 11 U.S.C. § 1129(a)(12). Section 507 of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930 of] chapter 123 of title 28" are afforded priority as administrative expenses. 11 U.S.C. § 507(a)(1). In accordance with sections 1129(a)(12) and 507 of the Bankruptcy Code, Section 14.6 of the Plan of Reorganization provides that all such fees and charges, to the extent not previously paid, will be paid on the Effective Date, and thereafter as may be required. Thus, the Plan of Reorganization satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

# XIV.

## THE PLAN OF REORGANIZATION
## ADEQUATELY AND PROPERLY TREATS RETIREE BENEFITS

Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for retiree benefits at levels established pursuant to section 1114 of the Bankruptcy Code. Section 8.10 of the Plan of Reorganization provides that the Reorganized Debtors shall continue to pay all retiree benefits of the Debtors for the duration of the period for which the Debtors had obligated themselves to provide such benefits and subject to the right of the Reorganized Debtors to modify or terminate such retiree benefits in accordance with the terms thereof. Accordingly, the Plan of Reorganization satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

## XV.

### THE PLAN OF REORGANIZATION SATISFIES
### THE "CRAM DOWN" REQUIREMENTS WITH RESPECT TO
### ALL IMPAIRED REJECTING CLASSES BECAUSE IT DOES NOT DISCRIMINATE
### UNFAIRLY AND IS FAIR AND EQUITABLE WITH RESPECT TO SUCH CLASSES

Section 1129(b) of the Bankruptcy Code provides a mechanism for confirmation

of a plan in circumstances where the plan is not accepted by all impaired classes of claims and

equity interests. This mechanism is commonly referred to as "cram down". Section 1129(b)

provides in pertinent part:

> Notwithstanding section 510(a) of [the Bankruptcy Code], if all of the applicable
> requirements of [section 1129(a) of the Bankruptcy Code] other than [the
> requirement contained in section 1129(a)(8) that a plan must be accepted by all
> impaired classes] are met with respect to a plan, the court, on request of the
> proponent of the plan, shall confirm the plan notwithstanding the requirements of
> such paragraph *if the plan does not discriminate unfairly, and is fair and
> equitable, with respect to each class of claims or interests that is impaired under,
> and has not accepted, the plan.*

11 U.S.C. § 1129(b)(1) (emphasis supplied). Thus, under section 1129(b) of the Bankruptcy

Code, the Court may "cram down" a plan over the deemed rejection by impaired classes of

claims or equity interests that receive no distributions under the plan as long as the plan does not

"discriminate unfairly" and is "fair and equitable" with respect to such classes.

### A.     The Plan of Reorganization Does Not Discriminate Unfairly

Section 1129(b)(1) of the Bankruptcy Code does not prohibit discrimination

between classes; it prohibits only discrimination that is *unfair*. In re 11,111, Inc., 117 B.R. 471,

478 (Bankr. D. Minn. 1990). The weight of judicial authority holds that a plan unfairly

discriminates in violation of section 1129(b) of the Bankruptcy Code only if similar classes are

treated differently without a reasonable basis for the disparate treatment. See In re Buttonwood

Partners, Ltd., 111 B.R. 57 (Bankr. S.D.N.Y. 1990); Johns-Manville, 68 B.R. 618. Accordingly,

as between two classes of claims or two classes of equity interests, there is no unfair

discrimination if (i) the classes are comprised of dissimilar claims or interests, see, e.g., Johns-Manville, 68 B.R. at 636, or (ii) taking into account the particular facts and circumstances of the case, there is a reasonable basis for such disparate treatment, see, e.g., Buttonwood Partners, 111 B.R. at 63; In re Rivera Echevarria, 129 B.R. 11, 13 (Bankr. D.P.R. 1991).

Under the foregoing standards, the Plan of Reorganization does not "discriminate unfairly" with respect to the Classes that are deemed to have rejected the Plan of Reorganization: Ltd. Class 5 (Ltd. Preferred Stock Interests), Ltd. Class 6 (Ltd. Equity Interests) and Ltd. Class 7 (Securities Litigation Claims).

Ltd. Preferred Stock Interests in Ltd. Class 5 and Ltd. Equity Interests in Ltd. Class 6 will receive no property in respect of such Equity Interests. Ltd. Class 5 represents the only Class of preferred Equity Interests of the Ltd. Debtors and, accordingly, the Plan of Reorganization does not discriminate unfairly as between any holders of Ltd. Preferred Stock Interests. Similarly, Ltd. Class 6 consists of all common stock, warrants, options, rights to receive options and other equity issued by any of the Ltd. Debtors, other than the Ltd. Preferred Stock Interests, which by their nature are dissimilar from the Equity Interests contained in Ltd. Class 6. Accordingly, the Plan of Reorganization does not discriminate unfairly as between any holders of the Equity Interests in the Ltd. Debtors.

The Plan of Reorganization also provides that holders of Securities Litigation Claims in Ltd. Class 7 will receive no property in respect of such Claims. The Securities Litigation Claims consist of all Claims against any Debtor, whether or not the subject of an existing lawsuit, arising from the rescission of a purchase or sale of shares or notes of any of the Debtors or any affiliate of any Debtor, for damages arising from the purchase or sale of any such security, or for reimbursement, contribution, or indemnification allowed under section 502 of the

45

Bankruptcy Code on account of any such Claim. Insofar as (i) Ltd. Class 7 consists of all Securities Litigation Claims against any of the Debtors and (ii) in any event, the Plan of Reorganization provides for no distribution to any member of Ltd. Class 7 and as such treats all members of Ltd. Class 7 equally, the Plan of Reorganization does not discriminate unfairly with respect to holders of Securities Litigation Claims; rather, the Plan of Reorganization effectuates the priorities set forth in the Bankruptcy Code, including section 510(b) of the Bankruptcy Code.

## B.    The Plan of Reorganization Is Fair and Equitable

Section 1129(b) of the Bankruptcy Code defines the phrase "fair and equitable" as follows:

(a)    As to Secured Creditors: Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim or (iii) the property is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds is provided in clause (i) or (ii) of this subparagraph.

(b)    As to Unsecured Creditors: Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

(c)    As to Equity Interest Holders: Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the nonaccepting class will not receive or retain any property under the plan.

See 11 U.S.C. § 1129(b)(2). In the instant case, the "fair and equitable" rule is satisfied as to the holders of (i) Secured Tax Claims against the Ltd. Debtors in Ltd. Class 2, (ii) Secured Tax Claims against the Orion Debtors in Orion Class 2, (iii) Ltd. Preferred Stock Interests in Ltd.

Class 5, (iv) Ltd. Equity Interests in Ltd. Class 6 and (v) Securities Litigation Claims in Ltd. Class 7, all of which Classes are deemed to have rejected the Plan of Reorganization.

Ltd. Class 5 and Ltd. Class 6 are comprised of the Ltd. Preferred Stock Interests and the Ltd. Equity Interests, respectively. Under the Plan of Reorganization, unsecured claims against the Ltd. Debtors, which are classified in Ltd. Class 4, will not be paid in full. Equity interests—such as the Ltd. Preferred Stock Interests and the Ltd. Equity Interests—are afforded the lowest priority in distribution from a debtor's estate. As creditors in Classes senior to Ltd. Class 5 and Ltd. Class 6 will not be paid in full, holders of the Ltd. Preferred Stock Interests and the Ltd. Equity Interests are not entitled to receive a distribution under the Plan of Reorganization. Accordingly, the Plan of Reorganization satisfies the absolute priority rule of section 1129(b)(2)(C) of the Bankruptcy Code with respect to Ltd. Class 5 and Ltd. Class 6.

Similarly, pursuant to the Plan of Reorganization, the holders of Allowed Securities Litigation Claims in Ltd. Class 7 will not receive or retain any interest or property under the Plan on account of such Securities Litigation Claims. As stated, and as addressed more fully in the Responses, the treatment of Securities Litigation Claims under the Plan of Reorganization is in accordance with and gives effect to the provisions of section 510(b) of the Bankruptcy Code. Section 510(b) of the Bankruptcy Code provides that a Claim arising for damages from the purchase or sale of a security of the debtor or an affiliate of the debtor shall be subordinated to all Claims or Interests that are senior to or equal to the Claim or Interest represented by such security, except that if such security is common stock, such Claim has the same priority as common stock. See 11 U.S.C. § 510(b). As the holders of General Unsecured Claims of Loral Ltd. will not be paid in full pursuant to the Plan of Reorganization, holders of Securities Litigation Claims will receive or retain no property under the Plan on account of their

respective Securities Litigation Claims. Inasmuch as no Equity Interest holder will receive or retain any property under the Plan of Reorganization, the Plan of Reorganization satisfies the absolute priority rule of section 1129(b)(2)(C) of the Bankruptcy Code.

Accordingly, the Plan of Reorganization is "fair and equitable" in all respects.

## XVI.

### THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS IN THE PLAN OF REORGANIZATION SHOULD BE APPROVED

**A.    The Releases of the Released Parties, the Exculpation and the Injunction**

**1.    Releases**

Pursuant to Section 11.9 of the Plan of Reorganization (the "Releases"), effective as of the Confirmation Date but subject to the occurrence of the Effective Date, and in consideration of:  (a) the services provided by the present and former directors, officers, employees, affiliates, agents, financial advisors, attorneys and representatives of the Debtors to the Debtors who acted in such capacities after the Commencement Date; (b) the services of the Creditors' Committee and the Backstop Purchasers and their affiliates; (c) the services of the Equity Committee; (d) the services of the Agent; (e) the services of each Indenture Trustee; and (f) the services of the JPLs, and their respective professionals in connection with the Reorganization Cases and the provisional liquidations of the Bermudian Debtors, (x) the Debtors and the Reorganized Debtors; (y) each holder of a Claim or Equity Interest that votes to accept the Plan of Reorganization (or is deemed to accept the Plan of Reorganization); and (z) to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each holder of a Claim or Equity Interest that does not vote to accept the Plan of Reorganization, shall release unconditionally and forever each present and former director, officer, employee, agent, financial advisor, attorney and representative (and their respective

48

affiliates) of the Debtors who acted in such capacity after the Commencement Date, the

Creditors' Committee, each member of the Creditors' Committee, the Backstop Purchasers, the

Equity Committee, each member of the Equity Committee, the Agent, the Indenture Trustees, the

JPLs, and each of their respective members, officers, directors, agents, financial advisors,

attorneys employees, equity holders, parent corporations, subsidiaries, partners, affiliates and

representatives (collectively, the "Released Parties"), from any and all claims and causes of

action whatsoever in connection with, related to, or arising out of the Reorganization Cases, the

pursuit of confirmation of the Plan of Reorganization, the consummation thereof, the

administration thereof, or the property to be distributed thereunder, and the provisional

liquidation of the Bermudian Debtors; *provided*, that the foregoing shall not operate as a waiver

of or release from any causes of action arising out of the willful misconduct or gross negligence

of any such person or entity.

## 2. <u>Exculpation</u>

Section 11.8 of the Plan of Reorganization (the "Exculpation") provides that, as of

the Effective Date, none of (i) the Debtors and the Debtors' officers, directors, and employees,

(ii) the Creditors' Committee and any subcommittee thereof, (iii) the Equity Committee, (iv) the

Agent, (v) the Indenture Trustees, (vi) the JPLs, (vii) the accountants, financial advisors,

investment bankers, agents and attorneys for the Debtors, (viii) the Backstop Purchasers and

their affiliates and (ix) the directors, officers, partners, members, agents, representatives,

accountants, financial advisors, investment bankers, or attorneys for any of the persons or entities

described in (ii), (iii), (iv), (v), (vi) and (viii) of Section 11.8 (but solely in their capacities as

such) shall have or incur any liability for any claim, cause of action or other assertion of liability

for any act taken or omitted to be taken since the Commencement Date in connection with, or

arising out of, the Reorganization Cases, the formulation, dissemination, confirmation,

49

consummation, or administration of the Plan of Reorganization, property to be distributed under the Plan of Reorganization, or any other act or omission in connection with the Reorganization Cases, the provisional liquidation of the Bermudian Debtors, the Plan of Reorganization, the Disclosure Statement or any contract, instrument, document or other agreement related thereto; *provided, however*, that the foregoing shall not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence.

### 3. **Injunction**

Section 11.5 of the Plan of Reorganization (the "Injunction") provides that, except as otherwise expressly provided in the Plan of Reorganization, all persons or entities who have held, hold or may hold Claims or Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals and affiliates, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest against the Debtors or Reorganized Debtors, (ii) the enforcement, attachment collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors or Reorganized Debtors, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or Reorganized Debtors or against the property or interests in property of the Debtors or Reorganized Debtors, or (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or Reorganized Debtors or against the property or interests in property of the Debtors or Reorganized Debtors, with respect to any such Claim or Equity Interest. The Injunction extends to any successors of the Debtors and Reorganized Debtors and their respective properties and interest in properties.

## B.    Standards for Approving the
### Releases, Exculpation and Injunction

Upon confirmation of a plan and pursuant to section 1141(d) of the Bankruptcy

Code, a chapter 11 debtor receives a "discharge" of claims against it.  Section 1141(d) of the

Bankruptcy Code provides, in pertinent part:

> Except as otherwise provided in this subsection, in the plan, or in the order
> confirming the plan, the confirmation of the plan
>
> (A) discharges the debtor from any debt that arose before the date of such
> confirmation. . .

11 U.S.C. § 1141(d).  Section 524(e) of the Bankruptcy Code, governing the effect of discharge

under the Bankruptcy Code, indicates that "except as provided in subsection (a)(3). . .discharge

of a debt of the debtor does not affect the liability of any other entity on, or the property of any

other entity for, such debt."  11 U.S.C. §524(e).  Notwithstanding this express limitation of the

discharge to the debtor, a debtor may settle and release its claims against third parties.  See 11

U.S.C. § 1123(b)(3)(A).

A plan that proposes to release a debtor's claim is considered a "settlement" for

purposes of satisfying section 1123(b)(3)(A) of the Bankruptcy Code.  See e.g., In re WCI Cable,

Inc., 282 B.R. 457, 469 (Bankr. D. Ore 2002) ("I find that the release and injunction provisions

of . . . the WCI plan are submitted for approval by the court pursuant to § 1123(b)(3)(A) and

[Rule 9019(a) of the Federal Rules of Bankruptcy Procedure]"); Resolution Trust Corp. v. Best

Prods. Co. (In re Best Prods. Co.), 68 F.3d 26, 33 (2d Cir. 1995) (same); In re WorldCom, Inc.,

2003 Bankr. LEXIS 1401 at *117 (same); In re Cellular Info. Sys., 171 B.R. 926, 947-948

(Bankr. S.D.N.Y. 1994) (same).

In reviewing a plan settlement and releases of the debtor's claims pursuant to

section 1123(b)(3)(A) of the Bankruptcy Code, the Court should be guided by the "reasonable

business judgment" standard of Rule 9019 of the Federal Rules of Bankruptcy Procedure. See In re WorldCom, Inc., 2003 Bankr. LEXIS 1401 at *117; Drexel, 138 B.R. 723. As described below, the Debtors have exercised reasonable business judgment in requesting Plan of Reorganization releases and exculpation of third parties, including the Released Parties.

It is also clear that, subject to the debtor's reasonable business judgment, the Release may include not only claims assertable directly by the debtor, but also claims assertable on behalf of, or derivative of the rights of, the debtor, i.e., all claims belonging to the estate or that may be brought by the chapter 11 debtor, including shareholder derivative actions, fraudulent conveyance claims, preference actions, and other similar types of actions subject to settlement by the debtor. See In re PWS Holding Corp., 303 F.3d 308, 315 (3d Cir. 2002), cert. denied, 538 U.S. 924 (2003); In re Texaco, 84 B.R. at 900; In re Allegheny Int'l Inc., 118 B.R. 282, 311 (Bankr. W.D.Pa. 1990); Huddleston v. Nelson Bunker Hunt Trust Estate, 117 B.R. 231, 233-34 (N.D. Tex. 1990) (confirming plan containing release of claims against banks to the extent they were derivative of the debtor's claims).

Where such relief represents an important step in the success of the overall plan of reorganization, a bankruptcy court is also empowered to issue permanent injunctions against or authorize releases of claims by non-debtors against non-debtors under a chapter 11 plan and pursuant to section 105(a) of the Bankruptcy Code. See Johns-Manville, 68 B.R. 618 (permanent injunction in favor of settling insurance company); see also, In re A.H. Robins Co., 880 F.2d 694, 701 (4th Cir. 1988) (release and permanent injunction in favor of insurance company, executives and law firms), cert. denied, 493 U.S. 939 (1989); Greer II v. Gaston & Snow (In re Gaston & Snow), 1996 WL 694421 (S.D.N.Y. December 4, 1996) (injunction precluding creditors who voted against the plan from asserting claims against third party non-

debtors who contributed substantial sums to the plan of reorganization); Abel v. Shugrue (In re Ionosphere Clubs Inc.), 184 B.R. 648 (S.D.N.Y. 1995) (release of claims against individual signatories approved); In re Texaco, Inc., 84 B.R. at 904 (release by debtors of potential claims against officers and directors).  In the Second Circuit, bankruptcy courts frequently have approved non-debtor releases and injunctions in situations where the releases and injunctions are an integral part of the plan of reorganization, confer material benefits on the Debtors' estates and their creditors, or are necessary to effectuate the plan of reorganization.  See, e.g., In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 293 (2d Cir. 1992) (bankruptcy court has jurisdiction and power to approve release and injunction in a plan, including the release of identified non-debtor third parties, where such releases play an important part in the plan of reorganization); MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.), 837 F.2d 89, 93 (2d Cir. 1988), cert. denied, 488 U.S. 868 (1988) (finding that section 105(a) "has been construed liberally to enjoin suits that might impede the reorganization process," and thus upholding permanent injunction issued in favor of settling insurance company, and approving release of third parties over the objection of creditors); Shugrue, 184 B.R. at 655 ("[C]ourts may issue injunctions enjoining creditors from suing third parties ... in order to resolve finally all claims in connection with the estate and to give finality to a reorganization plan.") (citations omitted).

   While there is no rigid test for determining whether third-party releases and injunctions are integral to a plan of reorganization and, therefore, should be approved, courts generally tend to "balance the equities" considering factors such as whether:

    1. there is an identity of interest between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate;

    2. the non-debtor has contributed substantial assets to the reorganization;

3. the injunction is essential to reorganization, and without it, there is little likelihood of success;

4. a substantial majority of the creditors agree to such injunction, specifically, if the impacted class, or classes, has "overwhelmingly" voted to accept the proposed plan treatment; and

5. the plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction.

In re Master Mortgage Inv. Fund, Inc., 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994); see also In re Continental Airlines, 203 F.3d 203, 212 (3d Cir. 2000) (stating that the Drexel and Manville plans provided consideration to parties who would be enjoined from suing non-debtors); Kirk v. Texaco, Inc., 82 B.R. 678, 685 (S.D.N.Y. 1988) (creditor's acceptance of $3 billion under the plan in satisfaction of a judgment of $10.3 billion, plus interest, represented substantial consideration. "[O]nly if an otherwise identical plan without the releases would have received the assent of [the creditor], could an argument be made that there was no consideration").

C.    The Releases, the Exculpation and the
      Injunction Are Reasonable and Should Be Approved

Pursuant to the Plan of Reorganization, the Debtors are generally seeking to release and exculpate those parties that were instrumental to the Debtors' restructuring efforts and the formulation of the Debtors' Plan of Reorganization. The Plan of Reorganization does not include broad third-party releases; rather, the Releases are limited to acts in connection with, related to, or arising out of the Reorganization Cases.

The Exculpation is appropriately limited to a qualified immunity for acts of negligence, does not relieve any party of liability for gross negligence or willful misconduct, and does not affect liability for prepetition actions. Exculpation for participating in the plan process is appropriate where plan negotiation could not have occurred without protection from liability. As recognized by the Second Circuit in Drexel, where a debtor's plan of reorganization requires

the settlement of numerous, complex issues, protection of third parties against legal exposure may be a key component of the settlement. See In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285 (2d Cir. 1992).

Throughout these Reorganization Cases, the Released Parties have contributed substantial value to the Debtors and the formulation of the Plan of Reorganization. The Released Parties' efforts in negotiating and ultimately formulating the Plan of Reorganization enabled the Debtors to file the Plan of Reorganization. Throughout these Reorganization Cases, the Creditors' Committee strongly advocated and pursued the interests of the Debtors' general unsecured creditors, ultimately resulting in the recoveries as provided in the Plan of Reorganization. Such recoveries will provide superior and more certain recoveries for creditors than would likely be available if other alternatives were pursued. Indeed, certain of the Debtors' general unsecured creditors will receive payment of their Claims in full.

In light of the foregoing, there can be no doubt that the professionals involved in these Reorganization Cases have enabled the Debtors to formulate a plan of reorganization that provides the greatest possible recovery to the Debtors' unsecured creditors, and enables the Debtors to emerge from chapter 11 as a viable enterprise. It should be noted that the Releases, Exculpation and Injunction were included in the Plan of Reorganization and Disclosure Statement in bold typeface at the Court's suggestion to draw attention to these provisions and ensure their due consideration by holders of Claims entitled to vote on the Plan of Reorganization. Significantly, and as evidenced by the voting results confirmed in the Voting Certification, these provisions were approved by a substantial majority of holders of Claims voting on the Plan of Reorganization and no creditor objected to these provisions.

The Releases, Exculpation and Injunction provisions embodied in Plan of Reorganization are fair and equitable, given in exchange for valuable consideration, and are in the best interests of the Debtors and all parties in interest. In addition, such provisions are consistent with sections 105, 1123, and 1129 of the Bankruptcy Code.

## CONCLUSION

The Plan of Reorganization complies with and satisfies all of the requirements of section 1129 of the Bankruptcy Code and, therefore, should be confirmed.

Dated: July 12, 2005
     New York, New York

Stephen Karotkin (SK 7357)
Lori R. Fife (LF 2839)
Shai Y. Waisman (SW 6854)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION